**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ARTISAN AND TRUCKERS CASUALTY CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No:** _____ |
| | ) | |
| **GPEX, LLC, and VESTARON CORPORATION,** | ) | **JURY DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES ARTISAN AND TRUCKERS CASUALTY CO., by its attorney, Bill Porter of Chilton Yambert Porter LLP, and for its Complaint for Declaratory Judgment states:

## ONE

## PARTIES

1.     ARTISAN AND TRUCKERS CASUALTY CO. is an insurance carrier licensed to do business within the State of Illinois and is officed and headquartered in the State of Ohio. (Herein "ARTISAN").

2.     GPEX, LLC, is an Illinois Limited Liability Company with its principal place of business in Cook County, Illinois.  ("Exhibit A").  (Herein "GPEX").

3.     VESTARON CORPORATION is a Delaware Corporation with its principal place of business in North Carolina.  ("Exhibit A", paragraph 2).  (Herein "VESTARON").

## TWO

## JURISDICTION

4.     Jurisdiction is proper in the United States District Court for the Northern District of Illinois, Eastern Division, because the matter in controversy involves complete diversity of

citizenship as between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs per the pleadings in the underlying suit. 28 U.S.C., §1332.

5.     Each party hereto is a citizen of a different state.

## THREE

## PLEADINGS IN THE UNDERLYING SUIT

6.     The factual pleadings in the underlying case include the following (citations to Exhibits omitted):

### FACTUAL ALLEGATIONS

6.     Vestaron is a biological peptide company, leading an innovative, sustainable peptide-based revolution in crop protection.

7.     GPEX is, on information and belief, a federally licensed motor carrier and operates pursuant to U.S. DOT. Number 3181801 and U.S. DOT FMSCA Authority Certificate MC- 126969.

8.     SEKO Worldwide LLC d/b/a Commercial Transport Inc. ("SEKO") is a Registered Freight Broker (License No. MC-670874) and in the business of arranging transportation for its shipper customers by retaining motor carriers to perform the actual shipments.

9.     On July 26, 2021, Vestaron contracted with SEKO to serve as a freight broker to ship Vestaron's goods – a new class of biological derived insecticides – from Illinois to California.

10.    On July 26, 2021, SEKO then entered into a Broker-Carrier Agreement with GPEX whereby GPEX "[s]hall transport the property . . . subject to the terms of this Agreement."

11.    Among other things, the Agreement provides that SEKO would pay GPEX's "invoice within 28 days of receipt of the bill of lading or proof of delivery, provided [GPEX] is not in default under the terms of this Agreement."

12.     Under the Agreement, GPEX agreed to be responsible and liable for any loss or damage to freight from the time it takes possession until it delivers that freight to the consignee.

13.     GPEX also agreed that any liability for freight loss and damage claims shall include legal fees "which shall constitute special damages, the risk of which is expressly assumed by [GPEX]."

14.     SEKO thereafter hired GPEX to transport Vestaron's goods from North Chicago, Illinois to Fresno, California, pursuant to the Bill of Lading, … (The "Shipment").

15.     The ship date on the Bill of Lading was July 27, 2021 and the due date was     July 30, 2021.

16.     On July 27, 2021, SEKO and GPEX's driver signed the Bill of Lading before picking up the Shipment as scheduled.

17.     The Shipment, however, did not arrive as promised on July 30, 2021.

18.     On August 4, 2021, SEKO and Vestaron learned that the Shipment was still in Nebraska.  At that point, given the delivery delay, the Shipment needed to be put into cold storage.  Accordingly, Vestaron arranged for delivery of the product to a cold storage facility in Kansas City, Missouri in order to preserve the Shipment and mitigate any damages from the unexplained delay.

19.     SEKO contacted GPEX's driver on August 4, 2021, as required under paragraph 2A of the Agreement, and instructed the driver to deliver the shipment to the alternative destination in Kansas City, Missouri on August 5, 2021. ("[SEKO] shall inform [GPEX] of . . . any special shipping and handling instructions".)

20.     GPEX inexplicably ignored the instruction, and continued on to Fresno, California.

21.     On Saturday, August 7, 2021, SEKO contacted GPEX to determine the whereabouts of the driver and the Shipment and to again arrange for delivery of the Shipment to cold storage over the weekend.

Upon information and belief, GPEX's driver was refusing to deliver the Shipment and had parked the Shipment at a lot in Stockton, California instead.

22.     Despite SEKO and GPEX's agreement that payment would be remitted *after* receiving proof of delivery (and upon certain other conditions in the Agreement), GPEX wrongfully refused to deliver the Shipment until SEKO paid for GPEX's freight charges.

23.     On August 9, 2021, SEKO again contacted GPEX demanding that GPEX deliver the Shipment and if not, SEKO would notify the authorities and report the Shipment as stolen.

24.     In response, GPEX doubled-down and threatened to place a lien on the goods and sell them unless SEKO paid GPEX $3,500.

25.     After failing to further negotiate the delivery of the Shipment on August 11, 2021 and August 16, 2021, SEKO ultimately agreed to pay GPEX the entire $3,500 in exchange for delivery of the Shipment that GPEX was holding hostage.

26.     On August 17, 2021, GPEX delivered the Shipment— seventeen days after it was scheduled to be delivered.

27.     Upon delivery, the consignee noted on the Receiving Report, attached to the Bill of Lading, that all 22 pallets in the Shipment contained expanding cases of insecticide and some cases were crushed. Some of the cases were also leaking insecticide and had mold growth.

28.     The Shipment was ultimately destroyed because it was an environmental hazard.

29.     As a result of being held hostage and stored in GPEX's hot trailer for three weeks, the Shipment was completely ruined and unsalvageable, resulting in a total loss of $423,447 ("Total Loss") to Vestaron.

("Exhibit A," pp 2-6, paragraph 6-29).

**FOUR**

**ALLEGATIONS OF LIABILITY IN THE UNDERLYING SUIT**

7.      Count I in the underlying Complaint raises a theory of Breach of Contract. ("Exhibit A," p. 6).

8.      Count II in the underlying Complaint raises Tortious Interference with Contract as a claim. ("Exhibit A," p. 7).

9.      Count III in the underlying Complaint raises the Theory of Conversion.  ("Exhibit A", p. 9).

10.     Count IV is in Trespass to Chattels.  ("Exhibit A," p. 10).

11.     Count V is based upon alleged Carrier Liability under the Carmack Amendment – 49 USC §14706.  ("Exhibit A,", p. 10).

**FIVE**

**TENDER OF DEFENSE**

12.     The claim has been tendered to ARTISAN for defense and indemnification in respect to the underlying suit.

**COUNT I**

**ARTISAN DOES NOT PROVIDE COVERAGE FOR GPEX's
ALLEGED BREACH OF CONTRACT**

1-12.   ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count I.

13.     The allegations in the underlying Complaint in Count I allege breach of contract. ("Exhibit A," p. 6).

14.     The pertinent portions of the Policy provide:

**PERTINENT POLICY PROVISION**

**EXCLUSIONS – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY, IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS …**

**2.      CONTRACTUAL**
Any liability assumed by an insured under any contract or agreement, unless the agreement is an insured contract that was executed prior to the occurrence of any … property damage.

However, this Exclusion does not apply to liability for damages that an **insured** would have in the absence of a contract or agreement.
("Exhibit B," p. 33 of 147).
…

6.      "Insured Contract" means:

a.      A lease of premises;

b.      A sidetrack agreement;

c.      Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.      An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for municipalities;

e.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability that is vicariously imposed on another for your negligence or that of your employees or agents; or

f.      That part of any contract or agreement, entered into as part of your business, for the rental of an insured auto.  However, such contract or agreement shall not be considered an insured contract to the extent that it obligates you or any of your employees to pay for any property damage to any auto rented or leased to you or any of your employees.

( "Exhibit B," p. 29 of 147).

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under Coverage A does not apply to:

a.   **Expected or Intended Injury**
     **Bodily injury** or **property damage** expected or intended from the standpoint of any of any **insured**.  This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

b.   **Contractual Liability**
     Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
     (1)   That the **insured** would have in the absence of the contract or agreement; or
     (2)   Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:
          (i)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and
          (ii)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
("Exhibit B," p. 33 of 147) …

**EXCLUSIONS – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY, IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:
…
2.   **Contractual**
     Any liability assumed by an insured under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

However, this exclusion does not apply to liability for damages that an insured would have in the absence of the contract or agreement.
("Exhibit B," p. 83 of 147.

* * * *

15.     ARTISAN does not provide coverage under the terms of the policy for this alleged breach of contract.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A.     Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B.     Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUALTY CO. to defend or indemnify GPEX, LLC for any claimed breach of contract in the underlying suit.

C.     Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

## COUNT II

### ARTISAN DOES NOT PROVIDE COVERAGE FOR A CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT.

1-12.     ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count II.

13.     The allegations in the underlying Complaint in Count II dealing with alleged tortious interference with contract alleges the following specifically:  "GPEX intentionally and unjustifiably induced SEKO to breach its contract with Vestaron …."  ("Exhibit A," paragraph 51.)

14.     The pertinent portions of the Policy provide:

## PERTINENT POLICY PROVISION

**EXCLUSIONS – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY, IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS ...**

**2.      CONTRACTUAL**
Any liability assumed by an insured under any contract or agreement, unless the agreement is an insured contract that was executed prior to the occurrence of any ... property damage.

However, this Exclusion does not apply to liability for damages that an **insured** would have in the absence of a contract or agreement.
("Exhibit B," p. 33 of 147)....

6.      "Insured Contract" means:
   a.      A lease of premises;
   b.      A sidetrack agreement;
   c.      Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d.      An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for municipalities;
   e.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability that is vicariously imposed on another for your negligence or that of your employees or agents; or
   f.      That part of any contract or agreement, entered into as part of your business, for the rental of an insured auto. However, such contract or agreement shall not be considered an insured contract to the extent that it obligates you or any of your employees to pay for any property damage to any auto rented or leased to you or any of your employees.
( "Exhibit B," p. 29 of 147).

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under Coverage A does not apply to:

**a.** **Expected or Intended Injury**

**Bodily injury** or **property damage** expected or intended from the standpoint of any of any **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

**b.** **Contractual Liability**

Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages:

(1) That the **insured** would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:

(i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

(ii) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

("Exhibit B," p. 33 of 147)

…

**EXCLUSIONS – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY, IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

…

2. **Contractual**
Any liability assumed by an insured under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

However, this exclusion does not apply to liability for damages that an insured would have in the absence of the contract or agreement.

("Exhibit B," p. 83 of 147.

15.     The ARTISAN Policy does not provide coverage for an expected or intended injury or contract in the underlying suit, which would include intentional tortious interference with contract.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A.      Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B.      Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUALTY CO. to defend or indemnify GPEX, LLC for any claimed intentional tortious interference with contract in the underlying suit.

C.      Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

## COUNT III

## THE ARTISAN POLICY PROVIDES NO COVERAGE
## FOR CONVERSION.

1-12.   ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count III.

13.     The underlying Complaint contains the following specific paragraphs:

57.    GPEX refused to deliver the Shipment without first receiving payment (to which it was not yet entitled), and held the Shipment hostage until SEKO agreed to pay.

58.    GPEX wrongfully, and without authorization, assumed control, dominion, or ownership over the Shipment.

59.    As an actual and proximate result of GPEX's conversion, Vestaron is entitled to monetary damages and any punitive damages that the court deems just and proper.

("Exhibit A," paragraphs 57, 58, 59).

14.    The pertinent portions of the Policy provide:

**EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY.
IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER
THIS ENDORSEMENT.**

Coverage under Coverage A does not apply to:

**a.    Expected or Intended Injury**

**Bodily injury** or property damage expected or intended from the standpoint of any insured.  This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

("Exhibit B,", p. 33 of 147).

**INSURING AGREEMENT – LOSS TO COVERED PROPERTY**

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage.  For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control.

1.    while **in due course of transit** in, on, or attached to an **insured auto**; or

2.    during **loading or unloading.**

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for this **covered property** coverage has been exhausted by payment of judgment or settlements. ("Exhibit B," p. 51 of 147).

5. **"In due course of transit"** means being shipped from the time **you** assume care, custody, or control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:

    a.   the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;

    b.   the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;

    c.   72 hours after arrival at destination; or any other stop that exceeds 72 hours.

        **In due course of transit** includes ordinary, reasonable, and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

("Exhibit B, p. 58 of 147)

15. The ARTISAN Policy does not provide coverage for conversion and punitive damages based on the foregoing policy language.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A. Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B. Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUALTY CO. to defend or indemnify GPEX, LLC for any claimed breach of contract in the underlying suit.

C. Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

**COUNT IV**

**ARTISAN DOES NOT PROVIDE COVERAGE FOR TRESPASS TO CHATTELS**

1-12.    ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count VI.

13.    The allegations in the underlying Complaint in Count IV allege:

> 64.    GPEX refused to deliver the Shipment without first receiving payment (to which it was not yet entitled), and held the Shipment hostage until SEKO agreed to pay.
>
> 65.    GPEX wrongfully, and without authorization, assumed control, dominion, or ownership over the property.

("Exhibit A," p. 10)

14.    The pertinent portions of the policy provide:

**GENERAL DEFINITIONS**

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with the policy, unless specifically modified.**

1.    **"Accident"** means a sudden, unexpected, and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage.**
("Exhibit B,", p. 76 of 147)…

7.    **"Loss"** means sudden, direct and accidental loss or damage.
("Exhibit B, p. 78 of 147)

**PART I – LIABILITY TO OTHERS**

**INSURING AGREEMENT – LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage,** and **covered pollution cost or expense,** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto.** However, **we** will only pay for the **covered pollution cost or expense** if the same accident

also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgment or settlements.
("Exhibit B,", p. 80 of 147)...

**<u>EXCLUSIONS</u> – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY, IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

1.  **Expected or Intended Injury**
    **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.
("Exhibit B,", p. 83 of 147.)

15.    The ARTISAN Policy does not provide coverage for Trespass to Chattels.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A.    Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B.    Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUALTY CO. to defend or indemnify GPEX, LLC for any liability arising out of the assertions and allegations of trespass to chattels claim in the underlying suit.

C.    Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

Page 15

## COUNT V

## ARTISAN DOES NOT PROVIDE COVERAGE FOR CLAIMS UNDER THE CARMACK AMENDMENT AS ALLEGED IN THE UNDERLYING COMPLAINT.

1-12.    ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count V.

13.    The allegations in the underlying Complaint in Count V allege:

67.    Under 49 U.S.C. § 14706, commonly known as the Carmack Amendment, GPEX has a duty to transport and deliver the Shipment in same condition in which it was received.

68.    Under the Carmack Amendment, GPEX is solely responsible for any damage that occurs to the Shipment while under GPEX's custody and control.

69.    The Shipment was damaged while under GPEX's custody and control due to GPEX's refusal to deliver the Shipment according to the terms of the Agreement.

70.    GPEX is therefore responsible for the cost to replace the damaged Shipment and other costs related to the Shipment's damage.

71.    Under 49 U.S.C. § 14706, GPEX is liable to Vestaron for its full actual loss on account of the total loss of the Shipment, and all associated costs.

("Exhibit A," p. 10-11)

14.    The pertinent portions of the policy provide:
…

**Application for Insurance:**
Rated Commodities
      1.    Plastic Products
      2.    Paper & Paper Products
      3.    Dept. Store Mds (Mixed loads le Walmart)
("Exhibit B", p. 4 of 147)

**Application Agreement**
> **Verification of Content**
> The Insured declares that the statements contained herein are true to the best of their knowledge and belief.

("Exhibit B,", p. 7 of 147.)

* * * *

## INSURING AGREEMENT – LOSS TO COVERED PROPERTY

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control.

1.      while **in due course of transit** in, on, or attached to an **insured auto**; or
2.      during **loading or unloading.**

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not contingent upon **your** liability.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for this **covered property** coverage has been exhausted by payment of judgment or settlements.

("Exhibit B," p. 51 of 147)

## ADDITIONAL DEFINITIONS

...

2.      **"Covered peril"** means any external risks of direct physical **loss** to **covered property** or **business equipment,** except for those listed in a. through l. below as Excluded Perils.

> **Excluded Perils:   Please read the following list of excluded perils carefully.  Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils.  We** will not pay for any **losses** to **covered property** or **business equipment** caused by, resulting in or from, or arising out of these excluded perils regardless of

any other cause or event that contributes concurrently or in any sequence to the **loss.**
("Exhibit B," p. 53 of 147).

...

d. **Inherent Vice**
Contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; insects; vermin; change in flavor; or any quality, fault, or weakness in the **covered property** that causes it to damage or destroy itself.
("Exhibit B," p. 54 of 147).

...

f. **Consequential Loss**
Loss of use, loss of market, loss of market value, or delay; or any other remote or consequential loss, other than direct physical **loss,** to **covered property** or **business equipment.**
("Exhibit B," p. 54 of 147).

g. **Breakdown, Temperature, Humidity**

(i) **Mechanical or electrical breakdown or failure including breakdown or failure of a refrigeration unit or its associate component parts, or heating equipment installed in a cargo component; or**

(ii) **Wetness, humidity, dampness, dryness, or changes in or extremes of temperature unless it results from damage to a**

**transporting vehicle caused by a covered cause of loss. However, this Excluded Peril does not apply to loss caused by a fire or explosion if such fire or explosion would be covered under this endorsement.**

h. **Voluntary Parting, Nondelivery, Mysterious Disappearance**

(i) **Voluntary parting with title to, or possession of, the property due to fraudulent scheme, trick, or false pretense;**

(ii) **Nondelivery or misdelivery; or**

      (iii)    **Mysterious or unexplained disappearance; shortage of any property upon taking inventory; or theft of a part of the contents of any shipping package.**

("Exhibit B," p. 55 of 147).

…

5.    **"In due course of transit"** means being shipped from the time **you** assume care, custody, or control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:

a.    the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;

b.    the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;

c.    72 hours after arrival at destination; or any other stop that exceeds 72 hours.

    **In due course of transit** includes ordinary, reasonable, and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

("Exhibit B," p. 58 of 147)

15.    The ARTISAN Policy does not provide coverage for GPEX for claims asserted under the Carmack Amendment for the following reasons:

(a)    The load was not a Rated Commodity for which GPEX represented in the Application for Insurance.

(b)    The loss did not occur in the due course of transit and is therefore not a covered loss;

(c)    The claimed loss is excluded from the policy because it results from Inherent Vice, including contamination, deterioration, mold, rot, that caused the subject property to damage or destroy itself.

(d)    The claimed loss is an assertion of the loss of market value and is specifically excluded by the Policy;

(e)    The claimed loss deals with a breakdown temperature and humidity affecting the claimed property; and

(f)    The loss of property is alleged to have occurred more than 72 hours after a stop that exceeded 72 hours and is thereby excluded by the Policy provisions.

(g)    The underlying pleading does not meet the definition of an accident as defined by the policy.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A.    Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B.    Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUALTY CO. to defend or indemnify GPEX, LLC for any liability arising out of the assertions and allegations pertaining to the Carmack Amendment claim in the underlying suit.

C.    Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

## COUNT VI

### ARTISAN DOES NOT PROVIDE COVERAGE TO GPEX FOR THE ALLEGATIONS IN THE UNDERLYING SUIT

1-12.    ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count VI.

## ARTISAN INSURANCE POLICY PROVISIONS

13.     The Artisan insurance policy is set forth in full as "Exhibit B."  (Herein "The Policy").

14.     The Policy provides in pertinent part:
…
**Application for Insurance:**
Rated Commodities
        1.      Plastic Products
        2.      Paper & Paper Products
        3.      Dept. Store Mds (Mixed loads le Walmart)

 ("Exhibit B", p. 4 of 147)
…

**Application Agreement**
      **Verification of Content**
      The Insured declares that the statements contained herein are true to the best
      of their knowledge and belief.
("Exhibit B,", p. 7 of 147.)

\* \* \* \*

## INSURING AGREEMENT – LOSS TO COVERED PROPERTY

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage.  For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control.

1.     while **in due course of transit** in, on, or attached to an **insured auto**; or
2.     during **loading or unloading.**

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril**. For **covered property** that is **your** property, **our** payment is not continent upon **your** liability.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement.  However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply.  **We** have no duty to settle or defend any lawsuit,  or make any additional payments, after the limit of liability for this

**covered property** coverage has been exhausted by payment of judgment or settlements.
("Exhibit B," p. 51 of 147)

**ADDITIONAL DEFINITIONS**

...

2.　　**"Covered peril"** means any external risks of direct physical **loss** to **covered property** or **business equipment,** except for those listed in a. through l. below as Excluded Perils.

　　　　**Excluded Perils:　Please read the following list of excluded perils carefully.　Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils.　We** will not pay for any **losses** to **covered property** or **business equipment** caused by, resulting in or from, or arising out of these excluded perils regardless of any other cause or event that contributes concurrently or in any sequence to the **loss.**
("Exhibit B," p. 53 of 147).

　　　　...

　　d.　　**Inherent Vice**
　　　　Contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; insects; vermin; change in flavor; or any quality, fault, or weakness in the **covered property** that causes it to damage or destroy itself.
("Exhibit B," p. 54 of 147).

　　　　...

　　f.　　**Consequential Loss**
　　　　Loss of use, loss of market, loss of market value, or delay; or any other remote or consequential loss, other than direct physical **loss,** to **covered property** or **business equipment.**
("Exhibit B," p. 54 of 147).

　　g.　　**Breakdown, Temperature, Humidity**

　　(i)　　**Mechanical or electrical breakdown or failure including breakdown or failure of a refrigeration unit or its associate component parts, or heating equipment installed in a cargo component; or**

    (ii)    **Wetness, humidity, dampness, dryness, or changes in or extremes of temperature unless it results from damage to a**

    **transporting vehicle caused by a covered cause of loss. However, this Excluded Peril does not apply to loss caused by a fire or explosion if such fire or explosion would be covered under this endorsement.**

**h.**    **Voluntary Parting, Nondelivery, Mysterious Disappearance**

    (i)    **Voluntary parting with title to, or possession of, the property due to fraudulent scheme, trick, or false pretense;**

    (ii)    **Nondelivery or misdelivery; or**

    (iii)    **Mysterious or unexplained disappearance; shortage of any property upon taking inventory; or theft of a part of the contents of any shipping package.**

("Exhibit B," p. 55 of 147).

. . .

5.    **"In due course of transit"** means being shipped from the time **you** assume care, custody, or control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:

    a.    the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;

    b.    the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;

    c.    72 hours after arrival at destination; or any other stop that exceeds 72 hours.

    **In due course of transit** includes ordinary, reasonable, and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

("Exhibit B," p. 58 of 147)

15.    The ARTISAN Policy does not provide coverage for GPEX for the following reasons:

    (a)    The load was not a Rated Commodity for which GPEX represented in the Application for Insurance.

Page 23

(b)    The loss did not occur in the due course of transit and is therefore not a covered loss;

(c)    The claimed loss is excluded from the policy because it results from Inherent Vice, including contamination, deterioration, mold, rot, that caused the subject property to damage or destroy itself.

(d)    The claimed loss is an assertion of the loss of market value and is specifically excluded by the Policy;

(e)    The claimed loss deals with a breakdown temperature and humidity affecting the claimed property; and

(f)    The loss of property is alleged to have occurred more than 72 hours after a stop that exceeded 72 hours and is thereby excluded by the Policy provisions.

(g)    The underlying pleading does not meet the definition of an accident as defined by the policy.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A.    Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B.    Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUALTY CO. to defend or indemnify GPEX, LLC for any liability in the underlying suit.

C.    Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

<u>**COUNT VII**</u>

<u>**ARTISAN PROVIDES NO COVERAGE FOR GPEX
DUE TO ITS NON-COOPERATION IN THE INVESTIGATION
AND DEFENSE OF THIS CLAIM**</u>

1-12.    ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count VII.

<u>**ARTISAN INSURANCE POLICY PROVISIONS**</u>

13.    The Artisan insurance policy is set forth in full as "Exhibit B."  (Herein "The Policy").

14.    The Policy provides in pertinent part:

The following additional duties apply under the Motor Truck Cargo Legal Liability Coverage endorsement:

1.    **You** must take all reasonable steps to protect **covered property** and **business equipment** at the time of and after a loss to avoid further damage.

…

5.    **You** must as often as **we** reasonably require, submit, and so far as is within your power, cause all other persons interested in the **covered property** or **business equipment**, whichever the case may be, and members of their households and employees to submit, to examination under oath by any person **we** name, and, in connection with any claim made, to produce for examination all books of accounts, uniform bills of lading, shipping receipts, invoices, drivers' log books, and any other documents, at such reasonable time and place as we may designate and permit extracts and copies thereof to be made. …

("Exhibit B," p. 66 of 147).

<u>**DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**</u>

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not a fault.  Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all per sons involved in the **accident** or **loss,** the names and addresses

of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident,** or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:

1.    cooperate with **us** in any matter concerning a claim or lawsuit;
2.    provide any written proof of loss **we** may reasonably require;
3.    allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require.
4.    promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;

…

10.   authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

("Exhibit B,", p. 75 of 147)

15.    GPEX has failed to comply with its contractual duties as set forth in the policy cited above when it has failed to respond to all inquiries, including phone calls, email, texts, letters and summons.

16.    Essentially, GPEX has provided no input in respect to this matter.

17.    ARTISAN has been harmed/prejudiced by the complete lack of any input and cooperation on the part of GPEX.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A.    Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B.    Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUALTY CO. to defend or indemnify GPEX, LLC for any liability arising out of the assertions and allegations in the underlying suit.

C.    Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

## COUNT VIII

### PLEADING IN THE ALTERNATIVE, IN THE EVENT COVERAGE MAY BE AFFORDED BY COURT ORDER, THE AMOUNT OF COVERAGE – FOR THE ALLEGED CARGO CLAIM WOULD BE LIMITED BY THE POLICY LIMIT

1-12.    ARTISAN reasserts and realleges the allegations of Paragraphs 1 – 12 as if fully set forth herein as Paragraphs 1-12 of this Count VIII.

13.    The ARTISAN Policy provides in pertinent part:

**Motor Truck Cargo coverage part**

| Description | Limits |
|---|---|
| Motor Truck Cargo | $100,000 |

("Exhibit B," p. 12 of 147

13.    Pleading in the alternative, in the event that this Court determines coverage is afforded under the ARTISAN Policy to GPEX, then the policy limit applicable to the loss is $100,000.

WHEREFORE, Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO. prays that this Court:

A.    Determine and adjudicate the rights and obligations of the parties with respect to its Policy No: 02434454-00.

B.     Find and declare that there is no obligation on the part of ARTISAN AND TRUCKERS CASUAL CO. to defend or indemnify GPEX, LLC for any liability beyond the applicable policy limit.

C.     Award to ARTISAN AND TRUCKERS CASUALTY CO. just and reasonable costs incurred.

Respectfully submitted,

ARTISAN AND TRUCKERS CASUALTY CO.,
*Plaintiff*

BY:___/s/ D. William Porter_____
        Counsel for Artisan and Truckers Casualty Co.

D. William Porter, ARDC #6183435
Michael P. Stauder, ARDC #6327642
CHILTON YAMBERT PORTER LLP
2000 South Batavia Avenue, Suite 200
Geneva, Illinois 60134
Phone: 630-262-4000
Fax: 630-262-1144
Email: bporter@cyp-law.com
*Counsel for Plaintiff, Artisan and Truckers Casualty Co.*

## JURY DEMAND

The Plaintiff, ARTISAN AND TRUCKERS CASUALTY CO., hereby demands a trial by jury of said cause.

Respectfully submitted,

ARTISAN AND TRUCKERS CASUALTY CO.,
*Plaintiff*

BY:___/s/ D. William Porter_____
      Counsel for Artisan and Truckers Casualty Co.

D. William Porter, ARDC #6183435
Michael P. Stauder, ARDC #6327642
CHILTON YAMBERT PORTER LLP
2000 South Batavia Avenue, Suite 200
Geneva, Illinois 60134
Phone: 630-262-4000
Fax: 630-262-1144
Email: bporter@cyp-law.com
*Counsel for Plaintiff, Artisan and Truckers Casualty Co.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ARTISAN AND TRUCKERS CASUALTY CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No:** _____ |
| | ) | |
| **GPEX, LLC, and VESTARON CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# <u>EXHIBIT A</u>

**In-Person Jury**

FILED
11/7/2022 2:42 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L009988
Calendar, U
20205555

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| VESTARON CORPORATION, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| GPEX LLC, an Illinois Limited Liability Company, | ) ) ) ) |
| Defendant. | ) ) |

**2022L009988**

Case No. _____

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff Vestaron Corporation ("Vestaron"), by and through its undersigned attorneys, for its Complaint against Defendant GPEX LLC ("GPEX"), allege as follows:

### NATURE OF THE ACTION

1.      This is a civil action for breach of contract, Carmack Amendment claims, and other relief, brought based on GPEX's failure to deliver Vestaron's shipment in a timely manner according to its contractual agreement and, among other egregious actions, wrongfully withholding Vestaron's shipment, improperly extorting payment out of Vestaron's broker, and ultimately causing Vestaron to suffer damages totaling $423,447.00.

### THE PARTIES

2.      Vestaron Corporation is a Delaware corporation with its principal place of business at 600 Park Offices Drive, Suite 117 Durham, North Carolina 27709.

3.      GPEX is an Illinois limited liability company with its principal place of business at 8926 N. Greenwood Ave, Unit 148, Niles, Illinois 60714.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to Illinois Code of Civil Procedure, 735 ILCS § 5/2-209(a)(1) and (7), in that, among other things, GPEX at all relevant times transacted business within the State of Illinois and entered into or performed any contract or promise substantially connected with the State of Illinois.

5.      Venue is proper in this county pursuant to Illinois Code of Civil Procedure, 735 ILCS § 5/2-101, in that Defendant GPEX resides in Cook County, Illinois.

## FACTUAL ALLEGATIONS

6.      Vestaron is a biological peptide company, leading an innovative, sustainable peptide-based revolution in crop protection.

7.      GPEX is, on information and belief, a federally licensed motor carrier and operates pursuant to U.S. DOT. Number 3181801 and U.S. DOT FMSCA Authority Certificate MC-126969.

8.      SEKO Worldwide LLC d/b/a Commercial Transport Inc. ("SEKO") is a Registered Freight Broker (License No. MC-670874) and is in the business of arranging transportation for its shipper customers by retaining motor carriers to perform the actual shipments.

9.      On July 26, 2021, Vestaron contracted with SEKO to serve as a freight broker to ship Vestaron's goods – a new class of biological derived insecticides – from Illinois to California.

10.     On July 26, 2021, SEKO then entered into a Broker-Carrier Agreement with GPEX whereby GPEX "[s]hall transport the property . . . subject to the terms of this Agreement." A copy of the Broker-Carrier Agreement is attached as Exhibit A (the "Agreement").

11.     Among other things, the Agreement provides that SEKO would pay GPEX's "invoice within 28 days of receipt of the bill of lading or proof of delivery, provided [GPEX] is not in default under the terms of this Agreement." (*See* Ex. A at ¶ 2D.)

2

12.     Under the Agreement, GPEX agreed to be responsible and liable for any loss or damage to freight from the time it takes possession until it delivers that freight to the consignee. (*Id.* at ¶ 3B.)

13.     GPEX also agreed that any liability for freight loss and damage claims shall include legal fees "which shall constitute special damages, the risk of which is expressly assumed by [GPEX]." (*Id.* at ¶ 3Ciii.)

14.     SEKO thereafter hired GPEX to transport Vestaron's goods from North Chicago, Illinois to Fresno, California, pursuant to the Bill of Lading, which is attached as Exhibit B. (The "Shipment".)

15.     The ship date on the Bill of Lading was July 27, 2021 and the due date was July 30, 2021. (*Id.*)

16.     On July 27, 2021, SEKO and GPEX's driver signed the Bill of Lading before picking up the Shipment as scheduled.

17.     The Shipment, however, did not arrive as promised on July 30, 2021.

18.     On August 4, 2021, SEKO and Vestaron learned that the Shipment was still in Nebraska. At that point, given the delivery delay, the Shipment needed to be put into cold storage. Accordingly, Vestaron arranged for delivery of the product to a cold storage facility in Kansas City, Missouri in order to preserve the Shipment and mitigate any damages from the unexplained delay.

19.     SEKO contacted GPEX's driver on August 4, 2021, as required under paragraph 2A of the Agreement, and instructed the driver to deliver the shipment to the alternative destination in Kansas City, Missouri on August 5, 2021. (*See* Ex. A at ¶ 2A ("[SEKO] shall inform [GPEX] of . . . any special shipping and handling instructions".))

3

20.     GPEX inexplicably ignored this instruction, and continued on to Fresno, California.

21.     On Saturday, August 7, 2021, SEKO contacted GPEX to determine the whereabouts of the driver and the Shipment and to again arrange for delivery of the Shipment to cold storage over the weekend. Upon information and belief, GPEX's driver was refusing to deliver the Shipment and had parked the Shipment at a lot in Stockton, California instead.

22.     Despite SEKO and GPEX's agreement that payment would be remitted *after* receiving proof of delivery (and upon certain other conditions in the Agreement), GPEX wrongfully refused to deliver the Shipment until SEKO paid for GPEX's freight charges. (*See* Ex. A at ¶ 2D.)

23.     On August 9, 2021, SEKO again contacted GPEX demanding that GPEX deliver the Shipment and if not, SEKO would notify the authorities and report the Shipment as stolen.

24.     In response, GPEX doubled-down and threatened to place a lien on the goods and sell them unless SEKO paid GPEX $3,500.

25.     After failing to further negotiate the delivery of the Shipment on August 11, 2021 and August 16, 2021, SEKO ultimately agreed to pay GPEX the entire $3,500 in exchange for delivery of the Shipment that GPEX was holding hostage.

26.     On August 17, 2021, GPEX delivered the Shipment—seventeen days after it was scheduled to be delivered.

27.     Upon delivery, the consignee noted on the Receiving Report, attached to the Bill of Lading, that all 22 pallets in the Shipment contained expanding cases of insecticide and some cases were crushed. (*See* Exhibit C, Receiving Report.) Some of the cases were also leaking insecticide and had mold growth.

28.     The Shipment was ultimately destroyed because it was an environmental hazard.

29.     As a result of being held hostage and stored in GPEX's hot trailer for three weeks, the Shipment was completely ruined and unsalvageable, resulting in a total loss of $423,447 ("Total Loss") to Vestaron.

**Notice of Claims**

30.     On August 27, 2021, Vestaron notified SEKO of its claim regarding this Shipment.

31.     On October 14, 2021, Vestaron sent a second Notice of Claim to SEKO.

32.     During this time, SEKO determined that the Shipment was unequivocally damaged during transit while in the exclusive care, custody, and control of GPEX. (*See* Ex. A at ¶ 3B ("[GPEX] shall become fully responsible/ liable for the freight when it takes/receives possession thereof, and the trailer(s) is loaded . . . and which responsibility/liability shall continue until delivery of the shipment").)

33.     On November 8, 2021, SEKO emailed a notice of the claim to GPEX, demanding GPEX pay the entire claim amount.

34.     Under the Agreement, GPEX was required to "pay, decline or make settlement offer in writing on all cargo loss or damage claims within 45 days of receipt of the claim. Failure [to do so] shall be deemed admission by [GPEX] of full liability for the amount claimed and a material breach of this agreement." (*See* Ex. A at ¶ 3Cv.)

35.     GPEX never responded to SEKO's Notice.

36.     GPEX therefore did not pay, decline, or offer settlement within the 45-day period as required under the Agreement.

37.     On April 20, 2022, SEKO again notified GPEX of Vestaron's claim and re-submitted the Notice of Claim to GPEX and its motor truck cargo insurer, demanding GPEX and

its insurer pay Vestaron the full $423,447 claim amount. (*See* Exhibit D, Notice of Claim to GPEX.)

**Assignment of Claims**

38.     SEKO assigned all of its benefits, rights, and claims as enumerated in the Agreement executed with GPEX, and agreed to provide reasonable assistance and cooperation to Vestaron in prosecuting any claims against GPEX.

39.     As such, under Illinois Code of Civil Procedure, 735 ILCS § 5/2-403, Vestaron is therefore the bona fide owner of SEKO's claims against GPEX as of September 7, 2022.

40.     To date, GPEX never responded to SEKO's Notice of Claim and has not paid for the damages it caused to the Shipment.

41.     Vestaron therefore brings this action on its own behalf and as the assignee and bona fide owner of SEKO's claims against GPEX.

## COUNT I – BREACH OF CONTRACT

42.     Vestaron re-alleges and incorporates as though fully stated herein Paragraphs 1 through 41 above.

43.     The Agreement that SEKO and GPEX entered into is a valid and enforceable contract.

44.      SEKO complied with all of the terms, duties, and obligations under the terms of the Agreement.

45.     GPEX has failed to comply with the terms, duties, and obligations on its part under the Agreement, in one or more of the following ways:

     a.     Failing to deliver the Shipment in a timely fashion;

     b.     Failing to deliver the shipment to an alternative destination, as required under paragraph 2A of the Agreement;

    c.      Failing to deliver the Shipment to cold storage in order to mitigate damage, as expressly requested by SEKO and Vestaron;

    d.      Refusing to deliver the Shipment without first receiving payment despite agreeing to be paid "within 28 days of receipt of the bill of lading **or proof of delivery**" under paragraph 2D of the Agreement;

    e.      Seeking to assert a lien on the Shipment despite payment not yet being due under the Agreement;

    f.      Failing to pay, decline, or make a settlement offer in writing on the Notice of Claim within 45 days under paragraph 3Cv of the Agreement, constituting an admission by GPEX of full liability for the amount claimed and "a material breach" of the Agreement; and

    g.      Otherwise failing to perform with respect to the contracted transportation services required by the Agreement.

46.     As a direct and proximate cause of GPEX's breaches, SEKO has been denied the benefits of the Agreement.

47.     Under Illinois Code of Civil Procedure, 735 ILCS § 5/2-403, Vestaron is the assignee and bona fide owner of SEKO's claims against GPEX and is therefore entitled to recover for GPEX's breaches under the Agreement.

WHEREFORE, Vestaron respectfully requests that this Court:

    a.      Enter judgment in its favor and against GPEX in the amount of $423,447 for the Total Loss sustained as a result of GPEX's breaches of the Agreement;

    b.      Award Vestaron its attorneys' fees and costs incurred in this action in an amount to be proven at trial;

    c.      Award Vestaron prejudgment and post-judgment interest on its damages in the full amount permitted by law; and

    d.      Award Vestaron such other relief as this Court deems just and proper.

**COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT**

48.     Vestaron re-alleges and incorporates as though fully stated herein Paragraphs 1 through 47 above.

7

49.     Vestaron contracted with SEKO to serve as a freight broker to ship Vestaron's goods.

50.     GPEX knew of the contract between Vestaron and SEKO.

51.     GPEX intentionally and unjustifiably induced SEKO to breach its contract with Vestaron, in one or more of the following ways:

   a.     Failing to deliver the Shipment in a timely fashion;

   b.     Failing to deliver the shipment to an alternative destination, as required under paragraph 2A of the Agreement;

   c.     Failing to deliver the Shipment to cold storage in order to mitigate damage, as expressly requested by SEKO and Vestaron;

   d.     Refusing to deliver the Shipment without first receiving payment despite agreeing to be paid "within 28 days of receipt of the bill of lading **or proof of delivery**" under paragraph 2D of the Agreement;

   e.     Seeking to assert a lien on the Shipment despite payment not yet being due under the Agreement;

   f.     Failing to pay, decline, or make a settlement offer in writing on the Notice of Claim within 45 days under paragraph 3Cv of the Agreement, constituting an admission by GPEX of full liability for the amount claimed and "a material breach" of the Agreement; and

   g.     Otherwise failing to perform with respect to the contracted transportation services required by the Agreement.

52.     As a direct and proximate cause of GPEX's intentional interference with Vestaron's contract with SEKO, Vestaron has been damaged.

WHEREFORE, Vestaron respectfully requests that this Court:

   a.     Enter judgment in its favor and against GPEX in the amount of $423,447 for the Total Loss sustained as a result of GPEX's breaches of the Agreement;

   b.     Award Vestaron its attorneys' fees and costs incurred in this action in an amount to be proven at trial;

   c.     Award Vestaron prejudgment and post-judgment interest on its damages in the full amount permitted by law; and

d.      Award Vestaron such other relief as this Court deems just and proper.

## COUNT III – CONVERSION

53.     Vestaron re-alleges and incorporates as though fully stated herein Paragraphs 1 through 52 above.

54.     Vestaron owns the rights to the Shipment.

55.     Vestaron had an absolute and unconditional right to the immediate possession of the Shipment according to the Agreement and the Bill of Lading.

56.     Through SEKO, Vestaron demanded immediate possession of the Shipment on August 7, 2021; August 9, 2021; August 11, 2021; and August 16, 2021.

57.     GPEX refused to deliver the Shipment without first receiving payment (to which it was not yet entitled), and held the Shipment hostage until SEKO agreed to pay.

58.     GPEX wrongfully, and without authorization, assumed control, dominion, or ownership over the Shipment.

59.     As an actual and proximate result of GPEX's conversion, Vestaron is entitled to monetary damages and any punitive damages that the court deems just and proper.

WHEREFORE, Vestaron respectfully requests that this Court:

a.      Enter judgment in its favor and against GPEX in the amount of $423,447 for the Total Loss sustained as a result of GPEX's conversion;

b.      Award Vestaron its attorneys' fees and costs incurred in this action in an amount to be proven at trial;

c.      Award Vestaron punitive damages in an amount to be proven at trial;

d.      Award Vestaron prejudgment and post-judgment interest on its damages in the full amount permitted by law; and

e.      Award Vestaron such other relief as this Court deems just and proper.

## COUNT IV – TRESPASS TO CHATTELS

60.     Vestaron re-allege and incorporate as though fully stated herein Paragraphs 1 through 59 above.

61.      Vestaron owns the rights to the Shipment.

62.     Vestaron had an absolute and unconditional right to the immediate possession of the Shipment.

63.     Through SEKO, Vestaron demanded immediate possession of the Shipment on August 7, 2021; August 9, 2021; August 11, 2021; and August 16, 2021.

64.     GPEX refused to deliver the Shipment without first receiving payment (to which it was not yet entitled), and held the Shipment hostage until SEKO agreed to pay.

65.     GPEX wrongfully, and without authorization, assumed control, dominion, or ownership over the property.

WHEREFORE, Vestaron respectfully requests that this Court:

a.     Enter judgment in its favor and against GPEX in the amount of $423,447 for the Total Loss sustained as a result of GPEX's trespass to chattels;

b.     Award Vestaron its attorneys' fees and costs incurred in this action in an amount to be proven at trial;

c.     Award Vestaron prejudgment and post-judgment interest on its damages in the full amount permitted by law; and

d.     Award Vestaron such other relief as this Court deems just and proper.

## COUNT V - CARRIER LIABILITY UNDER THE CARMACK AMENDMENT (PLED IN THE ALTERNATIVE)

66.     Vestaron re-alleges and incorporates as though fully stated herein Paragraphs 1 through 65 above.

67.     Under 49 U.S.C. § 14706, commonly known as the Carmack Amendment, GPEX has a duty to transport and deliver the Shipment in same condition in which it was received.

10

68.     Under the Carmack Amendment, GPEX is solely responsible for any damage that occurs to the Shipment while under GPEX's custody and control.

69.     The Shipment was damaged while under GPEX's custody and control due to GPEX's refusal to deliver the Shipment according to the terms of the Agreement.

70.     GPEX is therefore responsible for the cost to replace the damaged Shipment and any other costs relating to the Shipment's damage.

71.     Under 49 U.S.C. § 14706, GPEX is liable to Vestaron for its full actual loss on account of the total loss of the Shipment, and all associated costs.

WHEREFORE, Vestaron respectfully requests that this Court:

a.      Enter judgment in its favor and against GPEX in the amount of $423,447 for the Total Loss sustained as a result of GPEX's violations of the Carmack Amendment;

b.      Award Vestaron its attorneys' fees and costs incurred in this action in an amount to be proven at trial;

c.      Award Vestaron prejudgment and post-judgment interest on its damages in the full amount permitted by law; and

d.      Award Vestaron such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Vestaron hereby demands trial by jury as to all issues in this action so triable.

Dated: November 7, 2022          VESTARON CORPORATION,


By:   /s/ Emily E. Garrison
        One of Its Attorneys

Emily E. Garrison (egarrison@honigman.com)
HONIGMAN LLP
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
Phone:  (312) 701-9300
Fax:  (312) 701-9335
Firm No. 64346

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARTISAN AND TRUCKERS CASUALTY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: _____ |
| | ) | |
| GPEX, LLC, and VESTARON CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

# __EXHIBIT B__

*PROGRESSIVE*

December 8, 2022

Policy Number: 02434454-0
Claim Number: 22-6431118

Artisan and Truckers Casualty Company

I certify that each of the following is true regarding the attached records, to the best of my knowledge and belief:

1. I am an employee familiar with the manner and process in which these records are created and maintained by virtue of my duties and responsibilities;

2. The records were made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, people with knowledge of those matters;

3. The records were kept in the course of regularly conducted business activity; and

4. It was the regular practice of the business activity to make the record.

*Jennifer Brough*

Jennifer Brough

---

MONIKA LAJEWSKA
ENSURE INC
101 LIONS DR #118
BARRINGTON, IL 60010

*PROGRESSIVE*
COMMERCIAL

GPEX LLC
8926 N GREENWOOD AVE #148
NILES, IL 60714

Underwritten by:
Artisan and Truckers Casualty Co
July 29, 2020
Policy Period: Jul 29, 2020 - Jul 29, 2021
Page 1 of 1

Dear GPEX LLC,

Thank you for giving me the opportunity to quote your Commercial Auto insurance coverage. I appreciate your business and am confident that you will be pleased with your decision to purchase coverage through Progressive. We'll get your hard-working vehicles back on the road fast following an accident. Instead of outsourcing, our commercial claims professionals manage all repairs to help save you time and money when it really matters - when you need to get back in business. Our commercial auto claims representatives are ready to assist you 24 hours a day, 7 days a week, every day of the year by calling 1-800-274-4499. You also have the ability to make payments, check billing activity, print policy documents, or check the status of a claim at progressiveagent.com.

Enclosed you will find:

- Your application. Please review and sign where indicated.
- Policy documents that require your signature.
- Request for additional information.

Within 2 weeks you will receive:

- Your policy contract and Commercial Auto Insurance Coverage Summary (Declarations Page).
  - Please take a few minutes to review these important documents and call Progressive if you have any questions about your coverage.
- Permanent ID cards for your wallet.

Receipt of initial payment for the policy

This is receipt of $7,841.00 for the initial payment on this policy. Payment was made by Credit Card.

If you have any questions, please call me at 1-847-316-9933.

Form 7/ELCOH15TP (05/06)

---

*PROGRESSIVE*
COMMERCIAL

## Application for Insurance
Please review, sign where indicated, and return

Policy number: 02434454-0
Named Insured: GPEX LLC

July 29, 2020
Page 1 of 6

### Policy and premium information for policy number 02434454-0

| | |
|---|---|
| Insurance company: | Artisan and Truckers Casualty Co<br>P.O. BOX 94739<br>Cleveland, OH 44101 |
| Agent: | MONIKA LAJEWSKA<br>ENSURE INC<br>101 LIONS DR #118<br>BARRINGTON, IL 60010<br>23987<br>1-847-316-9933 |
| Named Insured: | GPEX LLC<br><br>8926 N GREENWOOD AVE #148<br>NILES, IL 60714<br>e-mail address: ACC.GPEX@GMAIL.COM<br>Phone Number: 1-847-962-8690 |
| Financial responsibility vendor: | EXPERIAN<br>1-888-397-3742 |
| Policy period: | Jul 29, 2020 - Jul 29, 2021 |
| Effective date and time: | Jul 29, 2020 at 01:06PM ET |
| Total policy premium: | $7,841.00 |
| Initial payment required: | $7,841.00 |
| Initial payment received: | $7,841.00 |
| Payment plan: | 1 Payment |

### Rated drivers

The insured declares that no persons other than those listed in this application regularly operate the vehicle(s) described in this application. If you have notified us that you are in a civil union, your marital status will display below as "Married".

| Name | Date of birth | Age | Marital status | Driver's license number | State | Points | Additional information | CDL | Original CDL issued |
|---|---|---|---|---|---|---|---|---|---|
| ANDRZEJ LAJOSAREK | 03/03/1974 | 46 | Married | **** 4208 | IL | 0 | | YES | 2016 |

### Outline of coverage

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for a vehicle may not be combined with the limits for the same coverage on another vehicle.

**Auto coverage part**

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $6,414 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured Motorist | $1,000,000 combined single limit | | 65 |
| Underinsured Motorist | $1,000,000 combined single limit | | 60 |
| Medical Payments | $5,000 each person | | 21 |

---

Policy number: 02434454-0
GPEX LLC
Page 2 of 6

| | | |
|---|---|---|
| Subtotal policy premium | | $6,560 |

**Commercial General Liability coverage part**

| Description | Limits | Premium |
|---|---|---|
| Limited General Liability - Trucking Operations | $1,000,000/$2,000,000 | $386 |
| Each Occurrence | $1,000,000 | |
| General Aggregate | $2,000,000 | |
| Products/Completed Operations Aggregate | $2,000,000 | included |
| Personal and Advertising Injury | $1,000,000/any one person or organization | included |
| Damage to Premises Rented to You | $100,000/any one premises | included |
| Medical Expense | $5,000/any one person | included |
| Subtotal policy premium | | $386 |

**Motor Truck Cargo coverage part**

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Motor Truck Cargo | $100,000 | $1,000 | $850 |
| Subtotal policy premium | | | $860 |
| ICC Filing Fee | | | 35 |
| Total 12 month policy premium and fees | | | $7,841 |

**Rated commodities**

1. Plastic Products
2. Paper & Paper Products
3. Dept Store M'dse(Mixed Loads i'e Walmart)

**Auto coverage schedule**

1. **2014 VOLV VNL**
   VIN: 4V4NC9EJ3EN152355 Garaging Zip Code: 60118 Territory: 10 Radius: Unlimited miles
   Personal use: N Body type: Truck Tractor Use class: H

| | Liability | UM BI | UIM BI | Med Pay | | Auto Total |
|---|---|---|---|---|---|---|
| Liability Premium | $6228 | $65 | $60 | $21 | | $6,374 |

**Vehicle questions**

NONE

2. **2030 NON OWNED ATTACHED TRLR **
   VIN: NONE Garaging Zip Code: 60118 Territory: 10 Radius: Unlimited miles
   Personal use: N Body type: 20 Use class: H

| | Liability | | Auto Total |
|---|---|---|---|
| Liability Premium | $186 | | $186 |

**Vehicle questions**

NONE

**Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page.

Policy number: 02434454-0
GPEX LLC
Page 3 of 6

## Financial responsibility information

| Name | Home address | Age | Date of birth |
|------|--------------|-----|---------------|
| KONRAD KROL | 8926 N GREENWOOD AVE # 148 | 31 | 06/08/1989 |
| | NILES, IL 60714-0000 | | |

Is KONRAD KROL involved in the daily operation of the business? Yes

## Business information

| Business type | Sub business type | Other |
|---------------|-------------------|-------|
| Trucking For Hire | Other For Hire Trucking Operations | GENERAL FREIGHT |
| Applicant | Employer ID Number | |
| Corporation or LLC | 272177407 | |

Are any listed vehicles used to haul steel? No

Do any listed vehicles or the load require a hazardous material placard? No

Does the insured own the property/goods being hauled? No

Does the applicant have a USDOT Number? Yes

What is the USDOT Number?  3181801

We may use USDOT data collected by the Federal Motor Carrier Safety Administration to rate the policy.

## Additional policy questions

1. The current business was established 2010

Failure to provide proof of the year the current business was established may result in change in premium.

2. Does the insured currently have General Liability insurance or a Business Owners Policy?  Neither

## Premium discounts

| Policy | |
|--------|--|
| 02434454-0 | Paid in Full, Business Experience and CDL Experience |

## Prior insurance questions

Prior insurance:  Yes

Policy number:  WN265949841

Effective dates of coverage:  Jul 28, 2019 to Jul 28, 2020

Has applicant had continuous coverage for at least one year?  Yes

Bodily injury limits:  1000 CSL

## Underwriting questions

Does the applicant require any Waivers of Subrogation?  No    If yes, how many?  0

How many Additional Insureds are required?  0

Do we insure all commercial vehicles the insured owns?  Yes

Do we insure all vehicles that the insured uses in their business?  Yes

Must applicant comply with the Motor Carrier Act of 1980 (MCS90)?  Yes

Does applicant require a Federal filing?  Yes

How long has the insured's current federal operating authority been active?  Between 1 to 2 years

How long has the insured had continuous commercial insurance with their current carrier?  Between 1 to 2 years



Page 5

---

Policy number: 02434454-0
GPEX LLC
Page 4 of 6

## Uninsured/Underinsured Motorist Bodily Injury Coverage

If the policy's Bodily Injury Liability Coverage limit is greater than the minimum limits of required liability coverage, then Uninsured/Underinsured Motorist Coverage in an amount equal to the liability limits will be provided unless that higher limit of Uninsured/Underinsured Motorist Coverage is rejected in writing.  If the higher, optional limit of Uninsured/Underinsured Motorist Coverage is rejected, Uninsured/Underinsured Motorist Coverage will be provided with any lower limit selected, but not less than the minimum limits required for liability coverage.  The higher limits of Uninsured/Underinsured Motorist Coverage are available for a relatively modest increase in premium.

Uninsured/Underinsured Motorist Coverage protects the named insured, resident relatives, and occupants of a covered vehicle if any of those persons sustain bodily injury, including any resulting death, in an accident in which the owner or operator of a motor vehicle who is legally liable does not have insurance, has insurance in an amount less than the minimum amounts required by the financial responsibility laws of the state, or is a hit-and-run motorist (an uninsured motorist), or has the minimum amounts of liability coverage required by the financial responsibility laws of the state but with a liability coverage limit less than the limit of Uninsured/Underinsured Motorist Coverage purchased by you (an underinsured motorist).

Available Uninsured/Underinsured Motorist Coverage limits depend on the limit of liability coverage selected and may include:

$25,000 each person/$50,000 each accident
$50,000 each person/$100,000 each accident
$100,000 each person/$300,000 each accident
$250,000 each person/$500,000 each accident
$100,000 combined single limit
$300,000 combined single limit
$500,000 combined single limit
$750,000 combined single limit
$1,000,000 combined single limit
$1,500,000 combined single limit
$2,000,000 combined single limit



Page 6

---

Policy number: 02434454-0
GPEX LLC
Page 5 of 6

## Application agreement

### Verification of content

The insured declares that the statements contained herein are true to the best of their knowledge and belief. The insured also agrees to pay any surcharges applicable under the Company rules which are necessitated by inaccurate statements. The insured declares that no persons other than those listed in this application regularly operate the vehicle(s) described in this application. If a federal or state endorsement is attached to this policy that subjects the Company to public liability for negligence in the insured's operation, maintenance or use of motor vehicles, the insured: (1) declares that all commercially owned or operated vehicles have been disclosed to us and are listed on this Application; (2) will promptly notify us of any additional commercially owned or operated vehicles put into service in the future; and (3) understands that failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase. The insured understands that this policy may be rescinded and declared void if this application contains any false information or if any information that would alter the Company's exposure is omitted or misrepresented.

### Notice of information practices

The insured understands that to calculate an accurate price for their insurance, the Company may obtain information from third parties, such as consumer reporting agencies that provide driving, claims and credit histories. The Company may use a credit-based insurance score based on the information contained in the credit history. The Company or its affiliates may obtain new or updated information to calculate the renewal premium or service the insurance. The insured may access information about them and correct it if inaccurate. In some cases, the law permits the Company to disclose the information it collects without authorization. However, the Company will not share personal information with nonaffiliated companies for their marketing purposes without consent. Complete details are in the Company's Privacy Policy, which will be provided with this insurance policy and upon request. The insured has or will obtain from existing and new drivers employed or contracted by the insured, an acknowledgement that their driving record information may be disclosed to the insured or their employer, contractor, or agent in connection with the insurance being applied for hereunder. The insured agrees to submit to loss control inspections as often as the Company may reasonably require. The insured agrees that refusal to submit to an inspection is grounds for cancellation of this policy.

### The insured affirms that

If the initial payment is made by electronic funds transfer, check, draft, or other remittance, the coverage afforded under this policy is conditioned on payment to the Company by the financial institution. If the transfer, check, draft, or other remittance is not honored by the financial institution, the Company shall be deemed not to have accepted the payment and this policy shall be void.

If the initial payment is made by credit card, the coverage afforded under this policy is conditioned on payment to the Company by the credit card issuer. The insured understands that if the Company is unable to collect any initial payment from the card issuer, the Company shall be deemed not to have accepted the payment and this policy shall be void. The insured also understands that if a credit card transaction is authorized for any payment other than the initial payment, this policy will be subject to cancellation for nonpayment of premium if the Company is unable to collect payment from the card issuer. The Company is deemed "unable to collect" in the following instances: (1) when the insured reaches the credit limit on the credit card and the card issuer refuses the charge; (2) when the card issuer cancels or revokes the credit card; or (3) when the card issuer does not pay the Company, for any reason whatsoever, upon the Company's request.

If the insured has an outstanding unpaid balance from a prior Progressive commercial lines policy, payment of that balance is required. Nonpayment of a prior unpaid balance may result in the denial, cancellation, or nonrenewal of this policy.

### Other charges

The insured agrees to pay the installment fees shown on the billing statement that become due during the policy term and each renewal policy term in accordance with the payment plan they have selected. The insured understands that the amount of these fees may change upon policy renewal or if they change their payment plan. Any change in the amount of installment fees will be reflected on the payment schedule.



Page 7

---

Policy number: 02434454-0
GPEX LLC
Page 6 of 6

The insured understands that a returned payment fee of $20.00 will be assessed to the balance due on the policy if any check offered in payment is not honored by the bank or other financial institution.  Imposition of such charge shall not deem the Company to have accepted the check unconditionally.

The insured agrees to pay a late fee of $10.00 during the policy term and each renewal policy term when either the minimum amount due is not paid or payment is postmarked more than 2 days after the premium due date.  The amount of this fee may change upon policy renewal.

Signature of first named insured or
Authorized signatory of the named insured entity                      Date

X _____

Form 2421 IL (05-15)

Page 8

**PROGRESSIVE** COMMERCIAL

Policy number: 02434454-0
Policyholder:
GPEX LLC
July 29, 2020
Policy period - Jul 29, 2020 - Jul 29, 2021
Page 1 of 1

## This information will complete your purchase of insurance

Please review the items listed below and return the requested information to my office as soon as possible. Your insurance premium is based on the information you provided on the application. If we do not receive the items requested, your insurance premium may change.

**Sign and return**

☐ Your application

Please Note: review carefully as additional items may display on the back of this form. If no items are displayed, then no additional documentation is required at this time.

**Provide a copy of**

Failure to submit acceptable form(s) with the following information will result in a premium increase.

☐ For Proof of Current Insurance please submit:
- Auto Liability Limits
- Named Insured
- Inception and Expiration Dates
- Prior Policy Number

☐ For the Business Experience discount, please provide one of the following documents as proof. The document must contain the business name provided in the policy.
- 3 year Loss Runs
- 3 year-old tax document (Schedule C, Forms 1099, 1120, or 1065)
- State or County filing that shows the date when the business started or articles of incorporation

☐ We require one of the following pieces of documentation for proof of garaging: (1) Utility bills from the address in the insured's name, (2) Rental or lease agreement for premises or (3) Notarized letter from owner of garaging location.

Return to: MONIKA LAJEWSKA
ENSURE INC
101 LIONS DR #118
BARRINGTON, IL 60010
**Fax:** 1-847-316-9829

Form CR6733 E (05/04)

Page 9

---

ENSURE INC
101 LIONS DR #118
BARRINGTON, IL 60010

GPEX LLC
8926 N GREENWOOD AVE #148
NILES, IL 60714

**PROGRESSIVE** COMMERCIAL

Policy number: 02434454-0
Underwritten by:
Artisan and Truckers Casualty Co
July 30, 2020
Policy Period Jul 29, 2020 - Jul 29, 2021

## Welcome to Progressive

### Your coverage began on July 29, 2020

Thank you for purchasing your policy from ENSURE INC. We'll get your hard-working vehicles back on the road fast following an accident. Instead of outsourcing, our commercial claims professionals manage all repairs to help save you time and money when it really matters - when you need to get back in business. We are pleased to have you as a customer and we look forward to serving you.

**Enclosed you will find**
- Your Commercial Auto Insurance Coverage Summary (Declarations Page)
- Your policy contract
- Your permanent identification (ID) cards

**Contact ENSURE INC for personalized service at 1-847-316-9933**

As an independent agency, ENSURE INC provides a high level of service and counsel that is personalized to your needs and lifestyle. Please contact your agency for servicing your policy or for other insurance needs. If you need service when your agency is not available call 1-800-444-4487, 24 hours a day, 7 days a week.

**Access your policy online, anytime**

Don't forget that you can always log in to your policy online to pay your bill, check the status of a claim, or access policy documents anytime. Just visit us at progressiveagent.com

**Call 1-800-274-4499 to report a claim**

We get to work on your claim quickly, providing clear communication throughout the claim and repair process and personally handling your claim from beginning to end. Our Commercial Auto claims representatives are ready to assist you 24 hours a day, 7 days a week, every day of the year.

Form /43 (ULTRI-AGEN C) (05/06)

Page 10

---

ENSURE INC
101 LIONS DR #118
BARRINGTON, IL 60010

Named insured

GPEX LLC
8926 N GREENWOOD AVE #148
NILES, IL 60714

**PROGRESSIVE** COMMERCIAL

Policy number: 02434454-0
Underwritten by:
Artisan and Truckers Casualty Co
July 30, 2020
Policy Period Jul 29, 2020 - Jul 29, 2021
Page 1 of 3

**progressiveagent.com**
Online Service
Make payments, check billing activity, print policy documents, or check the status of a claim

**1-847-316-9933**
ENSURE INC
Contact your agent for personalized service.

**1-800-444-4487**
For customer service if your agent is unavailable or to report a claim

## Commercial Auto Insurance Coverage Summary
### This is your Declarations Page

Your coverage began the later of July 29, 2020 at 12:01 a.m. or at the time your application is executed on the first day of the policy period. This policy period ends on July 29, 2021 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (06/10). The contract is modified by forms 2852L (05/15), 4757XL (06/04), 2433IL (04/08), 2371 (06/10), 2434L (12/11), 4627XL (07/17), 4852IL (12/11), 4881IL (12/11) and 2228 (07/11).

The named insured organization type is a corporation.

Artisan and Truckers Casualty Co is a stock company (NYSE:PGR).
PO Box 94739 Cleveland, OH 44101.

Form 6989 IL (12/11)

Page 11

---

Policy number: 02434454-0
GPEX LLC
Page 2 of 3

## Outline of coverage

**Auto coverage part**

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| | | | $6,414 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured Motorist | $1,000,000 combined single limit | | 65 |
| Underinsured Motorist | $1,000,000 combined single limit | | 60 |
| Uninsured Motorist Property Damage | Rejected | | |
| Medical Payments | $5,000 each person | | 21 |
| **Subtotal policy premium** | | | **$6,560** |

**Commercial General Liability coverage part**

| Description | Limits | | Premium |
|---|---|---|---|
| Limited General Liability - Trucking Operations | $1,000/$2,000,000 | | $386 |
| Each Occurrence | $1,000,000 | | |
| General Aggregate | $2,000,000 | | |
| Products/Completed Operations Aggregate | $2,000,000 | | included |
| Personal and Advertising Injury | $1,000,000/any one person or organization | | included |
| Damage to Premises Rented to You | $100,000/any one premises | | included |
| Medical Expense | $5,000/any one person | | included |
| **Subtotal policy premium** | | | **$386** |

**Motor Truck Cargo coverage part**

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Motor Truck Cargo | $100,000 | $1,000 | $860 |
| **Subtotal policy premium** | | | **$860** |
| Fees | | | 35 |
| **Total 12 month policy premium and fees** | | | **$7,841** |

**Rated driver**

1. ANDRZEJ JARZABEK

**Rated commodities**

1. PLASTIC PRODUCTS
2. PAPER & PAPER PRODUCTS
3. DEPT STORE MDSE/MIXED LOADS (IE WALMART)

**Auto coverage schedule**

1. **2014 Volv Vnl**
   VIN: 4V4NC9EJ0EN152355    Garaging Zip Code: 60118    Radius: N/A

| | Liability | Uninsured Motorist | UIM BI | Med Pay | Auto Total |
|---|---|---|---|---|---|
| Liability Premium | $6,228 | $65 | $60 | $21 | $6,374 |

Form 6989 IL (12/11)

Page 12

Policy number: 02434454-0
GPEX LLC
Page 3 of 3

Progressive
PO Box 94600
Cleveland, OH 44101

**2.  2030 NON Owned Attached Trlr ***

VIN:  NONE          Garaging Zip Code:  60118          Radius:  N/A

| Liability | | Auto Total |
|---|---|---|
| Premium | $186 | $186 |

**Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page.

**Premium discounts**

| Policy | |
|---|---|
| 02434454-0 | Business Experience, CDL Experience and Paid in Full |

July 29, 2020
Policy number: 02434454-0

GPEX LLC
8926 N GREENWOOD AVE #148
NILES, IL 60714

Enclosed is the  MCS90.

Please retain this copy for your records.

If this endorsement subjects the Company to public liability for negligence in the insured's operation, maintenance or use of motor vehicles, you are required to inform us of all vehicles that are commercially owned or operated by the insured and to list them on your policy. Please review the current policy declaration page and inform us promptly of any additional vehicles that need to be listed. If you acquire (or acquire the services of) any additional commercially owned or operated vehicles in the future, you must promptly notify us of each such additional vehicle. Failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase.

Thank you,
Commercial Auto
Permit Issuance and Verification
1-800-444-4487
Form COVXLTR 05494

Form 6469 K (12/15)

---

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.

**U.S. Department**                                                OMB No. 2126-0008
**of Transportation**                                        Expiration: 01/31/2020
Federal Motor Carrier                                      Form MCS-90 Revised 01/05/2017
Safety Administration

USDOT Number:  3181801          Date Received:

**FORM MCS-90 ENDORSEMENT FOR
MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to (Motor Carrier name) GPEX LLC of (Motor Carrier state or province) 8926 N GREENWOOD AVE #148, NILES, IL 60714
Dated at MAYFIELD VILLAGE, OH 44143 on this 29th day of July, 2020
Amending Policy Number: CA 02434454-0 Effective Date: 07/29/2020
Name of Insurance Company: Artisan and Truckers Casualty Co

Countersigned by:                                        authorized company representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated in the limits shown (check only one):

☒  This insurance is primary and the company shall not be liable for amounts in excess of $750,000 for each accident.

☐  This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 1-800-444-4487.

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by giving thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

**ACCIDENT** includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish and wildlife.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

(continued on next page)

Form MCS-90 Page 1 of 2

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

**SCHEDULE OF LIMITS - PUBLIC LIABILITY**

| Type of Carriage | Commodity Transported | January 1, 1985 |
|---|---|---|
| (1) For-hire (in interstate or foreign commerce with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous). | $ 750,000 |
| (2) For-hire and Private (in interstate, foreign, or intrastate commerce with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |
| (3) For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous wastes, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| (4) For-hire and Private (in interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

* The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

Form MCS-90 Page 2 of 2

Policy number: 02434454-0
GPEX LLC
Page 1 of 1

## Notice of Uninsured Motorist Property Damage Coverage

Please be advised that you may purchase Uninsured Motorist Property Damage coverage for a qualifying motor vehicle if it is not protected by Collision coverage. Uninsured Motorist Property Damage coverage provides protection for that covered vehicle if it sustains property damage in an accident in which the owner or operator of a motor vehicle which is legally liable does not have insurance, has insurance in an amount less than the minimum amounts required by the financial responsibility laws of the state, or is a hit-and-run motorist who can be identified. If you do not select this coverage, it will not be provided.

If you'd like to obtain a quote or add Uninsured Motorist Property Damage coverage, please call us any time at 1-800-444-4487.

## Important Notice

Federal, state and local laws may require you to carry higher limits of liability insurance based on your business or vehicle type. It's your responsibility to comply with these laws.

Please contact the state department of transportation, your employer, or the city and municipalities where you operate, to determine if you're required to carry higher limits.

Form 4182 R (1/13)

---

Policy number: 02434454-0
GPEX LLC
Page 1 of 3

## Privacy Policy

### About this notice

We are committed to protecting your privacy and earning your trust. This notice describes the personal information we collect about you and how we use and protect it. It applies to our current and former customers who live in your state, and replaces earlier versions that we may have given to you.

### Summary

This section summarizes our privacy practices. For more detail, please read the entire privacy policy.

- We gather information from you, your transactions with us, and outside sources.
- We use your information only to conduct our business and provide insurance to you.
- We will share your information with your selected agent, broker or surplus lines broker and companies that provide certain products or services you request through us.
- We will not share your information with other companies for their independent marketing purposes without your consent.
- You can limit our use of some of this information for marketing purposes.
- We limit access to your information and use safeguards to help protect it.
- You may review and correct your information.

### What information do you collect about me?

We collect information about you to quote and service your insurance policy. This is called "Nonpublic Personal Information" if it identifies you and is not available to the public. Depending on the product, we collect it from some or all of the following sources. We have provided a few examples for each source, but not all may apply to you.

- **Application information:** You provide this on your application, through your agent, broker or surplus lines broker, by phone, or online. We may also obtain it from directories and other outside sources. It includes your name, street and e-mail addresses, phone number, driver's license number, Social Security number, date of birth, gender, marital status, type of vehicle,and information about other drivers.
- **Consumer report information:** We obtain this from consumer reporting agencies. It includes your driving record, claims history with other insurers, and credit report information. The information is kept by the consumer reporting agencies and disclosed by them to others as permitted by law.
- **Transaction information:** This is information about your transactions with us, our affiliates, or others. It includes your insurance coverages, limits and rates, and payment and claims history. It also includes information that we require for billing and payment.
- **Website information:** This information is unique to Internet transactions. It may include information about how you linked to our website, your IP address and information about your device, time of visit, and what pages you visit on our website. When you visit our websites, we use cookies, web beacons, and other technology to collect information about you and your activities on our websites to provide services to you, enhance your online experience, and advertise our products and services. Some of our websites contain more information about our website privacy practices. Please read it when using the sites.



---

Policy number: 02434454-0
GPEX LLC
Page 2 of 3

### Who might get information about me from you?

We share information about you only as permitted by law. We will not share your Nonpublic Personal Information with other companies for their independent marketing purposes without your consent. There is no need to "opt out" or tell us not to do this.

Disclosures include those that we feel are required to provide insurance claims or customer service, prevent fraud, perform research or comply with the law. Recipients include, for example, our family of companies, claims representatives, service providers, consumer reporting agencies, insurance agents and brokers, law enforcement, courts and government agencies. These parties may disclose the information to others as permitted by law. For example, consumer reporting agencies may disclose Transaction Information received from us to other insurance companies with which you do business.

Where permitted by law, we may also disclose Application or Transaction Information to service providers that help us market our products. These service providers may include financial institutions with which we have joint marketing agreements.

Some products or services offered by us are provided by other companies. We may share your Nonpublic Personal Information with these companies, which will use the information as described in their privacy policies. These companies may share with us information about you and your transactions with them.

### Can I limit use of my information for marketing?

We may share your Nonpublic Personal Information among our family of companies so they may offer products and services to you. You may limit some of this marketing by calling us at 1-844-582-5040. Your choice will apply to all people listed on your policy.

### How do you protect my information?

We restrict access to your Nonpublic Personal Information to our employees and others who we feel must use it to provide our products and services or otherwise run our business. Their use of the information is limited by law, our employee code of conduct, and written agreements where appropriate. We also maintain physical, electronic and procedural safeguards to protect your information.

### How can I review and correct information you have about me?

To review information we have about you, send a written request to Customer Service, PO Box 94739 Cleveland, OH 44101. You must describe the kind of information you want to review and state that your request is in response to this Privacy Policy. Include your full name, mailing address, and policy number (if applicable). Within 30 business days, we will describe what is available and how you may request corrections. We will also make anyone we show as having received the information within two years prior to your request. Finally, we will identify the companies that have provided Consumer Report Information about you.

You may review the information at our offices or receive a copy of it for a fee to cover our costs. We will not provide information that we feel is privileged, such as information about insurance claims or lawsuits.

To correct information about you, send a written request as described above, explaining your desired correction. Within 30 business days, we will either make the requested correction or tell you why we will not. We cannot correct Consumer Report Information, such as your credit report. To do this, you must contact the consumer reporting agency that provided it.

If we make your requested correction, we will notify you in writing. We will also notify anyone named by you who may have received the information within the previous two years. If required by law, we will also notify others who may have given it to or received it from us. If we refuse to make the requested correction, you may file with us a concise written statement about why you object, including the information you think is correct. Your statement will then become part of your file. It will be sent to the same persons to whom we would send a copy of any correction or change.

---

Policy number: 02434454-0
GPEX LLC
Page 3 of 3

### Our family of companies

This notice is from our family of companies. As of the date of this Privacy Policy, this includes: Artisan and Truckers Casualty Company, Blue Hill Specialty Insurance Company, Drive New Jersey Insurance Company, Mountain Laurel Assurance Company, National Continental Insurance Company, Progressive Advanced Insurance Company, Progressive Advantage Agency, Inc., Progressive American Insurance Company, Progressive Bayside Insurance Company, Progressive Casualty Insurance Company, Progressive Choice Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Advantage Agency, Progressive County Mutual Insurance Company, Progressive Direct Insurance Company, Progressive Express Insurance Company, Progressive Freedom Insurance Company, Progressive Garden State Insurance Company,Progressive Gulf Insurance Company, Progressive Hawaii Insurance Corp., Progressive Marathon Insurance Company, Progressive Max Insurance Company, Progressive Michigan Insurance Company, Progressive Mountain Insurance Company, Progressive Northeastern Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Paloverde Insurance Company, Progressive Preferred Insurance Company, Progressive Premier Insurance Company of Illinois, Progressive Professional Insurance Company, Progressive Security Insurance Company, Progressive Select Insurance Company, Progressive Southeastern Insurance Company, Progressive Specialty Insurance Agency, Progressive Specialty Insurance Company, Progressive Universal Insurance Company, Progressive West Insurance Company, and United Financial Casualty Company. Our family of companies also includes ARX Holding Corp. and the entities that it directly or indirectly majority owns or controls, but they are governed by a separate privacy policy available at americanstrategic.com.

Form 6468 (01/19)

Policy number: 02434454-0
GPEX LLC
Page 1 of 1

## Provider Network Program

If you're hurt in an accident that's covered by your Progressive policy, you may have access to a network of medical providers in your area who can treat you. These providers may offer reduced rates through the network that could allow you to get more treatment if necessary.

Visit progressive.com/providernetworks anytime to find out what provider networks are available in your area. The claim representative handling your medical claim will also be able to provide this information if you're in an accident.

**You are under no obligation to use any network referenced above. You're free to see a medical service provider of your choice.** Using a provider within the network doesn't necessarily mean that we'll cover the cost of their services. If you're in an accident, always check with the claim representative handling your medical claim to confirm what's covered.

Form 2271 (05/13)

Page 21

Policy number: 02434454-0
GPEX LLC
Page 1 of 1

## Policyholder Disclosure - Notice of Terrorism Insurance Coverage for Inland Marine (Motor Truck Cargo and Towing) and Commercial General Liability Coverages

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0.00, and does not include any charges for the portion of losses covered by the United States Government under the Act.

Form 4762 (07/15)

Page 22

Policy number: 02434454-0
GPEX LLC
Page 1 of 1

## Agent compensation disclosure

The insurance producer that sold you this policy is a licensed independent insurance agent authorized by Artisan and Truckers Casualty Co and by other insurance companies to solicit business on their behalf. We believe that independent agents who represent more than one company can better assist you in finding the combination of coverage, price and service that meets your needs.

We will pay your agent a commission for placing your policy with us. We may also help your agent pay for advertising and marketing that is designed to attract new customers.

Form 2116 (05/05)

# FAX

**To:** HAND TYPED FILING 02434454
Company:
**Fax:** 8005560014
**Phone:**

**From:**
**Fax:**
**Phone:**
**E-mail:** progressivecommercial@email.progressive.com

**NOTES:**

Date and time of transmission: Wednesday, July 29, 2020 1:21:18 PM
Number of pages including this cover sheet: 03

Page 23

Page 24

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION
ACCEPTANCE REPORT

USER ID:                DBABCOC1
TRANSMISSION NUMBER:    WEB82878
TRANSMITTED ON:         07/29/2020 13:20:40

COMPANY NAME:    ARTISAN & TRUCKERS CASUALTY COMPANY
SUMITTED BY:     PROGRESSIVE CASUALTY INS. CO. (26687-01)

| Docket | Form/Type | Policy Number | Effective Date | Action |
|--------|-----------|---------------|----------------|--------|
| MC-126989 | BMC-91X/BIPD | CA2434454 | 07/29/2020 | ACCEPTED |

Values in FMCSA Licensing & Insurance Database:

Legal Name:   GPEX LLC
Address:      8926 N GREENWOOD AVE #148
              NILES IL US 60714

91X Coverage(Type/Max/Underlying):    Primary / $750,000 / $0

Total: 1

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION
ACCEPTANCE REPORT

Total: 1

---

## COMMERCIAL GENERAL LIABILITY ENDORSEMENT

Various provisions in this endorsement restrict coverage.  Read the entire endorsement carefully to determine your rights, duties, and what is and is not covered.

We agree with that the following coverage is added to your Commercial Auto Policy:

### ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT

The following definitions are in addition to those found in the Commercial Auto Policy.  Except as otherwise defined in this endorsement, terms appearing in boldface type, whether in the singular, plural or possessive, will have the following meanings.

1.  **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about **your** goods, products or services for the purpose of attracting customers or supporters. **Advertisement** includes material placed on the Internet or on similar electronic means of communication; however, regarding websites, only that part of a website that is about **your** goods, products or services for the purpose of attracting customers or supporters is considered an **advertisement**.

2.  **"Coverage territory"** means:
    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;
    b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or
    c.  All other parts of the world if the injury or damage arises out of:
        (i)   Goods or products made or sold by **you** in the territory described in a. above;
        (ii)  The activities of a person whose home is in the territory described in a. above, but who is away for a short time on **your** business; or
        (iii) Personal and advertising injury offenses that take place through the Internet or similar electronic means of communication;
    provided that the **insured's** responsibility to pay damages is determined in a **suit** on the merits, in the territory described in a. above or in a settlement agreed to by **us**.

3.  **"Executive officer"** means a person holding any of the officer positions created by **your** charter, constitution, by-laws or any other similar governing document.

4.  **"Fungi"** means any type of form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

5.  **"Hostile fire"** means a fire or explosion that is uncontrolled or breaks out from where it was intended to be.

6.  **"Impaired property"** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful than intended by its manufacturer or designer because:
    a.  It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or
    b.  **You** have failed to fulfill the terms of a contract or agreement;
    if such property can be restored to use by:

    a.  The repair, replacement, adjustment or removal of **your product** or **your work**; or
    b.  **Your** fulfilling the terms of the contract or agreement.

7.  **"Insured"** means:
    a.  If **you** are designated in on the **Declarations Page** as:
        i.    An individual:  **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.
        ii.   A partnership or joint venture:  **you**.  **Your** members, partners, and their spouses, are also **insureds**, but only with respect to the conduct of **your** business.
        iii.  A limited liability company:  **you**.  **Your** members are also **insureds**, but only with respect to the conduct of **your** business.  **Your** managers are **insureds**, but only with respect to their duties as **your** managers.
        iv.   An organization other than a partnership, joint venture or limited liability company: **you**.  **Your** "executive officers" and directors are **insureds**, but only with respect to their duties as **your** officers or directors.  **Your** stockholders are also **insureds**, but only with respect to their liability as stockholders.
        v.    A trust:  **you**.  **Your** trustees are also **insureds**, but only with respect to their duties as trustees.
    b.  Each of the following is also an **insured**:
        i.    **Your** volunteer workers, but only while performing duties related to the conduct of **your** business.
        ii.   **Your** employees, other than **your** executive officers (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.
        No employee or volunteer worker is an insured for:
        (1)  **Bodily injury** or **personal and advertising injury**:
            (a)  to **you**, to **your** partners or members (if **you** are a partnership or joint venture), to **your** members (if **you** are a limited liability company), to a co-employee while in the course of his or her employment or performing duties related to the conduct of **your** business, or to **your** other volunteer workers while performing duties related to the conduct of **your** business;
            (b)  to the spouse, child, parent, brother, or sister of the co-employee or volunteer worker as a consequence of paragraph (1)(a) above;
            (c)  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or
            (d)  arising out of his or her providing or failing to provide professional health care services.
        (2)  **Property damage** to property:
            (a)  owned, occupied, or used by,
            (b)  rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by
            **you**, any of **your** employees, volunteer workers, any partner or member (if **you** are a partnership or joint venture), or any member (if **you** are a limited liability company).
        iii.  Any person (other than **your** employee or volunteer worker), or any organization while acting as **your** real estate manager.

iv. Any person or organization having proper temporary custody of your property if **you** die, but only:
  A. with respect to liability arising out of the maintenance or use of that property; and
  B. until **your** legal representative has been appointed.

v. **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this endorsement.

c. Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to the organization. However:

i. Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier;

ii. Coverage A does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization; and

iii. Coverage B does not apply to **personal and advertising injury** arising out of an offense committed before **you** acquired or formed the organization.

No person or organization is an **insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**8. "Insured contract"** for purposes of this endorsement only, means:

a. A contract for a lease of premises. However, any portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner is not an **insured contract**;

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement; and

f. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability, as referred to in this provision, means a liability that would be imposed by law in the absence of any contract or agreement.

However, this paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
  (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
  (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**9. "Loading or unloading"** means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;

b. While it is in or on an aircraft, watercraft or **auto**; or

c. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered; however, **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

**10. "Occurrence"** means an **accident**, happening or event, including continuous or repeated exposure to substantially the same general harmful conditions.

**11. "Personal and advertising injury"** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication in any manner, including, but not limited to, e-mail, blogs, and other electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner including but not limited to, e-mail, blogs, and other electronic publication, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your **advertisement**; or

g. Infringing upon another's copyright, trademark, trade dress or slogan in your **advertisement**.

**12. "Product/completed operations hazard":**

a. Includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:
  (i) Injury or damage caused by products that are still in **your** physical possession; or
  (ii) Work that has not yet been completed or abandoned. **Your work** will be deemed completed at the earliest of the following times:
    (a) When all of the work called for in **your** contract has been completed;
    (b) When all of the work to be done at the job site has been completed if **your** contract calls for work at more than one job site; or
    (c) When that part of the work done at a particular job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include **bodily injury** or **property damage** arising out of:
  (i) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle, including an aircraft or watercraft, not owned or operated by **you**, and that condition was created by the **loading or unloading** of that vehicle by any **insured**;
  (ii) The existence of tools, uninstalled equipment, or abandoned or unused materials

**13. "Property damage"** for purposes of this endorsement only, means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**14. "Silica"** means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**15. "Silica-related dust"** means a mixture or combination of silica and other dust or particles.

**16. "Suit"** means a civil proceeding involving allegations of damages because of **bodily injury, property damage** or **personal and advertising injury** to which this insurance applies. **Suit** includes but is not limited to:

a. An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with **our** consent; or

b. Any other alternate dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

**17. "Your product"** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
  (i) **You**;
  (ii) Others trading under **your** name; or
  (iii) A person or organization whose business or assets **you** have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

b. The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

**18. "Your work"** means:

a. Work or operations performed by **you** or on **your** behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

b. The providing of or failure to provide warnings or instructions.

## SECTION I – COVERAGES

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. **We** will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. **We** may, at **our** discretion, investigate any **occurrence** and settle any claim or **suit** that may result. However:

(1) The amount **we** will pay for damages is limited as described in Section II – Limits Of Liability; and

(2) **Our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C;

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to **bodily injury** and **property damage** only if:

(1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

(2) The **bodily injury** or **property damage** occurs during the policy period.

Any **bodily injury** or **property damage**, whether such **bodily injury** or **property damage** is known or unknown, that first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier), or that is, or alleged to be, in the process of occurring at the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier), even if the **occurrence** continues during this policy period, will be deemed to have occurred prior to the policy period. Any **bodily injury** or **property damage**, whether known or unknown, which is in the process of settlement, adjustment or **suit** as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier) will also be deemed to have occurred prior to the policy period.

**Bodily injury** or **property damage** that first occurs during this policy period includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of this policy period.

c. Damages because of **bodily injury** or **property damage** include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the **bodily injury**.

d. In the event that a claim or **suit** seeks damages, some of which are covered and others of which are not covered by this policy, the **insured** must agree to a reasonable allocation of the costs and fees of defense, and the **insured** will be responsible for payment of the costs and fees to defend the damages

or claims not covered by this policy. This agreement shall be reached in writing, signed by the **insured** and **us**, prior to the date when a responsive pleading to the claim or **suit** is filed on behalf of the **insured**. In the absence of such agreement, **our** duty to defend will apply only to those specific portions of the **suit** that are covered.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under Coverage A does not apply to:

**a. Expected or Intended Injury**

**Bodily injury** or **property damage** expected or intended from the standpoint of any **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

**Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the **insured** would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:
(i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and
(ii) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

**Bodily injury** or **property damage** for which any **insured** may be held liable by reason of:
(1) Causing or contributing to the intoxication of any person;
(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
(3) Any statute, ordinance or regulation relating to the sale, gift, distribution, selling, or use of alcoholic beverages.

This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

7

Page 33

compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
(b) the operation of any of the machinery or equipment listed in Paragraph B or C of the definition of **auto**.

**g. Mobile Equipment**

**Bodily injury** or **property damage** arising out of:
(1) The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **insured**; or
(2) The use of **mobile equipment** in, while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**h. Damage to Property**

**Property damage** to:
(1) Property **you** own, rent, or occupy, including any costs or expenses incurred by **you**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
(2) Premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises;
(3) Property loaned to **you**;
(4) Personal property in the care, custody or control of the **insured**;
(5) That particular part of real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or
(6) That particular part of any property that must be restored, repaired, or replaced because **your work** was incorrectly performed on it.

Paragraphs (1), (3), and (4) of this exclusion do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to **you** for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To **You** as described in Section II – Limits of Insurance, subsection 6.

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you**.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **property damage** included in the **products-completed operation hazard**.

**i. Damage to Your Product**

**Property damage** to **your product** arising out of it or any part of it.

9

Page 35

Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

**e. Employer's Liability**

**Bodily injury** to:
(1) An employee of any **insured** arising out of or within the course of:
i. that employee's employment by any **insured**; or
ii. performing duties related to the conduct of any **insured's** business; or
(2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

This exclusion applies:
(a) Whether the **insured** may be liable as an employer or in any other capacity; and
(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an **insured contract**.

**f. Aircraft, Auto or Watercraft**

**Bodily injury** or **property damage** arising out of:
(1) The ownership, maintenance, use, or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented, leased or loaned to any **insured**; or
(2) Any **auto** you do not own, lease, hire, rent or borrow that is used in connection with **your** business.
Use includes operation and **loading or unloading**.

This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by or rented or loaned to any **insured**.

This exclusion does not apply to:
(1) A watercraft while ashore on premises **you** own or rent;
(2) A watercraft **you** do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge;
(3) Parking an **auto** on, or on the ways next to, premises **you** own or rent, provided the **auto** is not owned by or rented or loaned to **you** or the **insured**;
(4) Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft; or
(5) **Bodily injury** or **property damage** arising out of:
(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a

8

Page 34

**j. Damage to Your Work**

**Property damage** to **your work** arising out of it or any part of it and included in the **products/completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

**k. Damage to Impaired Property or Property Not Physically Injured**

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or
(2) A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

**l. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) **Your product**;
(2) **Your work**; or
(3) **Impaired property**;
if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**m. Personal and Advertising Injury**

**Bodily injury** arising out of **personal and advertising injury**.

**n. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. under this Coverage A do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner. A separate limit of insurance applies to this coverage as described in Section II – Limits Of Insurance.

10

Page 36

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies. We will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, we will have no duty to defend the **insured** against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply. **We** may, at **our** discretion, investigate any offense and settle any claim or **suit** that may result.
   However:
   (1) The amount we will pay for damages is limited as described in Section II – Limits Of Liability; and
   (2) **Our** right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.
   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to **personal and advertising injury** caused by an offense arising out of **your** business but only if the offense was committed in the **coverage territory** during the policy period.

   **EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

   Coverage under Coverage B does not apply to **personal and advertising injury**:

   a. **Knowing Violation of Rights of Another**
   Caused by or at the direction of any **insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**.

   b. **Material Published with Knowledge of Falsity**
   Arising out of oral or written publication of material, if published by or at the direction of the **insured** with knowledge of its falsity.

   c. **Material Published Prior to Policy Period**
   Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

   d. **Criminal Acts**
   Arising out of a criminal act committed by or at the direction of any **insured**.

   e. **Contractual Liability**
   For any **loss** for which the **insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

   f. **Breach of Contract**

11

Arising out of a breach of contract, except an implied contract to use another's advertising idea in **your advertisement**.

g. **Quality or Performance of Goods – Failure to Conform to Statements**
Arising out of the failure of goods, products or services to conform to any statement of quality or performance made in **your advertisement**.

h. **Wrong Description of Prices**
Arising out of the wrong description of price of goods, products or services stated in **your advertisement**.

i. **Insureds in Media and Internet Type Businesses**
Committed by an **insured** whose business is:
(i) Advertising, broadcasting, publishing or telecasting;
(ii) Designing or determining content of websites for others; or
(iii) An Internet search, access, content or service provider.
However, this exclusion does not apply to Paragraphs 11.a, 11.b and 11.c. of **personal and advertising injury** under the Additional Definitions Used In This Endorsement Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for **you** or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

j. **Infringement of Copyright, Patent, Trademark or Trade Secret**
Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in **your advertisement**, of copyright, trade dress or slogan.

k. **Electronic Chatrooms or Bulletin Boards**
Arising out of an electronic chatroom or bulletin board the **insured** hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use of Another's Name or Product**
Arising out of the unauthorized use of another's name or product in **your** e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

## GENERAL POLICY EXCLUSIONS

**The following exclusions are applicable to both Coverage A and Coverage B.**

This endorsement provides no coverage for the following:

a. **Asbestos**

**Bodily injury, property damage** or **personal and advertising injury** arising out of, resulting from, caused by, or contributed to, either directly or indirectly, by:

12

1. inhaling, ingesting, or prolonged physical exposure to asbestos or goods or products containing asbestos; or
2. the use of asbestos in constructing or manufacturing any good, product or structure; or
3. the removal of asbestos from any good, product or structure; or
4. the manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;
This exclusion includes, but is not limited to, any cost for investigation, defense, abatement, mitigation, removal or disposal of asbestos or asbestos containing materials.

b. **Lead**

**Bodily injury, property damage** or **personal and advertising injury** arising out of, resulting from, caused by, or contributed to, either directly or indirectly, by lead or lead based products or any exposure or contamination of any person or property to such lead or lead based product. This exclusion includes but is not limited to any cost for abatement, mitigation, removal or disposal of paint, plumbing solder, pipes and fixtures or other items containing lead.

c. **Fungi or bacteria**

**Bodily injury, property damage** or **personal and advertising injury** which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

This coverage also does not apply to any **loss**, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, **fungi** or bacteria, by any **insured** or by any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

d. **Silica or silica-related dust**

1. **Bodily injury, property damage**, or **personal and advertising injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, **silica** or **silica-related dust**.

2. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **silica** or **silica-related dust**, by any **insured** or by any other person or entity.

e. **Employment-Related Practices Exclusion**

**Bodily injury** or **personal and advertising injury** to:

13

(1) A person arising out of any:
1. Refusal to employ that person;
2. Termination of that person's employment; or
3. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
(2) The spouse, child, parent, brother or sister of that person as a consequence of **bodily injury** to that person at whom any of the employment-related practices described in paragraphs 1, 2 or 3 above is directed.

This exclusion applies:
(a) Whether the **insured** may be liable as an employer or in any other capacity; and
(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

f. **Assault and/or Battery Exclusion**

The coverage under this policy does not apply to any claim, **suit**, cost or expense arising out of assault and/or battery, or of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any **insured** or **insured's** employees, patrons or any other person.

g. **Sexual Abuse and/or Molestation Exclusion**

The coverages under this policy do not apply to **bodily injury, property damage** or **personal and advertising injury** arising out of:
(1) The actual or threatened abuse or molestation or licentious, immoral or sexual behavior whether or not intended to lead to, or culminating in any sexual act, of any person, whether caused by, or at the instigation of, or at the direction of, or omission by, any **insured**, his/her employees, or any other person; or
(2) The actual or alleged transmission of any sexually transmitted disease.
Abuse includes, but is not limited to, negligent or intentional infliction of physical, emotional or psychological injury or harm.

This exclusion does not apply to the vicarious liability of the named insured for the acts or omissions of employees.

h. **Firearms Exclusion**

This insurance does not apply to any claims, **suits**, accusations or charges or any **loss**, cost or expense arising out of bodily injury, **property damage**, or **personal and advertising injury** arising out of the ownership, rental, maintenance, use or misuse of any firearms.

i. **War**

**Bodily injury, property damage** or **personal and advertising injury** due to war, whether declared or undeclared, civil war, insurrection, rebellion, revolution, or to any act or condition incident to these.

14

**j.  Pollution**

**Bodily injury, property damage, or personal or advertising injury** that would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants** at any time.

This includes any **loss, cost, or expense arising out of any:**
1.  Request, demand, order, or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants;** or
2.  Claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, **"pollutants".**

**s.  Nuclear Energy Liability**

(1)  **Bodily injury or property damage:**
   (a)  With respect to which an **insured** under the policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b)  Resulting from the **hazardous properties** of **nuclear material** with respect to which:
      1.  any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or
      2.  the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
(2)  **Bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.
(3)  **Bodily injury or property damage** resulting from **hazardous properties** of **nuclear material**, if:
   (a)  The **nuclear material:**
      1.  is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured;** or
      2.  has been discharged or dispersed from any **nuclear facility** owned by, or operated by or on behalf of, an **insured.**
   (b)  The **nuclear material** is contained in **spent fuel or waste** at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an **insured;** or
   (c)  The **bodily injury or property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) only applies to **property damage** to such **nuclear facility** and any property threat.
(4)  When used in this exclusion:
   (a)  **Hazardous properties** includes radioactive, toxic or explosive properties.

(b)  **Nuclear material** means source material, special nuclear material, or **by-product material.**
(c)  **Source material, special nuclear material, and by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.
(d)  **Spent fuel** means any fuel element or fuel component, solid, or liquid, which has been used or exposed to radiation in a **nuclear reactor.**
(e)  **Waste** means any waste material:
   1.  containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and
   2.  resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**
(f)  **Nuclear facility** means:
   1.  Any **nuclear reactor;**
   2.  Any equipment or device designed or used for:
      a)  separating the isotopes of uranium or plutonium;
      b)  processing or utilizing **spent fuel;** or
      c)  handling, processing or packaging **waste.**
   3.  Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or
   4.  any structure, basic, excavation, premises or place prepared or used for the storage or disposal of **waste;**
   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.
(g)  **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.
(h)  **Property damage** includes all forms of radioactive contamination of property.

**SUPPLEMENTARY PAYMENT – COVERAGES A AND B**

1.  **We** will pay, with respect to any **claim** we investigate or settle, or any **suit** against an **insured** we defend:
   a.  All expenses **we** incur.
   b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage under this policy applies. We do not have to furnish these bonds.
   c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
   d.  All reasonable expenses incurred by the **insured** at our request to assist **us** in the investigation or defense of the claim or **suit**, including actual loss earnings up to $250 a day because of time off from work.
   e.  All cost taxed against the **insured** in the **suit.**
   f.  Prejudgment interest awarded against the **insured** on the part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.
These payments will not reduce the limits of insurance.

2.  If **we** defend an **insured** against a **suit** and an indemnitee of the **insured** is also named as a party of the **suit**, we will defend that indemnitee if all of the following conditions are met:
   a.  The **suit** against the indemnitee seeks damages for which the **insured** has assumed the liability of the indemnitee in a contract or agreement that is an **insured contract;**
   b.  This insurance applies to such liability assumed by the **insured;**
   c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the **insured** in the same **insured contract;**
   d.  The allegations in the **suit** and the information we know about the **occurrence** are such that no conflict appears to exist between the interests of the **insured** and the interests of the indemnitee;
   e.  The indemnitee and the **insured** ask us to conduct and control the defense of that indemnitee against such **suit** and agree that **we** can assign the same counsel to defend the **insured** and the indemnitee; and
   f.  The indemnitee:
      (1)  Agrees in writing to:
         (a)  Cooperate with **us** in the investigation, settlement or defense of the **suit;**
         (b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **suit;**
         (c)  Notify any other insurer whose coverage is available to the indemnitee; and
         (d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and
      (2)  Provides us with written authorization to:
         (a)  Obtain records and other information related to the **suit;** and
         (b)  Conduct and control the defense of the indemnitee in such **suit.**
So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, and necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at **our** request will be paid as Supplementary Payments.  Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for **bodily injury and property damage** and will not reduce the limits of insurance.

**Our** obligation to defend an **insured's** indemnitee and pay attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:
   a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or
   b.  The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**COVERAGE C – MEDICAL PAYMENTS**

1.  **Insuring Agreement**
   a.  **We** will pay medical expenses as described below for **bodily injury** caused by an **accident:**
      (1)  On premises **you** own or rent;
      (2)  On ways next to premise **you** own or rent; or

   (3)  Because of **your** operations;
   Provided that:
      (1)  The **accident** takes place in the **coverage territory** and during the policy period;
      (2)  The expenses are incurred and reported to us within one year of the date of the **accident;** and
      (3)  The injured person submits to examination, at **our** expense, by physicians of **our** choice as often as **we** reasonably require.
   b.  We will make these payments regardless of fault.  These payments will not exceed the applicable limit of insurance.  We will pay reasonable expenses for:
      (1)  First aid administered at the time of an accident;
      (2)  Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
      (3)  Necessary ambulance, hospital, professional nursing and funeral services.

2.  **Exclusions**
   We will not pay expenses for **bodily injury:**
   a.  **Any Insured**
      To any insured.
   b.  **Hired Person**
      To a person hired to do work for or on behalf of any **insured** or a tenant of any **insured.**
   c.  **Injury on Normally Occupied Premises**
      To a person injured on that part of premises **you** own or rent that the person normally occupies.
   d.  **Workers Compensation and Similar Laws**
      To a person, whether or not an **employee** of any **insured**, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation, disability benefits, or unemployment law or a similar law.
   e.  **Athletic Activities**
      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.
   f.  **Products-Completed Operations Hazard**
      Included within the **product-completed operations hazard.**
   g.  **Coverage A Exclusions**
      To a person if the **bodily injury** would be excluded under Coverage A.
   h.  **War**
      Due to war, whether or not declared, or any act or condition incident of war.  War includes civil war, insurrection, rebellion or revolution.

**SECTION II – LIMITS OF LIABILITY**

1.  The Limits of Liability shown on the Declarations Page and the rules below fix the most we will pay regardless of the number of:
   a.  **Insureds;**

Form Z433 IL (04/08)

---

Form 2371 (06/10)

### LIMITED GENERAL LIABILITY - TRUCKING OPERATIONS ENDORSEMENT

This endorsement modifies insurance provided under the Commercial General Liability coverage form.

If your **declarations page** shows Limited General Liability, and this form number shows on the attachment line, then the Commercial General Liability coverage form is modified as follows:

**GENERAL POLICY EXCLUSIONS**

**The following exclusion is applicable to both Coverage A and Coverage B.**

This endorsement provides no coverage for the following:

**12. Other than Trucking Operations**

Bodily injury, property damage, or personal or advertising injury arising out of any activity other than the **insured's** trucking operations or suffered by any person present at the **insured's** premises for reasons that, principally, are not related to the conduct of the **insured's** trucking operations. For purposes of this exclusion, the following are deemed to be other than trucking operations and are excluded:

(i) the use of the **insured's** property for any non-business purpose, such as, for example, a residence; or

(ii) the conduct of any business activity or the rendering of any professional service that is not a necessary part of the **insured's** trucking operations.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

1

---

23

Page 49

Page 50

---

Form Z434 IL (12/11)

### MOTOR TRUCK CARGO LEGAL LIABILITY COVERAGE ENDORSEMENT

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT - LOSS TO COVERED PROPERTY**

Subject to the Limit of Liability, if you pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **covered property** that **you** are legally liable to pay as a **trucker** under a written bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage. For this coverage to apply, the **covered property** must, at the time of **loss**, be in **your** exclusive physical custody and control:

1. while in **due course of transit** in, on, or attached to an **insured auto;** or

2. during **loading or unloading.**

Coverage applies for **loss** to **covered property** only if the **loss** is caused by a **covered peril.** For **covered property** that is **your** property, our payment is not contingent upon **your** liability.

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty

1

---

to settle or defend any lawsuit, or make any additional payments, after the limit of liability for this **covered property** coverage has been exhausted by payment of judgments or settlements.

**INSURING AGREEMENT - LOSS TO BUSINESS EQUIPMENT**

Subject to the Limit of Liability, if **you** pay the premium for this Motor Truck Cargo Legal Liability Coverage, **we** will pay for the direct physical **loss** to **business equipment.** For this coverage to apply, the **business equipment** must, at the time of **loss,** be in **your** exclusive physical custody and control. Coverage applies for **loss** to **business equipment** only if the **loss** is caused by a **covered peril.**

**We** have the option to settle or defend any claim or lawsuit for damages covered by this endorsement. However, **we** have no duty to defend **you** against any lawsuit to which this insurance does not apply. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the limit of liability for **business equipment** coverage has been exhausted by payment of judgments or settlements.

**ADDITIONAL DEFINITIONS**

The following additional definitions apply throughout this Motor Truck Cargo Legal Liability Coverage endorsement whenever the defined term appears in boldface type, whether in the singular, plural, or possessive:

1. "**Business equipment**" means computer and related computer hardware, used exclusively in the management of **your** business, that **you** own or that is leased or loaned to **you**. **Business equipment** does not include computer, cell phone, smart phone, or any other electronic equipment, used or intended to be used for personal non-business use.

2

---

2. "Covered peril" means any external risks of direct physical loss to covered property or business equipment, except for those listed in a. through l. below as Excluded Perils.

**Excluded Perils: Please read the following list of excluded perils carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for these types of perils. We will not pay for any losses to covered property or business equipment caused by, resulting in or from, or arising out of these excluded perils regardless of any other cause or event that contributes concurrently or in any sequence to the loss.**

a. Civil Authority
Order of any civil authority, including seizure, confiscation, destruction, or quarantine of property. However, we will pay for loss or damage caused by or resulting from acts of destruction ordered by any governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this endorsement.

b. Nuclear Hazard, Pollutants
(i) Any weapon employing atomic fission or fusion; or
(ii) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct loss caused by resulting fire if the fire would be covered under this endorsement.
(iii) The release, discharge, seepage, migration, dispersal, or escape of pollutants, unless the release, discharge, seepage, migration, dispersal, or escape is caused by a specified peril.

c. War, Civil Commotion
(i) War, including undeclared or civil war;
(ii) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any gov-

3

ernment, sovereign or other authority using military personnel or agents;
(iii) Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority to hinder or defend against any of these; or
(iv) Strikers, locked-out workmen, or persons taking part in labor disturbances or riots, or civil commotions.

d. Inherent Vice
Contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; insects; vermin; change in flavor; or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

e. Criminal, Fraudulent, or Dishonest Acts
Criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another, whether or not such acts occurred during regular hours of employment, by:
(i) you;
(ii) your partners, officers, directors, trustees, or joint ventures;
(iii) others to whom you, your partners, officers, directors, trustees, or joint ventures entrust the property;
(iv) others who have an interest in the property; or
(v) the employees or agents of any party specified in (i) through (iv) above.
This Excluded Peril does not apply to acts of destruction by your employees, but we will not pay for theft by employees.

f. Consequential Loss
Loss of use, loss of market, loss of market value, or delay; or any other remote or consequential loss, other than direct physical loss, to covered property or business equipment.

4

g. Breakdown, Temperature, Humidity
(i) Mechanical or electrical breakdown or failure including breakdown or failure of a refrigeration unit or its associate components parts, or heating equipment installed in a cargo compartment; or
(ii) Wetness, humidity, dampness, dryness, or changes in or extremes of temperature unless it results from damage to a transporting vehicle caused by a covered cause of loss.
However, this Excluded Peril does not apply to loss caused by a fire or explosion if such fire or explosion would be covered under this endorsement.

h. Voluntary Parting, Nondelivery, Mysterious Disappearance
(i) Voluntary parting with title to, or possession of, the property due to fraudulent scheme, trick, or false pretense;
(ii) Nondelivery or misdelivery; or
(iii) Mysterious or unexplained disappearance; shortage of any property upon taking inventory; or theft of a part of the contents of any shipping package.

i. Fines, Penalties, and Costs
Any costs, fines, punitive damages, assessments, attorney fees, court costs, or other penalties that you are required or liable to pay as a result of your violation of any law or regulation, or as a result of the violation of any law or regulation relating to any delay in the payment, denial, or settlement of any claim.

j. Pre-existing Damage
We will not pay for pre-existing damage to any covered property or business equipment.

With respect to auto haulers, we will not pay for pre-existing damage to vehicles being transported by the insured. For coverage to

5

apply, the insured auto hauler must provide to us a signed inspection document attesting to the condition of covered property before loading.

k. Installation Operations
Your operation as rigger, hoister, erector, installer, or dismantler.

l. Business Equipment Damage
We will not pay for the following damage to business equipment:
(i) Wear and tear, any quality in the equipment that causes it to damage or destroy itself, hidden or latent defect, or gradual deterioration;
(ii) Structural, mechanical, or electrical failure or breakdown; or
(iii) Damage caused by maintenance or a software upgrade or download.

3. "Covered property" means lawful goods and merchandise of others, except for the items listed in a. through j. below as Excluded Properties. Covered property includes goods and merchandise owned by you while loaded for shipment in or on an insured auto, whether or not shipped under a bill of lading or shipping receipt. When used in this endorsement, goods and merchandise means products destined for market and/or sale. Covered property does not include any equipment you own that is being transported between work sites. Covered property also does not include autos you lease, hire, rent, or borrow.

**Excluded Properties: Please read the following list of excluded properties carefully. Coverage will not be afforded under this Motor Truck Cargo Legal Liability Coverage endorsement for loss to these types of properties.**

a. Art, Jewelry, Metals, Money, Papers
Objects of art, including paintings and statuary; jewelry, precious or

6

semi-precious stones; precious or semi-precious metals or alloys; money and securities of any kind including monies collected or not collected under a C.O.D., bill of lading, or shipping receipt; food stamps, lottery tickets, notes, money orders, traveler's checks, accounts, bills, deeds, or other evidence of debt; valuable papers of any kind including passports, manuscripts, mechanical drawings, and blueprints.

b. **Contraband**
Contraband or property in the course of illegal transportation or trade.

c. **Live Animals**
Live animals, birds, or fish, including cattle or poultry, unless death results or is made necessary within 24 hours by a **specified peril**; or unless they escape or stray from the scene of **loss** and cannot be located, but only if the escape or straying is caused by a **specified peril**. We do not cover your liability for reduction in the market value or downgrading of live animals, birds, or fish due to minor injuries, scrapes, and bruises.

d. **Other Carrier**
Any property while in the custody of any other carrier.

e. **Property Not Under Bill of Lading**
Any property for which no bill of lading, tariff document, rate confirmation sheet, shipping receipt, or contract of carriage has been issued, or which is carried gratuitously or without charge.

f. **Storage**
Any property in or on an **insured auto** after it has remained at any location for more than 72 hours. This includes locations **you** own or use. This exclusion does not apply to delays in transportation out-

7

side of **your** control due to severe weather, as long as transport resumes as soon as the weather emergency has ended.

g. **Transporting Vehicles**
Any transporting vehicle or conveyance, including its equipment such as tarpaulins, shipping containers, chains, or binders.

h. **Explosive or Radioactive Material**
Explosives, ammunition, fireworks, or radioactive material.

i. **Pharmaceuticals, Tobacco, Alcohol**
Prescription pharmaceuticals; tobacco products; or alcoholic beverages, other than beer or wine.

j. **Mobile/Modular Homes**
**Mobile/Modular Homes** whether carried on or attached to the **insured auto**.

4. **"Earned freight charges"** means freight charges from the point of departure to the point of **loss**.

5. **"In due course of transit"** means being shipped from the time **you** assume care, custody, or control of the **covered property** for the purpose of the actual movement of **covered property** from the point of shipment bound for a specific destination and ending when one of the following first occurs:
   a. the **covered property** is accepted by, or on behalf of, the consignee at the intended destination;
   b. the **covered property** is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination;
   c. 72 hours after arrival at destination; or
   d. any other stop that exceeds 72 hours.

8

**In due course of transit** includes ordinary, reasonable, and necessary stops, interruptions, delays, or transfers incidental to the route and method of shipment.

6. **"Insured auto"** is used in this endorsement as defined in the General Definitions section of **your** Commercial Auto Policy, and includes **trailers** listed on the **declarations page**. In addition, as used in this endorsement, **insured auto** includes:
   a. Non-owned **trailers** designed primarily for travel on public roads while **in due course of transit**; and
   b. Any **temporary substitute auto**.
   With respect to this endorsement, if **we** provide coverage for an additionally acquired **auto**, **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

7. **"Loading or unloading"** means the direct physical process of hoisting, lifting, or moving **covered property**:
   a. onto an **insured auto** from the ground or loading docks adjacent to such **insured auto**; or
   b. off of an **insured auto** to the place where it is finally delivered.
   However, for auto haulers, **loading or unloading** means moving **covered property** onto or off of **your insured auto**, including moving a motor vehicle under its own power solely for the purpose of **loading** or **unloading** it from the **insured auto**, but no more than one road mile from the **insured auto**.

8. **"Mobile/Modular Homes"** means prefabricated housing units, factory-built homes, mobile homes, and modular homes. The term does not include motor homes or travel trailers designed for use on public roads.

9. **"Pollutant"** is used in this endorsement as defined in the General Defi-

9

nitions section of **your** Commercial Auto Policy. [1]

10. **"Specified peril"** means:
   a. fire, lightning, or explosion;
   b. smoke, but this cause of **loss** does not include smoke from exhaust fumes or gases of the transporting vehicle, agricultural smudging, or industrial operations;
   c. windstorm or hail, but this cause of **loss** does not include **loss** caused by or resulting from:
      (i) heat, cold, or change in or extremes of temperature; or
      (ii) ice (other than hail), snow, or sleet, whether driven by wind or not;
   d. collision, overturn, or derailment of a transporting conveyance. With respect to live animals, birds, or fish, this cause of **loss** does not include **loss** caused by or resulting from the **insured auto** coming in contact with:
      (i) the roadbed;
      (ii) curbing;
      (iii) rails or ties of railways; or
      (iv) a stationary object while backing for **loading** or **unloading** purposes;
   e. collapse of a bridge, wharf, dock, platform, or culvert;
   f. stranding, sinking, burning, or collision on any ferry;
   g. flood, meaning the rising of any natural body of water; and
   h. theft, but excluding pilferage by **you** or **your** employees, anyone with a financial interest in the cargo or their employees, authorized representatives or anyone else entrusted with the cargo. Theft does not include **loss** caused by or resulting from:
      (i) wrongful conversion; or
      (ii) acceptance of counterfeit money, fraudulent post office or express money orders, or checks or promissory notes not paid

[1] CSLEMC1 11/15/2011: State specific carried over.

10

upon presentation.

With respect to live animals, birds, or fish, we will extend this theft coverage to pay for direct physical loss to live animals, birds, or fish caused by theft of:

(i) the entire load of live animals, birds, or fish; or

(ii) the insured auto in or on which the live animals, birds, or fish are loaded.

However, this coverage extension does not apply to the loss of individual animals or less than the entire load of live animals, birds, or fish unless the insured auto is first stolen.

11. "Trucker" means any person, organization, or motor carrier engaged in the business of transporting property for hire.

**ADDITIONAL PAYMENTS**

In addition to the applicable limit of liability:

1. **Earned Freight**

We will pay earned freight charges that are due to you if you are unable to collect them from others because of a loss to covered property that is caused by a covered peril. The most we will pay under this additional coverage for all freight charges in any one loss is $10,000.

2. **Removal Expenses**

a. We will pay removal expenses incurred to remove debris of covered property, which results from a loss caused by a covered peril that occurs during the policy period. The term "debris" does not include pollutants.

b. We will also pay removal expenses incurred to extract pollutants from land or water, if the discharge, dispersal, migration, or release of the pollutants is caused by or results from loss to covered property, and if such loss is caused by a covered peril during the

11

policy period.

We do not pay for:

(i) the cost of testing; evaluating; observing; or recording the existence, level, or effects of pollutants. However, we will pay the cost of testing that is necessary for the extraction of pollutants from land or water.

(ii) any damage to your insured auto from pollutants.

c. The most we will pay for all removal expenses described in a. or b. above arising out of any one loss is $25,000.

d. The expenses for removal of covered property debris and pollutants will be paid only if they are reported to us in writing within 180 days of the earlier of:

(i) the date of the direct physical loss; or

(ii) the end of the policy period.

3. **Expenses in Defense or Settlement of Claims**

We will pay, with respect to any claim we investigate or settle, or with respect to any lawsuit against any insured we defend:

a. all expenses we incur.

b. the premium on any appeal bond or attachment bond required in any lawsuit we defend. However, we have no duty to purchase a bond in a principal amount exceeding our limit of liability, and we have no duty to apply for or furnish those bonds.

c. all reasonable expenses incurred by you at our request, including actual loss of earnings up to $250 per day because of time off from work.

d. all costs taxed against the insured in any lawsuit against the insured we defend.

e. interest accruing after entry of judgment on that part of the judgment that does not exceed our limit of liability for any lawsuit we defend. This does not apply if we have not been given notice of suit or the opportunity to defend an insured. Our payment, offer in writing, or deposit in court of that part of the judgment that does not ex-

12

ceed our limit of liability ends our duty to pay interest that accrues after the date of our payment, written offer, or deposit.

f. interest accruing before entry of judgment on that part of the judgment that does not exceed our limit of liability for any lawsuit we defend. Our offer to pay that part of the judgment that does not exceed our limit of liability ends our duty to pay that part of interest that accrues after our offer.

4. **Sue and Labor**

a. We will pay the necessary expenses you incur to prevent further loss to covered property if that expense is incurred within a 12-hour period after the covered peril occurs.

b. If, in the event of an occurrence, it becomes necessary to move the covered property in order to avoid a loss to the covered property, we will pay the reasonable and necessary costs incurred by you to move the covered property away from the location of the occurrence.

c. The most we will pay for the aggregate of all expenses incurred under subparts a. and b. above is $7,500.

**LIMITS OF LIABILITY**

1. **Amount of Payment**

a. Subject to subsections 2, 3, and 4 below, in the event of a loss to covered property, we will pay the least of the following:

(i) Your legal liability for the direct physical loss to the covered property;

(ii) The declared value of the covered property shown in the bill of lading, tariff documents, rate confirmation sheet, shipping receipt, or contract of carriage;

(iii) For household goods, the amount specified in any advice of coverage, or other document evidencing an agreed valuation for property in transit;

13

(iv) The actual cost to the shipper to repair or replace the covered property with material of like kind and quality, not including any claim for diminution of value to the covered property; or

(v) The "Cargo" limit shown on the declarations page.

b. Regardless of the number of insured autos or trailers involved, insureds, premiums paid, policies issued by us, claims made, or lawsuits brought, the most we will pay for loss to covered property in any one occurrence is the limit of insurance shown on the declarations page for "Cargo Liability" coverage.

c. With respect to business equipment, subject to subsections 2, 3, and 4 below, in the event of a loss, we will pay the lower of:

(i) the amount necessary to replace the business equipment; or

(ii) the amount necessary to repair the business equipment.

We will not pay the amount necessary to repair or replace business equipment unless the equipment has been, or is actually going to be, repaired or replaced. Subject to the limit of liability for this coverage, we will pay only the amount you are required to spend to repair or replace the business equipment.

The most we will pay for loss to business equipment in any one occurrence is the $5,000 limit of liability for this business equipment coverage.

2. **Deductible**

For each loss to covered property that qualifies for coverage under this endorsement, the deductible shown on the declarations page for this "Cargo Liability" coverage will be applied to reduce the loss payable on the covered property. A $250 deductible will apply to each loss to business equipment. For each loss to business equipment that qualifies for coverage under this endorsement, the business equipment deductible will be applied to reduce the loss payable on the business equipment.

14

If there is other **loss** arising out of a single occurrence that applies under this endorsement, or under the associated Commercial Auto Policy, and/or any other endorsement attached thereto, only one deductible will be applied to the aggregate of all **loss** components. The highest deductible applicable to any single coverage implicated in the **loss** will apply.

If **we** pay for any part of a deductible in the settlement of any claim or lawsuit, **you** must reimburse **us** for the deductible or the portion thereof that **we** paid.

3. **Insurable Interest**
   **We** will not cover more than **your** insurable interest in any **covered property** or **business equipment**.

4. **Sets or Parts**
   a. **Sets**
      The **loss** to an article that is part of a set will not be considered a **loss** to the entire set. Therefore, if there is a **loss** to **covered property** or **business equipment** that is part of a set, **we** at our option may choose to:
      (a) repair or replace any part to restore the pair or set to its value before the **loss** or damage; or
      (b) pay the difference between the value of the pair or set before and after the **loss** or damage.
   b. **Parts**
      If **loss** is to a part of **covered property** or **business equipment** that consists of several parts, **we** will pay for only the lost or damaged part.

**DUTIES IN CASE OF A LOSS**

15

The following additional duties apply under this Motor Truck Cargo Legal Liability Coverage endorsement:

1. **You** must take all reasonable steps to protect **covered property** and **business equipment** at the time of and after a **loss** to avoid further damage.

2. **You** must allow **us** to have all property involved in an **accident** or **loss** inspected and appraised before its repair or disposal.

3. **You** must give **us** a copy of the descriptions and schedules from all insurance policies applicable to the **covered property** or **business equipment**, whichever the case may be, that was destroyed or damaged.

4. **You** must send **us** a signed, sworn proof of loss containing all the information **we** request to settle the claim. **You** must do this within 60 days after our request. **We** will supply **you** with the necessary forms.

5. **You** must, as often as **we** reasonably require, submit, and so far as is within **your** power, cause all other persons interested in the **covered property** or **business equipment**, whichever the case may be, and members of their households and employees to submit, to examination under oath by any person **we** name, and, in connection with any claim made, to produce for examination all books of accounts, uniform bills of lading, shipping receipts, invoices, drivers' log books, and any other documents, at such reasonable time and place as **we** may designate, and permit extracts and copies thereof to be made.

6. Unless **we** give our permission, **you** may not dispose of the carcass(es) of animals, birds, or fish until **we** inspect or examine such carcass(es). However, this clause does not apply if such disposal is required by law or ordinance.

16

**GENERAL PROVISIONS**

1. When used in this endorsement, subsection 3 - Other Insurance of the General Provisions section of **your** Commercial Auto Policy is deleted in its entirety and replaced by the following:

   a. **Other Insurance**
      (i) **You** may have other insurance subject to the same terms, conditions, and provisions as the insurance provided by this endorsement. If **you** do, **we** will pay our share of the covered **loss**. Our share is the proportion that the applicable limit of liability under this endorsement bears to the total of the limits of liability of all policies covering on the same basis.
      (ii) If there is other insurance covering the same **loss**, other than that described in paragraph (i) above, **we** will pay only for the amount of the covered **loss** in excess of the amount due from that other insurance, whether **you** can collect on it or not. However, **we** will not pay more than our applicable limit of liability.

   b. **Insurance Under Two or More Coverages**
      If two or more of this endorsement's coverages apply to the same **loss**, **we** will not pay more than the amount of the **loss** as determined under subsection 1 - Amount of Payment in the Limits of Liability section of this endorsement, or the limit of liability applicable to the most specific coverage, whichever is less.

2. The following additional General Provisions apply to this Motor Truck Cargo Legal Liability Coverage endorsement:

   a. **Payment of Loss**
      (i) A covered **loss** will be payable 30 days after a satisfactory

17

proof of loss is received or a final judgment award has been entered.

**We** may make payment for a **loss** either to **you** or the owner of the property. **We** will not pay the owner more than their financial interest in the property. If **we** make a payment to the owner of the property, this shall be in full satisfaction of any claim by **you** for which such payment has been made.

If a **loss** has been paid or made good by others, **we** will not be liable for any part of the **loss**. Payment for a **loss** is required only if **you** have fully complied with all the terms of this policy.

(i) With respect to **covered property**, **we** have the following options:
   (a) pay the value of the **loss** as determined under subsection 1 - Amount of Payment in the Limits of Liability section of this endorsement;
   (b) pay the cost of repairing or replacing the **covered property**;
   (c) rebuild, repair, or replace the **covered property** with property of like kind and quality, to the extent practicable, and within a reasonable time; or
   (d) take all or any part of the damaged property at an agreed value.

(ii) With respect to **business equipment**, **we** will pay the **loss** as determined under subsection 1 - Amount of Payment in the Limits of Liability section of this endorsement.

   b. **Abandonment**
      **We** may keep all or part of the property at the agreed or appraised value, but **you** may not abandon any property to **us** without our

18

written consent.

**c. Conformity with Statute**

When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

**d. Recovered Property**

If you or we recover any covered property or business equipment for which we have made payment under this policy, you or we will promptly notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If you keep the property, you must return to us the amount we paid to you for the covered property or business equipment, whichever the case may be. We will pay recovery expenses and the expenses to repair the recovered covered property and business equipment, subject to the limit of liability.

If we have already paid you the loss amount at the time of any salvage or recovery, the amount you receive for the recovered covered property will accrue entirely to our benefit until you have paid any amounts owed to us as a result of the adjustment to the loss amount.

**e. Salvage**

Any recovery of salvage on a loss will accrue entirely to our benefit until the sum we paid has been replaced. If our benefit of salvage recovery exceeds the sum that we paid, we will return the difference to you, less any salvage recovery expenses.

**f. Policy Period and Territory**

Coverage under this endorsement applies only to losses that occur during the policy period shown on the declarations page and which occur within the United States or Canada.

19

**g. Coverage Required by Filings**

If we have filed a certificate of insurance on your behalf with any regulatory or governmental agency, and:

(i)  we are required to pay any judgment entered against you; or

(ii)  we agree to settle a claim or lawsuit;

arising out of a loss that is covered solely because of the existence of such certificate of insurance, we will be obligated to pay no more than the minimum amount required by that agency or any applicable law. If any payment is based solely on the existence of such certificate, you must reimburse us in full for our payment, including legal fees and costs we incurred, whether the payment is made as a result of judgment or settlement.

**h. No Benefit to Bailee**

No person or organization other than you, having custody of covered property or business equipment, will benefit from this insurance.

**i. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this endorsement has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

(i)  Prior to a loss to the covered property or business equipment.

(ii)  After a loss to the covered property or business equipment, but only if, at the time of loss, that party is one of the following:

(a)  someone insured by this insurance; or

(b)  a business firm:

(1)  owned or controlled by you; or

20

(2)  that owns or controls you.

**j. Legal Action Against Us**

No one may bring a legal action against us under this endorsement unless:

(i)  there has been full compliance with all the terms of this policy; and

(ii)  the action is brought within two years after you first have knowledge of the direct loss or damage.

**k. Premiums**

The first named insured shown on the declarations page:

(i)  is responsible for the payment of all premiums; and

(ii)  will be the payee for any return premiums we pay.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

21





## ILLINOIS
### COMMERCIAL AUTO FORMS

**PLEASE READ YOUR POLICY AGREEMENT CAREFULLY.**
Provisions of this Agreement and the endorsements restrict coverage. Be certain you understand all of the coverage terms, the exclusions, and your rights and duties.

All forms in the endorsement section do not automatically pertain to your policy. Please refer to your declarations page for form numbers associated with your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy. All other parts of the policy that have not been modified by an endorsement will remain unchanged.

This booklet contains Form 6912 (06/10) and a section of optional endorsements.


*PROGRESSIVE*
COMMERCIAL

Form 6912 (06/10)

## COMMERCIAL AUTO POLICY

### INDEX OF POLICY PROVISIONS

PAGE

DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS. . . . . . . . . . . . . . . . . .1

GENERAL DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

PART I - LIABILITY TO OTHERS
   Insuring Agreement - Liability To Others . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
   Additional Definitions Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . .6
   Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
   Out-of-State Coverage Extension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
   Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

PART II - DAMAGE TO YOUR AUTO
   Insuring Agreement - Collision Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
   Insuring Agreement - Comprehensive Coverage. . . . . . . . . . . . . . . . . . . . . . .14
   Insuring Agreement - Fire and Theft with Combined
      Additional Coverage (CAC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
   Additional Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
   Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
   Additional Definition Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . .16
   Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
   Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
   Deductible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
   Salvage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
   No Benefit to Bailee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
   Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
   Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
   Loss Payee Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

GENERAL PROVISIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

i

## COMMERCIAL AUTO POLICY

If you pay your premium when due, **we** will provide the insurance described in this policy.

### DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to **your** policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident**, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a relative, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as **we** require;
6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;
7. authorize **us** to obtain medical and other records;
8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss**. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under the policy;
9. allow **us** to have the damage to an **insured auto** or other auto involved in an **accident** or **loss** inspected and appraised before its repair or disposal; and
10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

### GENERAL DEFINITIONS

The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.

1. **"Accident"** means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

2. **"Auto"** means a land motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
   a.  equipment designed and used primarily for:
      (i)  snow removal;
      (ii)  road maintenance, but not construction or resurfacing;
      (iii)  street cleaning;
   b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

3. **"Bodily injury"** means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4. **"Declarations"** or **"declarations page"** means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage for each specifically described auto.

5. **"Insured auto"** or **"your insured auto"** means:
   a.  Any auto specifically described on the **declarations page**; or
   b.  An additional auto for Part I - Liability To Others and/or Part II - Damage To **Your Auto** on the date **you** become the owner if:
      (i)  **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii)  **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii)  no other insurance policy provides coverage for that **auto**; and
      (iv)  **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.
   If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**,

1

2

these changes to your policy will not become effective until after you ask **us** to add the coverage, increase your limits or make such changes for the additional **auto**. We may charge premium for the additional **auto** from the date you acquire the **auto**.

With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II - Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:
(i)  a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
(ii)  any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

c.  Any replacement **auto** on the date **you** become the owner if:
(i)  **you** acquire the **auto** during the policy period shown on the **declarations page**;
(ii)  the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown, of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
(iii)  no other insurance policy provides coverage for that **auto**.
If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30 day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits or make any other changes to **your** policy during this 30 day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes.

5.  "**Insured contract**" means:
a.  A lease of premises;
b.  A sidetrack agreement;
c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

3

e.  That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your** employees or agents; or
f.  That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your** employees to pay for **property damage** to any **auto** rented or leased to **you** or any of **your** employees.

An "**insured contract**" does not include that part of any contract or agreement:
1.  That indemnifies a railroad for bodily injury or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or
2.  That pertains to the loan, lease or rental of an **auto** to **you** or any of **your** employees, if the **auto** is loaned, leased or rented to **you** or any of **your** employees, if the **auto** is loaned or leased with a driver; or
3.  That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for your use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

7.  "**Loss**" means sudden, direct and accidental loss or damage.

8.  "**Mobile equipment**" means any of the following types of land vehicles including, but not limited to, any attached machinery or equipment:
a.  Bulldozers, farm implements and machinery, forklifts and other vehicles designed for use principally off public roads;
b.  Vehicles you use solely on premises you own or rent and on accesses to public roads from these premises, unless specifically described on the **declarations page** and not defined as mobile equipment under other parts of this definition;
c.  Any vehicle that travels on crawler treads, or that does not require licensing in the state in which you live or your business is licensed;
d.  Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached:
(i)  Power cranes, shovels, loaders, diggers or drills; or
(ii)  Road construction or resurfacing equipment such as graders, scrapers or rollers.
e.  Vehicles not described in Paragraphs a., b., c., or d. above that are not self-propelled and are used primarily to provide mobility to permanently attached equipment of the following types:
(i)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or
(ii)  Cherry pickers and similar devices used to raise or lower workers.

4

f.  Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo. However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle law are considered **autos**.

9.  "**Occupying**" means in, on, entering or exiting.

10.  "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11.  "**Private passenger auto**" means a land motor vehicle:
a.  of the private passenger, pickup body, or cargo van type;
b.  designed for operation principally upon public roads;
c.  with at least four wheels; and
d.  with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
However, **private passenger auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

12.  "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

13.  "**Relative**" means any person living in the household in which the named insured resides who is related to the named insured by blood, marriage, or adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

14.  "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction.

15.  "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

16.  "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

17.  "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

5

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT - LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for bodily injury, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the **same accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A.  When used in Part I - Liability To Others, **insured** means:
1.  **You** will respect to an **insured auto**.
2.  Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
(a)  A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
(b)  A person, other than one of **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), officers or directors (if **you** are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an **insured auto**.
(c)  The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.
3.  Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.

If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

6

**B.** When used in Part I - Liability To Others, **insured auto** also includes:
1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
2. Mobile equipment while being carried or towed by an **insured auto**; and
3. Any **temporary substitute auto**.

**C.** When used in Part I - Liability To Others, **"covered pollution cost or expense"** means any cost or expense arising out of:
1. Any request, demand, order, or statutory or regulatory requirement; or
2. Any claim or suit by or on behalf of a governmental authority demanding that the **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, pollutants.

**Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:

a. That are, or that are contained in any property that is:
  (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
  (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
  (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this definition does not apply to fuels, lubricants, fluids, exhaust gasses or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts, if:
(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
(2) The **bodily injury, property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this definition do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:
(1) The **pollutants** or any property in which the **pollutants** are contained are

7

upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and
(2) The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

**ADDITIONAL PAYMENTS**

In addition to our Limit of Liability, we will pay for an **insured**:

1. all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2. interest accruing after entry of judgment on that part of the judgment that does not exceed our Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. Our payment, offer in writing, or deposit in court of that part of the judgment which does not exceed our Limit of Liability ends our duty to pay interest which accrues after the date of our payment, written offer or deposit;

3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding our Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4. up to $2,000 for cost of bail bonds required because of an **accident we** cover. **We** have no duty to apply for or furnish these bonds;

5. reasonable expenses incurred by an **insured** at our request, including loss of earnings up to $250 a day; and

6. all court costs taxed against the **insured** in any **"suit"** against the **insured** we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **insured**.

**OUT-OF-STATE COVERAGE EXTENSION**

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:
1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an auto in that state, province, territory or possession, this policy will provide the greater of:
  a. the required minimum amounts and types of coverage; or
  b. the Limits of Liability under this policy.

8

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

**We** will not pay anyone more than once for the same elements of **loss** because of this extension.

**EXCLUSIONS - PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I - LIABILITY TO OTHERS.**

Coverage under this Part I, including our duty to defend, does not apply to:

1. **Expected or Intended Injury**
   **Bodily injury or property damage** either expected by or caused intentionally by or at the direction of any **insured**.

2. **Contractual**
   Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury or property damage**.

   However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

3. **Worker's Compensation**
   Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

4. **Nuclear Energy Liability**
   An accident for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

5. **Employee Indemnification and Employer's Liability**
   **Bodily injury** to:
   a. An employee of any **insured** arising out of or within the course of:
     (i) That employee's employment by any **insured**; or
     (ii) Performing duties related to the conduct of any **insured's** business; or
   b. The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

   This exclusion applies:
   a. Whether the **insured** may be liable as an employer or in any other capacity; and
   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

9

But this exclusion does not apply to **bodily injury** to a domestic employee if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract**. For the purposes of this policy, a domestic employee is a person engaged in household or domestic work performed principally in connection with a residence premises.

6. **Fellow Employee**
   **Bodily injury** to:
   a. a fellow employee of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.
   b. the spouse, child, parent, brother, or sister of that fellow employee as a consequence of Paragraph a. above.

7. **Care, Custody or Control**
   **Property damage** to, or **covered pollution cost or expense** involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of the **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8. **Movement of Property by Mechanical Device**
   **Bodily injury or property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9. **Handling of Property**
   **Bodily injury or property damage** resulting from or caused by the handling of property:
   a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or
   b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

10. **Pollution**
    **Bodily injury or property damage** resulting from or caused by the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of any **pollutants**:
    a. That are, or that are contained in any property that is:
      (i) Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
      (ii) Otherwise in the course of transit by or on behalf of the **insured**; or
      (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;
    b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or

10

c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the **insured auto** or its parts, if:

(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed, or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

(2) The **bodily injury**, **property damage**, or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned, or damaged as a result of the maintenance or use of an **insured auto**; and

(2) The discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

**11. Racing**
**Bodily injury** or **property damage** arising out of you or an **insured** participating in, or preparing for, a prearranged or organized racing, speed or demolition contest, stunting activity, or performance contest.

**12. War**
**Bodily injury** or **property damage** arising directly or indirectly out of:
a. War, including undeclared or civil war;
b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Operations**
**Bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of the operation of:
a. any equipment listed in Paragraphs b. and c. of the definition of **auto**; or
b. machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged.

11

**14. Completed Operations**
**Bodily injury** or **property damage** arising out of, or caused by, your work after that work has been completed or abandoned.

For purposes of this exclusion, your work means:
a. Work or operations performed by you or on your behalf;
b. Materials, parts, or equipment furnished in connection with such work or operations; and
c. The delivery of liquids.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in Paragraphs a., b., or c. above.

Your work will be deemed completed at the earliest of the following times:
a. When all of the work called for in your contract has been completed.
b. When all of the work to be done at a particular site has been completed if your contract calls for work at more than one site.
c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

**LIMIT OF LIABILITY**

We will pay no more than The Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
1. the number of premiums paid;
2. the number of **insured autos** or trailers shown on the **declarations page**;
3. the number of policies issued by us;
4. the number of vehicles or **insureds** involved in an **accident**; or
5. the number of claims or lawsuits arising out of an **accident**,
subject to the following:

**1. Coverage Required by Filings**

If we have filed a certificate of insurance on your behalf with any regulatory or governmental agency, and:
   (i) we are required to pay any judgment entered against you; or
   (ii) we agree to settle a claim or lawsuit;
for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, we will be obligated to pay no more than the minimum amount required by that agency or applicable law. If

12

any payment is based solely on such certificate, you must reimburse **us** in full for our payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

**2. Combined Bodily Injury and Property Damage Limits**

Subject to the terms of Section 1 above, if your **declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

**3. Separate Bodily Injury Liability and Property Damage Liability Limits**

Subject to the terms of Section 1 above, if your **declarations page** indicates that separate **bodily injury** liability and **property damage** liability limits apply:

a. The "each person" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and that "each person" maximum limit will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury** including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

b. Subject to the "each person" **bodily injury** limit for "each person" the "each accident" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

c. The "each accident" **property damage** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for the aggregate of all **property damage** and **covered pollution cost or expense** combined, sustained in any one **accident**.

For the purpose of determining our Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

An **insured auto** and any **trailer** or **trailers** attached thereto shall be deemed to be one auto with respect to our Limit of Liability.

Any amount payable under Part I - Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage,

13

Underinsured Motorist Coverage, Personal Injury Protection Coverage, or Medical Payments Coverage provided by this policy.

**PART II - DAMAGE TO YOUR AUTO**

**INSURING AGREEMENT - COLLISION COVERAGE**

Subject to the Limits of Liability, if you pay the premium for Collision Coverage, **we** will pay for **loss** to your **insured auto** and its permanently attached equipment when it collides with another object or overturns.

**INSURING AGREEMENT - COMPREHENSIVE COVERAGE**

Subject to the Limits of Liability, if you pay the premium for Comprehensive Coverage, **we** will pay for **loss** to your **insured auto** and its permanently attached equipment from any cause other than those covered under Collision Coverage.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal, or accidental glass breakage shall be deemed a Comprehensive **loss**. However, you have the option of having glass breakage caused by a covered auto's collision or overturn considered a **loss** under Collision Coverage.

**INSURING AGREEMENT - FIRE AND THEFT WITH COMBINED ADDITIONAL COVERAGE (CAC)**

Subject to the Limits of Liability, if you pay the premium for Fire and Theft with Combined Additional Coverage (CAC), **we** will pay for **loss** to your **insured auto** and its permanently attached equipment caused by:

1. fire, lightning or explosion;
2. theft;
3. windstorm or hail;
4. earthquake;
5. flood or rising water;
6. malicious mischief or vandalism;
7. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which your **insured auto** is being transported; or
8. collision with a bird or animal.

No **losses** other than those specifically described above will be covered under Part II of this policy.

**ADDITIONAL COVERAGE**

**1. Transportation Expenses**

We will pay up to $30 per day, up to a maximum of $900, for temporary transporta-

14

tion expenses incurred by you because of the theft of an **insured auto** that is a **private passenger auto**. This coverage applies only to those **insured autos** for which you carry Comprehensive Coverage. **We** will pay for temporary transportation expenses incurred during the period beginning 48 hours after you report the theft to **us**, and ending when the **insured auto** is returned to use, or **we** pay for its **loss**.

**2.  Coverage for Temporary Substitute Autos**

If a **temporary substitute auto** is involved in a **loss**, **we** will provide the same coverage and deductible that would have applied to the **insured auto** for which it is a substitute. The most **we** will pay for **loss** to a **temporary substitute auto** is the lesser of the Actual Cash Value at the time of **loss** or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

**3.  Pet Injury Coverage**

If you have purchased Collision Coverage for at least one **insured auto** listed on the **declarations page**, Pet Injury Coverage is included in your policy.

**Insuring Agreement**

If a **pet** sustains injury or death while inside an **insured auto** at the time of a **loss** covered under Collision, Comprehensive, or Fire & Theft with Combined Additional Coverage, **we** will pay:
1.  for reasonable and customary veterinary fees incurred by you or the owner of the **pet** if the **pet** is injured in, or as a direct result of, the covered **loss**; or
2.  a death benefit if the **pet** dies in, or as a direct result of, the covered **loss**.

In the event of a covered **loss** due to the theft of an **insured auto**, **we** will provide the death benefit provided the **pet** is not recovered.

**Limits of Liability**

The following additional Limits of Liability apply to Pet Injury Coverage:
1.  The most **we** will pay for all damages in any one **loss** is a total of $1,000 regardless of the number of **pets** involved.
2.  If the **pet** dies in, or as a direct result of, a covered **loss**, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for the **pet**.
3.  No deductible shall apply to this coverage.

**ADDITIONAL PAYMENTS**

If you have paid the premium for Comprehensive Coverage, Collision Coverage, or Fire and Theft with Combined Additional Coverage, then in addition to **our** Limit of

15

---

Liability, **we** will pay:
1.  All reasonable expenses necessary to return a stolen **insured auto** to you, unless **we** determine the auto to be a **total loss**.
2.  All reasonable expenses necessary to remove an **insured auto** from the site of an **accident** or **loss** and transport it to a repair facility.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

When used in Part II - Damage To Your Auto:
1.  "Finance agreement" means a written lease or loan contract, entered into, as a part of your business, pertaining to the lease or purchase by you of an **insured auto**, and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with the purchase or lease of the **insured auto**.

2.  "Permanently attached equipment" or "PAE" means equipment and devices that are permanently installed or attached to your **insured auto**. Permanently **attached equipment** also includes:
    a.  accessories designed to work as part of the equipment or devices;
    b.  load securing equipment and devices; and
    c.  custom paint or decals.

3.  "Pet" means a dog or cat occupying an **insured auto** with your express or implied consent.

4.  "Total loss" means any loss to a direct result that is payable under this Part II if the cost to repair the damage (including parts and labor), when combined with the salvage value, exceeds the actual cash value of the **insured auto** at the time of the **loss**.

**EXCLUSIONS** - PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART II - DAMAGE TO YOUR AUTO.

1.  **We** will not pay for **loss** caused by or resulting from any of the following. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
    a.  **War or Military Action**
        (1)  war, including undeclared or civil war;
        (2)  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
        (3)  insurrection, rebellion, revolution, usurped power or action taken by governmental authority hindering or defending against any of these.

16

---

b.  **Nuclear Hazard**
    (1)  the explosion of any weapon employing atomic fission or fusion; or
    (2)  nuclear reaction or radiation, or radioactive contamination, however caused.

2.  **We** will not pay for **loss** to any sound equipment, video equipment or transmitting equipment not permanently installed in your **insured auto**, or to tapes, records, compact discs, DVDs or similar items used with sound or video equipment.

3.  **We** will not pay for **loss** to radar detectors or to any other equipment or device designed or used to detect speed measuring equipment, or to any equipment designed or used to jam or disrupt any speed measuring equipment.

4.  **We** will not pay for **loss** due and not paid to:
    a.  wear and tear, freezing, mechanical or electrical breakdown.
    b.  blowouts, punctures or other road damage to tires.
    But, coverage does apply if the damage is the result of other **loss** covered by the policy.

5.  **We** will not pay for **loss** incurred while your **insured auto** is used in any illicit trade or transportation, or due to your **insured auto's** destruction or confiscation by governmental or civil authorities because you, or, if you are a natural person, any relative, engaged in illegal activities.

6.  **We** will not pay for **loss** caused by you or an insured participating in or preparing for a prearranged or organized racing, speed or demolition contest, stunting activity or performance contest.

7.  **We** will not pay for **loss** to an **insured auto** for diminution of value.

8.  If **we** pay your financial obligation under a **finance agreement**, **we** will not pay:
    a.  Overdue **finance agreement** payments including any type of late fees or penalties;
    b.  Financial penalties imposed under a **finance agreement** for excessive use, abnormal wear and tear, or high mileage;
    c.  Security deposits not normally refunded by the lessor or lender;
    d.  Cost of **finance agreement** related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability Insurance purchased by you;
    e.  Carry-over balances from previous **finance agreements** or other amounts not associated with the **insured auto**; or
    f.  Unpaid principal included in the outstanding **finance agreement** balance that was not owed by you to purchase the **insured auto**.

**LIMIT OF LIABILITY**

1.  If the **declarations page** shows Actual Cash Value for the **insured auto**, then the

17

---

most **we** will pay for **loss** to your **insured auto** is the least of:
    a.  the actual cash value of the stolen or damaged property at the time of **loss**;
    b.  the amount necessary to replace the stolen or damaged property with other of like kind and quality; or
    c.  the amount necessary to repair the damaged property to its pre-loss physical condition, however if **we** determine that the **insured auto** is a **total loss**, **we** may, at our option, pay the lesser of the actual cash value, or the cost to replace, rather than repair, the **insured auto**.
    **Permanently attached equipment** is covered to the limit shown on the **declarations page**. This limit includes transfer of undamaged PAE to another **insured auto**, but will not increase the PAE limit shown on the **declarations page**.

2.  If the **declarations page** shows Stated Amount for the **insured auto**, then the most **we** will pay for **loss** to your **insured auto** is the least of:
    a.  the actual cash value of the stolen or damaged property at the time of **loss**;
    b.  the amount necessary to replace the stolen or damaged property with other of like kind and quality;
    c.  the amount necessary to repair the damaged property to its pre-loss physical condition, however if **we** determine that the **insured auto** is a **total loss**, **we** may, at our option, pay the lesser of the actual cash value, Stated Amount, or the cost to replace, rather than repair the **insured auto**; or
    d.  the applicable Stated Amount of the property as shown on the **declarations page**.

However, if there is a **finance agreement** in place for the **insured auto**, subject to the Stated Amount shown on the **declarations page**, the most **we** will pay for a **total loss** where a **finance agreement** exists and the Stated Amount is equal to or greater than the outstanding financial obligation, is the greater of:
    a.  The outstanding financial obligation under a **finance agreement** for an **insured auto** at the time of the **loss**; or
    b.  The actual cash value of the **insured auto** at the time of the loss.
In no event will **we** pay more than the Stated Amount shown on the **declarations page**.

**Permanently attached equipment** is included in the value of the **insured auto**, but only to the extent the value of the equipment has been included in the Stated Amount shown on the **declarations page**. The transfer of undamaged PAE to another **insured auto** will be covered if the aggregate of all damage and cost to move is within the Stated Amount shown on the **declarations page**.

3.  Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, or Fire and Theft with Combined Additional Coverage are subject to the following provisions:
    a.  In determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us**:
        (i)  shall not exceed the prevailing competitive labor rates charged in the area

18

where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by us; and

(ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

(a) original manufacturer parts or equipment; and

(b) non-original manufacturer parts or equipment;

b. the actual cash value is determined by the market value, age and condition of the auto at the time the loss occurs; and

c. duplicate recovery for the same elements of damages is not permitted.

4. To determine the amount necessary to repair the damaged property to its pre-loss physical condition as referred to in Paragraph 1.c., the total cost of necessary repairs will be reduced by:

a. the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss. This adjustment for physical condition includes, but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and peeling paint;

b. an amount for depreciation (also referred to as betterment) that represents a portion of the cost of mechanical parts that wear out over time and have a useful life typically shorter than the life of the auto as a whole) that are installed as replacements for existing mechanical parts that were defective, inoperable or nonfunctional prior to the accident, which we deem necessary to replace in the course of repair; and

c. an amount for depreciation (also referred to as betterment) on high-wear parts that have a measurable life, such as tires, batteries, engine or transmission, determined by the proportional increase in the useful life of the replacement part when compared to the replaced part. For example, if we replace a 24-month old battery that had a manufacturer's rated life of 60 months with a new 60-month rated battery, our payment for the battery is reduced by 40% and you are responsible to pay that 40% portion of the cost of the battery.

**DEDUCTIBLE**

For each loss that qualifies for coverage under Comprehensive, Collision, or Fire and Theft with Combined Additional Coverage, the deductible shown on the declarations page for the insured auto will be applied. A single deductible will be applied to any loss. In the event there are different deductible amounts applicable to the loss, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a loss involves another coverage added by endorsement to this policy, only one deductible will apply to the entire loss event.

If your insured auto is an additional auto that you have requested to be added to your policy within 30 days of your acquisition of the auto, and no deductible has been

19

designated for the additional auto prior to the loss, then:

1. when the insured auto is a private passenger auto, we will apply the lowest deductible listed for any one auto listed on the declarations page; or

2. when the insured auto is an auto other than a private passenger auto, we will apply the highest deductible listed for any one auto listed on the declarations page.

No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

**SALVAGE**

If we pay the actual cash value of your insured auto less the deductible, or if we pay the amount necessary to replace your insured auto less the deductible, we are entitled to all salvage. If your insured auto is a total loss and we pay the applicable Limit of Liability or Stated Amount as shown on the declarations page less the deductible, we are entitled to the same percent of salvage as our payment bears to the actual cash value of your insured auto.

**NO BENEFIT TO BAILEE**

No bailee or carrier shall benefit, directly or indirectly, from this Part II - Damage To Your Auto.

**APPRAISAL**

If we cannot agree with you on the amount of your loss, then you or we may demand an appraisal of the loss. Each party shall appoint a competent and disinterested appraiser. If the appraisers agree on the amount of the loss, they shall submit a written report to us and this shall be deemed to be the amount of the loss.

If the appraisers cannot agree on the amount of the loss within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within 15 days, either you or we may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the policy, a written agreement signed by both appraisers or by one appraiser and the umpire will be the amount of the loss.

You must pay your fees and expenses and those of your appraiser. We will pay our fees and expenses and those of our appraiser. All other expenses of the appraisal, including payment of the umpire if one is necessary, will be shared equally by you and us.

By agreeing to an appraisal, we do not waive any of our rights under any other part of this policy, including our right to deny the claim.

20

**PAYMENT OF LOSS**

At our option, we may pay the loss in money, or repair or replace the damaged or stolen property. We may, at any time before the loss is paid or the property is replaced, return, at our expense, any stolen property either to you or to the address shown on the declarations page, with payment for the resulting damage less any applicable deductibles. We may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to us.

We may make payment for a loss either to you or the owner of the property. Payment for a loss is required only if you have fully complied with the terms of this policy.

You must convey title to and possession of the damaged, destroyed, or stolen property to us if we pay the actual cash value of your insured auto less the deductible or if we pay the amount necessary to replace your insured auto less the deductible.

**LOSS PAYEE AGREEMENT**

We will pay the Loss Payee named in the policy for loss to your insured auto, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless the loss results from fraudulent acts or omissions on your part.

Cancellation ends this agreement as to the Loss Payee's interest.

If we make any payment to the Loss Payee, we will obtain the Loss Payee's rights against any other party.

**GENERAL PROVISIONS**

1. Policy Period and Territory

This policy applies only to accidents and losses occurring during the policy period shown on the declarations page and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an insured auto is being transported between their ports.

2. Policy Changes

This policy, your insurance application (which is made a part of this policy as if attached hereto), the declarations page, and endorsements to this policy issued by us contain all the agreements between you and us. Subject to the following, its terms may not be changed or waived except by an endorsement issued by us.

21

The premium for this policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete, and you will notify us if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, you agree that we may adjust your premium during the policy period, or take other appropriate action.

Changes that may result in a premium adjustment include, but are not limited to, changes in:

a. the number, type, or use classification of insured autos;

b. operators using insured autos, their ages, driving histories, or marital status;

c. the place of principal garaging of any insured auto;

d. coverage, deductibles, or limits of liability; or

e. rating territory or discount eligibility.

If you ask us to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time you ask us to delete it.

Nothing contained in this section will limit our right to void this policy for fraud, misrepresentation or concealment of any material fact by you, or anyone acting on your behalf.

3. Other Insurance

a. For any insured auto that is specifically described on the declarations page, this policy provides primary coverage. For an insured auto which is not specifically described on the declarations page, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the insured auto which is specifically described on the declarations page is a trailer, this policy will be primary only if the trailer is attached to an insured auto that is a power unit you own and is specifically described on the declarations page, and excess in all other circumstances.

b. If coverage under more than one policy applies on the same basis, either excess or primary, we will pay only our proportionate share. Our proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4. Two or More Policies Issued By Us

If any applicable insurance other than this policy is issued to you by us, or any company affiliated with us, and applies to the same accident or loss, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

22

5. **Legal Action Against Us**

We may not be sued unless there is full compliance with all the terms of this policy.

We may not be sued for payment under Part I - Liability To Others until the obligation of an insured under Part I to pay is finally determined either by judgment against that insured after actual trial or by written agreement of the insured, the claimant, and **us**. No one will have any right to make us a party to a lawsuit to determine the liability of an insured.

6. **Our Recovery Rights**

In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after the **loss** or **accident** to harm our rights.

When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of our payment, provided that the person to or on behalf of whom payment is made is fully compensated for their **loss**.

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

7. **Assignment**

Interest in this policy may not be assigned without our written consent. If the policyholder named in the **declarations page** is a natural person and that person dies, the policy will cover:
a. any other named insured on the policy;
b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and
c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than 30 days after the date of death.

8. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent us from exercising any of **our** rights under this policy.

23

9. **Bankruptcy**

We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10. **Inspection and Audit**

We shall have the right to inspect your property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

We shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three years after termination of the policy, as far as they relate to the subject matter of this insurance.

11. **Fraud or Misrepresentation**

This policy was issued in reliance upon the information provided on **your** insurance application. We may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you**:
1. made incorrect statements or representations to us with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;
at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

We may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. We reserve all rights to indemnify against a person committing fraud or misrepresentation for all payments made and costs incurred.

12. **Liberalization**

If we make a change that broadens a coverage you have under this edition of this policy without additional charge, you will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in your state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

24

13. **Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

14. **Settlement of Claims**

We may use estimating, appraisal, or injury evaluation systems to adjust claims under this policy and to determine the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

15. **Automatic Termination**

If we or an affiliate offers to renew or continue this policy and you or your representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that you have not accepted our offer.

If you obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date of the other insurance.

If an **insured auto** is sold or transferred, any insurance provided by this policy will terminate as to that **insured auto** on the effective date of the sale or transfer.

16. **Duty to Report Changes**

You must promptly notify **us** when:
1. your mailing or business address changes;
2. the principal garaging address of an **insured auto** changes;
3. there is a change to the persons who regularly operate an **insured auto**; or
4. you acquire, sell, or dispose of **autos**.

17. **Terms of Policy Conformed to Statutes**

If any provision of this policy fails to conform to the statutes of the state listed on your application as your business location, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your application as your business location.

Form 6912 (06/10)

25

## INDEX OF ENDORSEMENTS

All forms appearing in this endorsement section do not automatically pertain to your policy. Only those endorsements whose form numbers appear on your **declarations page** apply to your policy.

| Form No./Description | Page |
|---|---|
| 1797 (06/10) Contingent Liability Endorsement - Limited Liability Coverage For Non-Trucking Use Of An Automobile. | 28 |
| 1890 (03/06) Employer's Non-Ownership Liability Endorsement | 28 |
| 1891 (03/06) Hired Auto Coverage Endorsement | 30 |
| 2366 (02/11) Blanket Additional Insured Endorsement | 31 |
| 2367 (06/10) Blanket Waiver of Subrogation Endorsement | 31 |
| 2368 (06/10) Loan/Lease Gap Coverage Endorsement. | 32 |
| 2852 IL (06/15) Uninsured/Underinsured Motorist Coverage Endorsement | 33 |
| 4717 (02/11) Trailer Interchange Coverage Endorsement. | 39 |
| 4757 IL (09/04) Medical Payments Coverage Endorsement | 41 |
| 4852 IL (12/11) Cancellation and Nonrenewal Endorsement | 43 |
| 4881 IL (12/11) Illinois Amendatory Endorsement | 45 |
| 5701 IL (12/11) Individual Named Insured Endorsement | 46 |

26

Z228 (01/11)
Mobile Equipment As Insured Autos Endorsement. . . . . . . . . . . . . . . . . 48

Z438 IL (05/14)
Garage Operations Physical Damage Legal Liability
Coverage and Limited Garage Liability (Towing Only)
Coverage Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Z439 (02/11)
Non-Owned Trailer Physical Damage Coverage Endorsement. . . . . . . . 56

Z442 (01/08)
Any Automobile Legal Liability Coverage Endorsement . . . . . . . . . . . . . 58

27

---

Form 1797 (06/10)

**CONTINGENT LIABILITY ENDORSEMENT - LIMITED LIABILITY COVERAGE FOR NON-TRUCKING USE OF AN AUTOMOBILE**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

**PART I - LIABILITY TO OTHERS**

A. Under the Additional Definitions Used In This Part Only section:

Subsection A.3. is deleted and replaced by the following:

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others. However, **insured** does not include anyone engaged in the business of transporting property by auto for hire that is liable for your conduct.

B. The following exclusion is added:

15. **Trucking Use**
Coverage under this Part I, including our duty to defend, does not apply to an **insured auto** or any attached trailer while operated, maintained, or used:
   a. To carry property or while such property is being loaded or unloaded from the **insured auto** or an attached **trailer**; or
   b. In any business or for any business purpose.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 1890 (03/08)

**EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

28

---

**ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT**

If you pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

**"Non-owned auto"** means an auto that you do not own, lease, hire, rent, or borrow, and that is used in connection with your business. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company), or members of their households, but only while such autos are used in your business or your personal affairs.

**CHANGES TO PART I - LIABILITY TO OTHERS**

The definition of **insured auto** is modified to include a **non-owned auto**. The definition of **insured** does not include the owner of a non-owned auto.

**EXCLUSIONS**

The insurance provided by this endorsement does not apply to **bodily injury or property damage** arising out of the ownership, maintenance or use of any **non-owned auto** in the conduct of any partnership or joint venture of which you are a partner or member and which is not shown as the named insured on the **Declarations Page**.

**OTHER INSURANCE**

The insurance provided by this endorsement is excess over any other valid and collectible insurance.

**PREMIUM AGREEMENT**

The premium for this Employer's Non-Ownership Liability coverage is based, in part, on the number of your employees. We may audit the number of employees and charge appropriately for additional premium up to three years after the policy expiration.

This does not alter or limit our general audit rights under the General Provisions section of this policy.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

29

---

Form 1891 (03/08)

**HIRED AUTO COVERAGE ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**

If you pay a premium for this Hired Auto Coverage, then the following definitions are added:

1. **"Hired auto"** means an **auto** you lease, hire, rent or borrow. This does not include any **auto** you lease, hire, rent or borrow from any of your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

2. **"Cost of hire"** means the total amount paid by you for the hire of **autos**, including charges for services performed by motor carriers of property or passengers that are subject to the compulsory requirements of any motor carrier laws or regulations.

**CHANGES TO PART I - LIABILITY TO OTHERS**

When used in Part I - Liability To Others, the definition of **insured auto** is amended to include a **hired auto**.

**OTHER INSURANCE**

The insurance provided by this Hired Auto Coverage endorsement is excess over any other valid and collectible insurance, whether primary, excess, or contingent.

**PREMIUM AGREEMENT**

The premium for this Hired Auto Coverage is based on the **cost of hire**, and is subject to a minimum **cost of hire**. We may audit the **cost of hire** and charge appropriately for additional premium for up to three years after the policy expiration.

This does not alter or limit our general audit rights under the General Provisions section of this policy.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

30

Form 2366 (02/11)

**BLANKET ADDITIONAL INSURED ENDORSEMENT**

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If you pay the fee for this Blanket Additional Insured Endorsement, **we** agree with **you** that any person or organization with whom **you** have executed a written agreement prior to any **loss** is added as an additional **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to such additional **insured** only as a person or organization liable for **your** operations and then only to the extent of that liability. This endorsement does not apply to acts, omissions, products, work, or operations of the additional **insured**.

Regardless of the provisions of paragraph a. and b. of the "Other Insurance" clause of this policy, if the person or organization with whom **you** have executed a written agreement has other insurance under which it is the first named **insured** and that insurance also applies, then this insurance is primary to and non-contributory with that other insurance when the written contract or agreement between **you** and that person or organization, signed and executed by **you** before the **bodily injury** or **property damage** occurs and in effect during the policy period, requires this insurance to be primary and non-contributory.

In no way does this endorsement waive the "Other Insurance" clause of the policy, nor make this policy primary to third parties hired by the **insured** to perform work for the **insured** or on the **insured's** behalf.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2367 (06/10)

**BLANKET WAIVER OF SUBROGATION ENDORSEMENT**

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If **you** pay the fee for this Blanket Waiver of Subrogation Endorsement, **we** agree to waive any and all subrogation claims against any person or organization with whom

31

a written waiver agreement has been executed by the named insured, as required by written contract, prior to the occurrence of any loss.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2368 (06/10)

**LOAN/LEASE GAP COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

**INSURING AGREEMENT - LOAN/LEASE PAYOFF COVERAGE**

If **you** pay the premium for this coverage, and the **insured auto** for which this coverage was purchased is deemed by **us** to be a total **loss**, **we** will pay, in addition to any amounts otherwise payable under Part II of **your** policy, the difference between:
1. the actual cash value of the **insured auto** at the time of the total **loss**; and
2. any greater amount the owner of the **insured auto** is legally obligated to pay under a written loan or lease agreement to which the **insured auto** is subject at the time of the total **loss**, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and
   f. collection or repossession expenses.

However, our payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **insured auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive and Collision Coverage for that **insured auto** and the loss is covered under one of those coverages.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

32

Form 2852 IL (05/15)

**UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT - UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE**

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** or **underinsured auto** because of **bodily injury**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto** or **underinsured auto**.

**INSURING AGREEMENT - UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE**

Subject to the limits of liability, if **you** pay a premium for Uninsured Motorist Property Damage Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is entitled to recover from the owner or operator of an **uninsured auto** due to property damage:
1. to an **insured auto** for which Uninsured Motorist Property Damage Coverage has been purchased;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

Subject to any deductible applicable under this endorsement, **we** will replace, or reimburse the reasonable cost to replace, any child restraint system that was in use by a child in an **insured auto** and was damaged during an **accident** to which Uninsured Motorist Property Damage Coverage applies due to the liability of the owner or operator of an **uninsured auto**.

**We** will pay under this endorsement only after the limits of liability under all applicable liability bonds and policies have been exhausted by payment of judgments or settlements. However, this shall not apply if **we** and the **insured** agree, without arbitration, that the **insured** has suffered **bodily injury**, death, or **property damage**, and also agree on the amount of damages within the limit of liability that the **insured** is legally entitled to collect under this endorsement.

33

An **insured** must notify **us** in writing at least thirty (30) days before entering into any settlement with the owner or operator of an **uninsured auto** or **underinsured auto**, or any liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an **uninsured auto** or **underinsured auto**. If **we** do this, **you** agree to assign to **us** all rights that **you** have against the owner or operator of the **uninsured auto** or **underinsured auto**.

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Insured**" means:
   a. If the named insured shown on the **Declarations Page** is a natural person:
      (i) **you** or a **relative**;
      (ii) any person occupying **your insured auto** or a **temporary substitute auto**; and
      (iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or
   b. If the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person:
      (i) any person occupying **your insured auto** or **temporary substitute auto**; and
      (ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.
2. "**Non-owned auto**" means any auto that is not **owned** by **you** or furnished for **your** regular use and is, if the named insured is a person, not owned or furnished for the regular use of the named insured's spouse or **relative**.
3. "**Owned**" means the person:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
   c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.
4. "**Owner**" means the person who, with respect to a vehicle:
   a. holds legal title to the vehicle;
   b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
   c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.
5. "**Property damage**" means only physical damage to or destruction of an **insured auto**. Property damage does not include loss of use of an **insured auto** resulting from its physical damage or destruction.
6. "**Underinsured auto**" means a land motor vehicle to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the sum of all applicable limits of liability for **bodily injury** is less than the coverage limit for Uninsured/Underinsured Motorist Bodily Injury Coverage as shown on the **Declarations Page**.

34

An "**underinsured auto**" does not include any vehicle or equipment:
a. owned by you or a **relative**;
b. owned by any governmental unit or agency;
c. operated on rails or crawler treads;
d. designed mainly for use off public roads, while not on public roads;
e. while used as a residence or premises;
f. shown on the **Declarations Page** of this policy;
g. not required to be registered as a motor vehicle; or
h. which is an **uninsured auto**.

7. "**Uninsured auto**" means a land motor vehicle of any type:
a. to which no **bodily injury** liability bond or policy applies at the time of the accident;
b. to which a **bodily injury** liability bond or policy applies at the time of the accident, but the bonding or insuring company:
   (i) denies coverage; or
   (ii) is or becomes insolvent;
c. to which a **bodily injury** liability bond or policy applies at the time of the accident, but its limit of liability for **bodily injury** is less than the minimum limit of liability for **bodily injury** specified by the financial responsibility law of the state in which the **insured auto** is principally garaged; or
d. that is a hit-and-run vehicle whose operator or owner cannot be identified and which strikes, or causes an object to strike:
   (i) you or a **relative**;
   (ii) an auto that you or a **relative** are occupying; or
   (iii) an **insured auto** or **temporary substitute auto**;
provided that the **insured**, or someone on his or her behalf, reports the accident to the police or civil authority within twenty-four (24) hours or as soon as practicable after the **accident**.

An "**uninsured auto**" does not include any motorized auto or equipment:
a. **owned** by, furnished to, or available for the regular use of you and, if the named insured is a natural person, a **relative**, other than an **insured auto**;
b. owned or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;
c. owned by any governmental unit or agency;
d. designed mainly for use off public roads, while not on public roads;
e. while being used as a residence or premises;
f. not required to be registered as a motor vehicle; or
g. which is an **underinsured auto**.

**EXCLUSIONS** - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

1. Coverage under this endorsement is not provided for **bodily injury** sustained by any person while using or **occupying**:

35

a. an **insured auto** without the express or implied permission of you and, if the named insured is a natural person, a **relative**;
b. a non-owned auto without the express or implied permission of the owner; or
c. an auto or device of any type designed to operate on the public roads that is owned by, furnished to, or available for the regular use of you or, if the named insured is a natural person, a **relative**, other than an **insured auto** or **temporary substitute auto**.

2. Coverage under this endorsement is not provided for **property damage**:
a. to an **insured auto** while being used or driven by a person while employed or engaged in the **business** of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion does not apply to you, a **relative**, or an agent or employee of you or a **relative**, when using an **insured auto**;
b. to an **insured auto** resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;
c. to an **insured auto** due to a nuclear reaction or radiation;
d. to an **insured auto** for which insurance is afforded under a nuclear energy liability insurance contract;
e. to a trailer;
f. which is not caused by the actual physical contact of an **uninsured auto** with the **insured auto**; or
g. if the owner or operator of the at-fault **uninsured auto** cannot be identified.

3. Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
a. workers' compensation law; or
b. disability benefits law.

**LIMITS OF LIABILITY**

Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **Declarations Page**, or the number of policies issued by us, or the number of vehicles or **insureds** involved in the **accident**, or the number of claims or lawsuits arising out of an **accident**, we will pay no more than the limit of liability shown for Uninsured/Underinsured Motorist Coverage on the **Declarations Page**.

If the **Declarations Page** shows that "combined single limit" or "CSL" applies, the amount shown is the most we will pay for the total of all damages resulting from any one **accident**, However, without changing this total "each accident" limit of liability, we will comply with any law that requires us to provide any separate limits.

If your **Declarations Page** shows a split limit:
1. the amount shown for "each person" is the most we will pay for all damages due to a **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most we will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**; and

36

3. the amount shown for "property damage" is the most we will pay for the aggregate of all property damage caused by any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured** and all claims of others derived from such bodily injury, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The limit of liability under this endorsement for **property damage** to an **insured auto** arising out of one **accident** is the lowest of:
1. $15,000;
2. the actual cash value of the **insured auto** at the time of the **accident**, reduced by the deductible shown on the **Declarations Page**, and by its salvage value if the **insured auto** is more than eight (8) years old and we allow you or the owner to retain the salvage;
3. the amount necessary to replace the **insured auto**, reduced by the deductible shown on the **Declarations Page**, and by its salvage value if the **insured auto** is more than eight (8) years old and we allow you or the owner to retain the salvage;
4. the amount necessary to repair the **insured auto** to its pre-loss condition, reduced by the deductible shown on the **Declarations Page**; or
5. any limit of liability shown on the **Declarations Page** for property damage under this endorsement, reduced by the salvage value of the **insured auto** if the **insured auto** is more than eight (8) years old and we allow you or the owner to retain the salvage.

Payments for **property damage** under this endorsement are subject to the following provisions:
1. no more than one deductible shall be applied to any one **accident**; and
2. an adjustment for depreciation or physical condition, which may also be referred to as betterment, wear and tear, or prior damage, will be made in determining the limit of liability at the time of the **accident**.

The limits of liability for **bodily injury** under this endorsement shall be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I - Liability To Others; and
2. paid, or payable, or should apply, because of **bodily injury** under any workers' compensation law.

The limits of liability for **property damage** under this endorsement shall be reduced by all sums paid because of **property damage**:
a. by or on behalf of the persons or organizations who may be legally responsible; and
b. under Part II - Damage To Your Auto.

Any payment made to a person under this endorsement shall reduce any amount that the person is entitled to recover under Part I - Liability To Others.

37

No one will be entitled to duplicate payments for the same elements of damages. Any judgment or settlement for damages against an operator or owner of an **uninsured auto** which arises out of a lawsuit brought without our written consent is not binding on us.

**OTHER INSURANCE**

If there is other applicable uninsured or underinsured motorist coverage, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all available coverage limits. However, any insurance we provide shall be excess over any other uninsured or underinsured motorist coverage, except for bodily injury to you and, if the named insured is a natural person, a **relative** when occupying an **insured auto** or **temporary substitute auto**.

We will not pay for any damages which would duplicate any payment made for damages under other insurance.

**ARBITRATION**

If we and an **insured** cannot agree on:
1. the legal liability of the operator or owner of an **uninsured auto**; or
2. the amount of the damages sustained by the **insured**;
this will be determined by arbitration if we or the **insured** make a written demand for arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the **accident** occurred.

If a written demand for arbitration is made, each party shall select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within forty-five (45) days, then either party may request that the arbitration be submitted to the American Arbitration Association, or on joint application by the **insured** and us, the third arbitrator may be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally. In the event the arbitrators award reasonable arbitration costs, fees or expenses, we will pay only that portion of such awarded costs, fees or expenses as is necessary to prevent the amount available under this policy for payment of compensatory damages awarded by the arbitrators from being reduced to an amount less than the minimum amount required under the Illinois Vehicle Code and the Illinois Insurance Code, as amended.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** resides. Rules of procedure and evidence will apply according to Illinois law.

A decision agreed to by two of the arbitrators will be binding with respect to a determination of:
1. the legal liability of the operator or owner of an **uninsured auto**; and
2. the amount of the damages sustained by the **insured**.

38

The arbitrators shall have no authority to award compensatory damages in an amount in excess of the limit of liability. The decision of the arbitrators is binding only if the amount of the award does not exceed $75,000 for **bodily injury** or death of any one person, $150,000 for **bodily injury** or death of two or more persons in any one motor vehicle accident, or the corresponding policy limits for **bodily injury** or death, whichever is less. If the award of the arbitrators for damages caused by an **uninsured auto** exceeds the applicable limit set forth in this paragraph, either party may demand the right to a trial. This demand must be made in writing within sixty (60) days of the arbitrators' decision. If the demand is not made within sixty (60) days, the amount of damages agreed to by the arbitrators will be binding.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 4717 (02/11)

### TRAILER INTERCHANGE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

Subject to the Limits of Liability, if you pay the premium for Trailer Interchange Coverage, we will pay damages for **property damage** for which you become legally responsible because of **loss** to a trailer not owned by you, and its equipment, while in your possession. The **trailer** must be in your possession under a written trailer or equipment interchange agreement in which you assume liability for **loss** to the **trailer** while in your possession.

**We will pay** for a **loss** to the trailer and its equipment under the coverages described below, as reflected on your **declarations page**:
a.  Collision coverage. For **loss** caused by:
    (i)  The **trailer's** collision with another object; or
    (ii) The **trailer's** overturn.
b.  Comprehensive coverage. From any **loss** except:
    (i)  The **trailer's** collision with another object; or
    (ii) The **trailer's** overturn.

**We will** settle or defend, at our option, any claim or lawsuit for damages covered by this endorsement. We have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment or judgments or settlements.

**ADDITIONAL DEFINITIONS**

"**Trailer**," when used in this endorsement, includes a shipping container.

39

### ADDITIONAL PAYMENTS

In addition to our Limit of Liability, we will pay for an **insured**:
a.  all expenses we incur in the settlement of any claim or defense of any lawsuit;
b.  interest accruing after entry of judgment on that part of the judgment that does not exceed our Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

Our payment, offer in writing, or deposit in court of that part of the judgment which does not exceed our Limit of Liability under our duty to pay interest that accrues after the date of our payment, written offer, or deposit.
c.  the premiums on any appeal bond or attachment bond required in any lawsuit **we** defend. We have no duty to purchase a bond in a principal amount exceeding our Limit of Liability, and we have no duty to apply for or furnish these bonds; and
d.  reasonable expenses, including loss of earnings up to $250 a day, incurred at our request.

### EXCLUSIONS

a.  **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
    (i)  Nuclear Hazard.
        (1)  The explosion of any weapon employing atomic fission or fusion; or
        (2)  Nuclear reaction or radiation, or radioactive contamination, however caused.
    (ii) War or Military Action
        (1)  War, including undeclared or civil war;
        (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents; or
        (3)  Insurrection, rebellion, revolution, usurped power or action taken by a governmental authority in hindering or defending against any of these.
b.  **We** will not pay for **loss** of use.
c.  **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance:
    (i)  Wear and tear, freezing, mechanical or electrical breakdown; or
    (ii) Blowouts, punctures, or other road damage to tires.

### LIMIT OF INSURANCE AND DEDUCTIBLE

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:

a.  The actual cash value of the damaged or stolen property at the time of the **loss**;
b.  The amount necessary to replace the stolen or damaged property with other of like kind and quality;

40

c.  The amount necessary to repair the damaged property to its pre-loss condition; or
d.  The applicable Limit of Liability for the property as shown on the **declarations page.**

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire **loss** event.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 4757 IL (09/04)

### MEDICAL PAYMENTS COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT**

Subject to the limits of liability, if you pay the premium for Medical Payments Coverage, we will pay the **usual and customary charge** for reasonable and necessary expenses, incurred within three (3) years from the date of an **accident**, for medical and funeral services because of **bodily injury**:
1.  sustained by an **insured**;
2.  caused by an **accident**; and
3.  arising out of the ownership, maintenance or use of a motor vehicle or **trailer**.

Any dispute as to the **usual and customary charge** will be resolved between the service provider and **us**.

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:
1.  "**Insured**" means:
    a.  If the named insured shown on the **Declarations Page** is a natural person:
        (i)  you while occupying any auto, other than an auto owned by you which is not an **insured auto**;
        (ii) a relative while occupying an **insured auto**, **temporary substitute auto**, or non-owned auto;
        (iii) you or any relative when struck by a land motor vehicle of any type or a **trailer** while not occupying a motor vehicle; and

41

        (iv) any other person while occupying an **insured auto**, **temporary substitute auto**, or **trailer** while attached to an **insured auto**; or
    b.  If the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person occupying your insured **auto**, **temporary substitute auto**, or **trailer** while attached to an **insured auto**.
2.  "Non-owned auto" means any auto that is not owned by you or furnished for your regular use and, if the named insured is a person, not owned by or furnished for the regular use of the named insured's non-resident spouse or a **relative**.
3.  "Owned" means the person:
    a.  holds legal title to the vehicle;
    b.  has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
    c.  has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.
4.  "Owner" means the person who, with respect to a vehicle:
    a.  holds legal title to the vehicle;
    b.  has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
    c.  has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.
5.  "**Usual and customary charge**" means an amount which **we** determine represents a customary charge for services in the geographical area in which the service is rendered. We shall determine the **usual and customary charge** through the use of independent sources of our choice.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under this endorsement does not apply to **bodily injury**:
1.  sustained while **occupying any auto** or **trailer** while being used as a residence or premises;
2.  occurring during the course of employment if workers' compensation coverage is payable or required;
3.  arising out of an **accident** involving an **auto** or **trailer** while being used by a person while employed or engaged in the **business** of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles, unless that business is **yours**;
4.  resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;
5.  due to a nuclear reaction or radiation;
6.  for which insurance is afforded under a nuclear energy liability insurance contract;
7.  for which the United States Government is liable under the Federal Tort Claims Act;
8.  sustained by any person while occupying an **insured auto**, **temporary substitute auto**, or **trailer** without the express or implied permission of **you** or, if the named insured is a person, a **relative**;

42

9. sustained by any person while **occupying a non-owned vehicle** without the express or implied permission of the **owner**;
10. that is intentionally inflicted on an **insured** at that person's request or self-inflicted; or
11. sustained while **occupying** any vehicle that has less than four wheels or is not designed for operation principally upon public roads.

**LIMITS OF LIABILITY**

Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **Declarations Page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown for Medical Payments Coverage on the **Declarations Page**.

Any amount payable to an **insured** under this endorsement will be reduced by any amount paid or payable for the same expense under Part I – Liability To Others or any applicable Uninsured/Underinsured Motorist Coverage endorsement.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance, **we** will pay only **our** share of the medical and funeral services. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured occupying**:

1. an auto, other than an **insured auto** or **temporary substitute auto**; or
2. **trailer**, other than a **trailer** while connected to an **insured auto**;

will be excess over any other auto or trailer insurance providing payments for medical or funeral expenses.

Form 4852 IL (12/11)

**CANCELLATION AND NONRENEWAL ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**CANCELLATION**

**You** may cancel this policy by calling or writing **us** and stating the future date that **you** wish the cancellation to be effective.

43

---

**We** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **Declarations Page** at the last known address appearing in **our** records. If **we** cancel this policy during the first 60 days of the initial policy period for any reason other than nonpayment of premium, notice of cancellation will be mailed at least 30 days before the effective date of cancellation. If this policy has been in effect for more than 60 days, or if this is a renewal or continuation policy, and **we** cancel for any reason other than nonpayment of premium, notice of cancellation will be mailed at least 60 days before the effective date of cancellation. If **we** cancel this policy at any time due to nonpayment of premium, notice of cancellation will be mailed at least 10 days before the effective date of cancellation. **Our** notice of cancellation will state the reason(s) for cancellation.

**We** may cancel this policy for any reason within the first 60 days of the initial policy period.

After this policy is in effect for more than 60 days, or if this is a renewal or continuation policy, **we** may only cancel for one or more of the following reasons:

1. **you** do not pay the required premium for this policy when due;
2. this policy was obtained through a material misrepresentation;
3. any insured has violated any of the terms and conditions of the policy;
4. the risk originally accepted has measurably increased;
5. certification to the Director of the loss of reinsurance by the insurer which provided coverage for **us** for all or a substantial part of the underlying risk insured; or
6. a determination by the Director that the continuation of the policy could place **us** in violation of the insurance laws of this state.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all **autos**.

If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

**CANCELLATION REFUND**

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is canceled, any refund due will be computed on a daily pro-rata basis.

**NONRENEWAL**

If **we** decide not to renew or continue this policy, **we** will mail to the named insured, **your** agent and loss payee a notice of nonrenewal at the last known address appearing in **our** records. Notice will be mailed at least 60 days before the end of the policy period.

**PROOF OF NOTICE**

Proof of mailing of any notice will be sufficient proof of notice.

44

---

Form 4881 IL (12/11)

**ILLINOIS AMENDATORY ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**GENERAL DEFINITIONS**

The definition of "**relative**" in the General Definitions section is deleted in its entirety and replaced by the following:

"**Relative**" means any person living in the household in which the named insured resides who is related to the named insured by blood, marriage, civil union, or adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

**PART I – LIABILITY TO OTHERS**

The second paragraph in Part I – Liability To Others is amended to include the following:

If a lawsuit is brought against an **insured** with respect to a claim for acts or alleged acts covered under this Part I, seeking both compensatory and punitive or exemplary damages, **we** will provide a defense to such lawsuit without liability for any punitive or exemplary damages.

**PART II – DAMAGE TO YOUR AUTO**

A. The following is added to the Collision Coverage provision in Part II – Damage To **Your** Auto:

Subject to any deductible applicable to a collision **loss**, **we** will replace, or reimburse the reasonable cost to replace, any child restraint system damaged in an **accident** to which this Collision Coverage applies.

B. The following is added to the Comprehensive Coverage provision in Part II – Damage To **Your** Auto:

Subject to any deductible applicable to a comprehensive **loss**, **we** will replace, or reimburse the reasonable cost to replace, any child restraint system damaged in an **accident** to which this Comprehensive Coverage applies.

C. The following is added to the Salvage provision in Part II – Damage To **Your** Auto:

In the event of a **total loss**, **we** will retain and salvage if the **insured auto** is eight (8) model years old or newer.

45

---

**GENERAL PROVISIONS**

Subsection 6 – Our Recovery Rights is deleted in its entirety and replaced by the following:

In the event of any payment under any applicable Uninsured/Underinsured Motorist Coverage endorsement, **we** are entitled to all the rights of recovery that an insured, as defined under such Uninsured/Underinsured Motorist Coverage endorsement, to whom or for whom payment was made, has against the owner or operator of an uninsured auto or underinsured auto. In the event of any other payment under this policy, **we** are entitled to all the rights of recovery that the insured to whom or for whom payment was made has against another. That insured must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after an **accident** or **loss** to prejudice our rights.

However, **we** may not assert rights of recovery against:

a. any person who was using an **insured auto** with **your** express or implied permission for any payment made under Part II – Damage To **Your** Auto; or

b. the owner or operator of an uninsured auto or underinsured auto. If the insured, as defined under such Uninsured/Underinsured Motorist Coverage endorsement, provides **us** with written notice thirty (30) days prior to entering into a settlement that an offer of settlement has been made by, or on behalf of, the owner or operator of an uninsured auto or underinsured auto, and **we** do not elect to pay that insured an amount equal to the amount offered in full settlement by, or on behalf of, the owner or operator of the uninsured auto or underinsured auto.

When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 5701 IL (12/11)

**INDIVIDUAL NAMED INSURED ENDORSEMENT**

Not all customers are eligible for this coverage. This endorsement applies to **your** policy only if the form number appears on **your declarations page**. In no event will this coverage apply if the named insured is a corporation, partnership, organization or any other entity that is not a natural person.

This endorsement changes **your** policy. Please read it carefully.

46

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**

As used in this endorsement:
1. **"You"** and **"yours"** include your spouse or partner in a civil union, if a resident of the same household, except for notice of cancellation.
2. **"Private passenger type"** means a **private passenger auto** and includes any **insured auto** you own of the pickup or van type not used for business purposes, other than farming or ranching.
3. **"Non-owned auto"** means any **private passenger type** auto, pickup, van, or trailer not owned by or furnished or available for the regular use of **you** or any **relative**, while it is in the custody of or being operated by **you** or any **relative**.

**CHANGES IN PART I - LIABILITY TO OTHERS**

A. If you are an individual, Exclusion 6 does not apply to **bodily injury** to **your** or any **relative's** fellow employees.
B. If any auto **you** own of the **private passenger** type is an **insured auto** under Part I - Liability To Others:
1. **Relatives** are **insureds** for any **insured auto you** own of the **private passenger** type, and any other auto described in paragraph B.2. of this endorsement.
2. Any auto **you** do not own is an **insured auto** while being used by **you** or by any **relative** except:
   a. Any auto owned by any **relative**.
   b. Any auto furnished or available for **your** or any **relative's** regular use, including any auto rented for a period of more than 30 days.
   c. Any auto used by **you** or by any of **your relatives** while working in a business of selling, servicing, repairing, or parking **autos**.
   d. Any auto other than an auto of the **private passenger** type used by **you** or any of **your relatives** while working in any business or occupation.
3. Exclusion 10 does not apply to any **insured auto** of the **private passenger** type.

**CHANGES IN PART II - DAMAGE TO YOUR AUTO**

While any auto **you** own of the **private passenger** type is an **insured auto** under Part II - Damage To Your Auto, a **non-owned auto** will also be considered an **insured auto**. However, the most we will pay for **loss** to a **non-owned auto** that is a trailer is $500.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

47

---

Form Z228 (01/11)

**MOBILE EQUIPMENT AS INSURED AUTOS ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:

**PART I - LIABILITY TO OTHERS**

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY** is modified as follows:

B. When used in PART I - LIABILITY TO OTHERS, **insured auto** also includes:
1. Trailers, designed primarily for travel on public roads, while connected to your **insured auto** that is a towed unit;
2. **Mobile equipment** while being carried or towed by an **insured auto**;
3. Any temporary substitute auto; and
4. Any **mobile equipment** owned by **you**, or if you have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. This does not change the effect of exclusion 13 concerning the operation of **mobile equipment**.

**MEDICAL PAYMENTS COVERAGE**

If you pay the premium for Medical Payments Coverage, that endorsement is modified as follows:

**ADDITIONAL DEFINITIONS**

The definition of "**Insured**" is deleted and replaced by:
"**Insured**" means:
a. If the named insured shown on the **Declarations Page** is a natural person:
   (i) **you** while occupying any auto, other than an auto owned by **you** which is not an **insured auto**;
   (ii) a **relative** while occupying an **insured auto**, **temporary substitute auto**, or **non-owned auto**;
   (iii) **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not occupying a motor vehicle; and
   (iv) any other person while occupying an **insured auto**, **temporary substitute auto**, or a trailer while attached to an **insured auto**; or

48

---

b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person occupying **your insured auto**, **temporary substitute auto**, or a trailer while attached to an **insured auto**.
For purposes of this definition, **insured auto** includes **mobile equipment** owned by **you**, or if you have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

**UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGES**

If you pay the premium for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage, that endorsement is modified as follows:

**ADDITIONAL DEFINITIONS**

The definition of "**Insured**" is deleted and replaced by:
"**Insured**" means:
a. If the named insured shown on the **Declarations Page** is a natural person:
   (i) **you** or a **relative**;
   (ii) any person occupying **your insured auto** or a **temporary substitute auto**; and
   (iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or
b. If the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person:
   (i) any person occupying **your insured auto** or a **temporary substitute auto**; and
   (ii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.
For purposes of this definition, **insured auto** includes **mobile equipment** owned by **you**, or if you have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

49

---

Form Z438 IL (08/14)

**GARAGE OPERATIONS PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE AND LIMITED GARAGE LIABILITY (TOWING ONLY) COVERAGE ENDORSEMENT**

This endorsement modifies your Commercial Auto Policy. Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

THIS ENDORSEMENT APPLIES ON A LEGAL LIABILITY BASIS UNLESS ONE OF THE DIRECT COVERAGE OPTIONS LISTED BELOW IS SHOWN ON YOUR DECLARATIONS PAGE.

**DIRECT COVERAGE OPTIONS**

**Direct Excess Insurance.** If this "Direct Excess" option is shown on your **declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a customer's auto or **towed property**, and is excess over any other collectible insurance regardless of whether the other insurance covers **your** or any other **insured's** interest or the interest of the owner of the customer's auto or **towed property**.

**Direct Primary Insurance.** If this "Direct Primary" option is shown on your **declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a customer's auto, or **towed property**, and is primary insurance.

**INSURING AGREEMENT - ON-HOOK TOWING PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE**

If you pay the premium for On-Hook Towing Physical Damage Legal Liability coverage and it is shown on your **declarations page** as "On-Hook Legal Liability", we will pay all sums for which an **insured** is legally liable to pay for **property damage** to **loss** to **towed property**. We will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**.

We will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, we have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. We may investigate and settle any claim or lawsuit as we consider appropriate. Our duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

50

## INSURING AGREEMENT - GARAGEKEEPERS STORAGE LOCATION PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If you pay the premium for this Garagekeepers Storage Location Physical Damage Legal Liability coverage and it is shown on your **declarations page** as "Garagekeepers Legal Liability", **we** will pay all sums for which an **Insured** is legally liable to pay as **property damage** for **loss** to a **customer's auto** or **customer's auto** equipment left in the **Insured's** care while the **Insured** is attending, servicing, repairing, parking, or storing it in your **garage operations** under:

1. Comprehensive coverage.
   From any cause except:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

2. Collision coverage.
   Caused by:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

**We** will have the right and duty to defend any **Insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **Insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. Our duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

**We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**, and only for the locations listed on your **declarations page**.

## INSURING AGREEMENT - LIMITED GARAGE LIABILITY (TOWING ONLY) COVERAGE

If you pay the premium for On-Hook Towing Physical Damage Legal Liability coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **Insured** becomes legally responsible because of an **accident** arising out of the operation of a **customer's auto** necessary to your on-hook towing activity. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

## ADDITIONAL DEFINITIONS

The following additional definitions apply throughout this Garage Operations Physical Damage Legal Liability coverage endorsement whenever the defined term appears in boldface type, whether in the singular, plural, or possessive:

51

1. "**Customer's auto**" means a customer's land motor vehicle, **trailer**, or **watercraft**, including a **customer's auto** left with you for service, repair, storage, or safekeeping. Customers include your employees and their relatives who pay for services performed.

2. "**Garage operations**" means the ownership, maintenance, or use of the locations shown on your **declarations page** for the purpose of a business of selling, servicing, repairing, parking, or storing **customers' autos**, and that portion of the roads or other accesses that adjoin such locations. **Garage operations** also includes all operations necessary or incidental to the performance of **garage operations**.

3. "**Insured**" means:
   a. you; and
   b. your partners (if you are a partnership), members (if you are a limited liability company), employees, directors, or shareholders, but only while acting within the scope of their duties.

4. "**Loaded in or on**" means connected to.

5. "**Towed property**" means tangible property, not owned by or registered to you, in transit while **loaded in or on**, or conveyed by, an **Insured auto**. **Towed property** also means property when it is moved from the place where you accept it for movement by or onto your **Insured auto** and after it is moved from your **Insured auto** to the place where it is finally delivered by you. **Towed property** includes a towed auto or watercraft.

6. "**Watercraft**" means any craft, boat, vessel, or ship designed to transport persons or property by water.

7. "**Work you performed**" includes:
   a. Work that someone performed on your behalf; and
   b. The providing of, or the failure to provide, warnings or instructions.

## ADDITIONAL PAYMENTS

In addition to our limit of liability, **we** will pay for an **Insured** under this endorsement:
1. All expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. The premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding our limit of liability, and **we** have no duty to apply for or furnish these bonds;
3. Reasonable expenses incurred by that **Insured** at our request, including loss of earnings up to $250 per day;
4. All costs taxed against the **Insured** in any lawsuit against that **Insured** **we** defend; and

52

5. Interest accruing after entry of judgment on that part of the judgment that does not exceed our limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **Insured**.

Our payment, offer in writing, or deposit in court of that part of the judgment that does not exceed our limit of liability ends our duty to pay interest that accrues after the date of our payment, written offer, or deposit.

## EXCLUSIONS - PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED.

1. The On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages under this endorsement do not apply to any of the following:
   a. Liability resulting from any contract or agreement by which the **Insured** accepts responsibility for **loss**. This exclusion does not apply to an agreement that is an **Insured contract** that was executed prior to the occurrence of any **property damage**;
   b. **Loss** due to theft or conversion caused in any way by **you** or your employees, partners, members, directors, or shareholders;
   c. Defective parts or materials;
   d. Faulty **work you performed**;
   e. **Loss** to any of the following:
      (i) Tape decks or other sound-reproducing equipment unless permanently installed in a **customer's auto**;
      (ii) Tapes, records, or other sound-reproducing devices designed to be used with sound-reproducing equipment;
      (iii) Sound-receiving equipment designed for use as a citizens band radio, two-way mobile radio, or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **customer's auto** manufacturer for the installation of a radio; or
      (iv) Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment;
   f. **Loss** caused by:
      (i) War, including undeclared or civil war;
      (ii) Warlike action by a military force, including any action to hinder or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents;
      (iii) Insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these; or
      (iv) Nuclear reaction or radioactive contamination.
      This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**;

53

   g. **Loss** caused by strikes, lockouts, riots, civil commotion, or disorder; or
   h. **Loss** due to inherent vice, delay, loss of profit, loss of market, loss of market value, or loss of use.

2. On-Hook Towing Physical Damage Legal Liability coverage does not apply to:
   a. **Loss** to tarpaulins, tools, repair equipment, or materials and equipment for loading or unloading, which are carried in or on the **Insured auto**;
   b. **Loss** to any **towed property** while it is in the custody of anyone other than an **Insured**;
   c. **Loss** to objects of art, including paintings and statuary;
   d. **Loss** to jewelry, precious or semi-precious stones; gold, silver, platinum, or other precious metals or alloys;
   e. **Loss** to live animals;
   f. **Loss** to papers of any kind including, but not limited to, money, securities, accounts, bills, currency, food stamps, notes, tickets, any other evidence of debt, passports, deeds, mechanical drawings, blueprints, manuscripts, or exhibits;
   g. Debris removal, including extraction of pollutants from land or water; or removal, restoration, or replacement of polluted land or water;
   h. **Loss** caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property;
   i. **Loss** to contraband or property in the course of illegal transportation or trade;
   j. **Loss** to property caused by contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; any quality, fault, or weakness in the property that causes it to damage or destroy itself; or humidity, dampness, dryness, or changes in or extremes of temperature;
   k. **Loss** caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of pollutants;
   l. **Loss** caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by an **Insured**, anyone to whom you entrust the **towed property**, or anyone who has an interest in the property;
   m. **Loss** caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense;
   n. **Loss** caused by the explosion of explosives; or
   o. **Loss** to computers and electronic goods, including, but not limited to, computer hardware and component parts, televisions, DVD players, stereo or other sound reproduction equipment, or any other electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to store or play back recorded media.

3. Limited Bodily Injury and Property Damage Liability (Towing Only) coverage is subject to all exclusions as listed in Part I of the Commercial Auto Policy.

## LIMITS OF LIABILITY

1. On-Hook Towing Physical Damage Legal Liability coverage.
   Regardless of the number, amount, or units of **towed property** or **Insured autos**,

54

**insureds**, premiums paid, claims made or lawsuits brought, the most **we** will pay for each **loss** is the aggregate amount of damages to all **towed property** while being **loaded in** on or conveyed by one **insured auto**, not to exceed the limit of liability shown on the **declarations page** for this "On-Hook Legal Liability" coverage.

The most **we** will pay for **loss** to any **towed property** is the least of the following amounts:
a. The actual cash value of the damaged or stolen property at the time of **loss**;
b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or
c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

2. **Garagekeepers Storage Location Physical Damage Legal Liability coverage.**
Regardless of the number of **customer's autos** or **insured autos**, **insureds**, premiums paid, claims made or lawsuits brought, the most **we** will pay for each **loss** at each location is the "Garagekeepers Legal Liability" coverage limit shown on the **declarations page** for that location.

The most **we** will pay for a **loss** to any one **customer's auto** or all **customer's** auto equipment is the least of the following amounts:
a. The actual cash value of the damaged or stolen property at the time of **loss**;
b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or
c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

If the repair or replacement results in better than like kind and quality, **we** will not pay for the amount of the betterment.

An adjustment for depreciation or physical condition will be made in determining actual cash value in the event of a total loss.

In the event of payment of actual cash value for a total loss, **we** are entitled to all salvage, or credit for salvage, resulting from such loss.

3. **Limited Bodily Injury and Property Damage Liability (Towing Only) coverage.**
Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown on the **declarations page** for Liability coverage, subject to all of the terms and conditions of Part I of the Commercial Auto Policy.

55

4. **Deductibles.**
For each **loss** that qualifies for coverage under the On-Hook Towing Physical Damage Legal Liability coverage or the Garagekeepers Storage Location Physical Damage Legal Liability coverage, the deductible shown on the **declarations page** will be applied. The deductible will be deducted from the amount of the **loss** payable under that coverage or the limit of liability, whichever is less. No more than one deductible will apply to any single loss event regardless of the number of **customer's autos** or **towed property** involved in the **loss**.

If **we** pay all or any part of a deductible in the settlement of any claim or lawsuit, you must reimburse **us** for the deductible or the portion thereof that **we** paid.

ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form Z439 (02/11)

**NON-OWNED TRAILER PHYSICAL DAMAGE COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

Subject to the Limits of Liability, if **you** pay the premium for Non-Owned Trailer Physical Damage Coverage, **we** will pay damages for **property damage** for which **you** become legally responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession.

**We** will pay for a **loss** to the non-owned trailer and its equipment under the coverages described below, as reflected on **your declarations page**:
a. Collision Coverage. For **loss** caused by:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.
b. Comprehensive Coverage. From any **loss** except:
   (i) The **trailer's** collision with another object; or
   (ii) The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

56

**ADDITIONAL PAYMENTS**

In addition to our Limit of Liability, **we** will pay for an **insured**:
a. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b. interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

   **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit;
c. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds; or
d. reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request.

**EXCLUSIONS**

a. **We** will not pay for **loss** caused by or resulting from any of the following. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   (i) Nuclear Hazard.
      (1) The explosion of any weapon employing atomic fission or fusion; or
      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.
   (ii) War and Military Action
      (1) War, including undeclared or civil war;
      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents; or
      (3) Insurrection, rebellion, revolution, usurped power or action taken by a governmental authority in hindering or defending against any of these.
b. **We** will not pay for loss of use.
c. **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance;
   (i) Wear and tear, freezing, mechanical or electrical breakdown.
   (ii) Blowouts, punctures, or other road damage to tires.

**LIMIT OF INSURANCE AND DEDUCTIBLE**

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:

a. The actual cash value of the damaged or stolen property at the time of the **loss**; or

57

b. The amount necessary to replace the stolen or damaged property with other of like kind and quality;
c. The amount necessary to repair the damaged property to its pre-loss condition; or
d. The applicable Limit of Liability of the property as shown on the **declarations page**.

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire loss event.

**OTHER INSURANCE**

The insurance provided for a **loss** to any non-owned trailer is primary.

If coverage under more than one policy applies on the same basis, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form Z442 (01/06)

**ANY AUTOMOBILE LEGAL LIABILITY COVERAGE ENDORSEMENT**

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**CHANGES TO PART I - LIABILITY TO OTHERS**

A. The following section is added to the Insuring Agreement:

   If **you** pay the premium for this Any Automobile Legal Liability Coverage, then the definition of "**insured auto**" includes:
   1. any auto, if **you** are a partnership, corporation, or any other entity that is not a natural person; or
   2. any auto while used in **your** business, if **you** are a natural person or sole-proprietorship.

   For any type of auto that you acquire during the current policy period, coverage will be extended to that auto during the remainder of the policy period.

58

**B.** The first paragraph under the Limit Of Liability section is deleted and replaced by the following:

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown on the **declarations page** for the coverage provided by this endorsement.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

59

Page 133





1791 IL 0515

Page 135

---

Page 134



Northland Insurance Company
St. Paul, MN 55102

**COMMERCIAL AUTO DECLARATIONS**

**Effective Date:** 09/12/2019   **Expiration Date:** 09/12/2020       **Policy No:** WN269841
12:01 A.M. Standard Time at Named "Insured's" mailing address

**ITEM ONE - NAMED INSURED**

GPEX LLC

**Legal Entity:** LLC

**Commodities hauled:**

Building Materials, Commodities Dry Bulk, Construction, Paper Products

**ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS**

This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos".  "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Coverage Form next to the name of the coverage.

| Covered "Autos" | LIABILITY Coverages | Limits of Liability | | Premium |
|---|---|---|---|---|
| 67 | COVERED AUTOS LIABILITY | $1,000,000  each "accident" | $ | 3,538.00 |

| Covered "Autos" | ADDITIONAL COVERAGES BY ENDORSEMENT Coverage | Limits of Liability | | Premium |
|---|---|---|---|---|
| 67 | UNINSURED MOTORISTS | Separately Stated in Endorsement(s) | $ | 54.00 |
| 67 | UNDERINSURED MOTORISTS | Separately Stated in Endorsement(s) | $ | 103.00 |

| Covered "Autos" | PHYSICAL DAMAGE Coverages | Limits of Liability | | Premium |
|---|---|---|---|---|
| 67 | COMPREHENSIVE | * | $ | 324.00 |
| 67 | COLLISION | * | $ | 440.00 |

*  Stated Limit, Actual Cash Value or Cost of Repairs, whichever is less minus the deductible.

**ADDITIONAL PREMIUM PER ENDORSEMENT**

| FAMILY EMERGENCY TRAVEL COVERAGE | | Included |
|---|---|---|
| **ESTIMATED TOTAL PREMIUM** | $ | 4,359.00 |

**FORMS AND ENDORSEMENTS**

The schedule of coverage declarations, forms and endorsements shown on NL-2500 make up your policy as of the effective date shown above.

**ITEM THREE - SCHEDULE OF AUTOMOBILES**

The Schedule of Automobiles shown on TL-434 make up your policy as of the effective date shown on the Common Policy Declarations.

**ITEM FOUR - HIRED AUTO LIABILITY INSURANCE**

Cost of hire means the total cost you incur to lease, hire or borrow "autos" you don't own.

NO COVERAGE

07/30/2020  06:47 AM  TO:1800PROGRESSIVE 8477182822  07/30/2020 06:47 AM FROM:18007724557 Page:02 of 0

**ITEM FIVE - NAMED LESSEE(S)**

NO COVERAGE

**ITEM SIX - ADDITIONAL SYMBOLS**

NOT APPLICABLE

**ITEM SEVEN - SCHEDULE FOR NON-OWNERSHIP LIABILITY**

NO COVERAGE

**ITEM EIGHT - SCHEDULE OF HIRED COVERED AUTO COVERAGE - Physical Damage Insurance**
Stated Limit, Actual Cash Value or Cost of Repairs whichever is less, minus the deductible

NO COVERAGE

**ITEM NINE - TRAILER INTERCHANGE INSURANCE**
Stated Limit, Actual Cash Value or Cost of Repairs whichever is less, minus the deductible

NO COVERAGE

**ITEM TEN - MONTHLY REPORTING POLICIES**

NOT APPLICABLE

**ITEM ELEVEN - MONTHLY PREMIUM PAYMENT**

NOT APPLICABLE

---

**SCHEDULE OF AUTOMOBILES**
(forming part of DECLARATIONS)

Policy No. WN269841

Issued to: GPEX LLC

☒ Combined Deductible Applies

Effective as of: 09/12/2019

| NO. | UNIT ID | YEAR, MAKE, VEHICLE TYPE. | VIN NUMBER |
|-----|---------|---------------------------|------------|
| 1 | | 2013 FREIGHTLINER TRUCK | 1FVACWDT8CDX05505 |

**COVERAGES**

| NO. | COVERED AUTOS LIAB | UM | UIM | | | | | | | |
|-----|------|-----|-----|--|--|--|--|--|--|--|
| 1 | 3,538 | 54 | 103 | | | | | | | |

| NO. | STATED LIMIT | COMP | DED | COLL | DED | | | CARGO LIMIT | CARGO DED | THEFT DED | CARGO RATE | CARGO PREM |
|-----|------|------|-----|------|-----|--|--|-------|-------|-------|-------|-------|
| 1 | 20,000 | 224 | 1,000 | 440 | 1,000 | | | 100,000 | 1,000 | 2,500 | .5100 | 535 |

---



Customer Service
800-444-4487
800-556-0014 (fax)
progressivecommercial@email.progressive.com

Mailing address
Progressive
P.O. Box 94739
Cleveland, OH 44101-4739

Tuesday, August 18, 2020 10:20:26 AM
Total Number of Pages:04

To:  email work complete 02434454
Fax number: 800-556-0014

Message:

---

Northland Insurance Company
St. Paul, MN 55102

**COMMERCIAL AUTO DECLARATIONS**

Effective Date: 09/12/2019   Expiration Date: 09/12/2020   Policy No: WN269841
12:01 A.M. Standard Time at Named "Insured's" mailing address

**ITEM ONE - NAMED INSURED**
GPEX LLC

**Legal Entity:** LLC

**Commodities hauled:**
Building Materials, Commodities Dry Bulk, Construction, Paper Products

**ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Coverage Form next to the name of the coverage.

| Covered "Autos" | LIABILITY Coverages | Limits of Liability | Premium |
|-----|------|------|------|
| 67 | COVERED AUTOS LIABILITY | $1,000,000 each "accident" | $ 3,538.00 |

| Covered "Autos" | ADDITIONAL COVERAGES BY ENDORSEMENT Coverages | Limits of Liability | Premium |
|-----|------|------|------|
| 67 | UNINSURED MOTORISTS | Separately Stated in Endorsement(s) | $ 54.00 |
| 67 | UNDERINSURED MOTORISTS | Separately Stated in Endorsement(s) | $ 103.00 |

| Covered "Autos" | PHYSICAL DAMAGE Coverages | Limits of Liability | Premium |
|-----|------|------|------|
| 67 | COMPREHENSIVE | * | $ 224.00 |
| 67 | COLLISION | * | $ 440.00 |

* Stated Limit, Actual Cash Value or Cost of Repairs, whichever is less minus the deductible.

**ADDITIONAL PREMIUM PER ENDORSEMENT**

| FAMILY EMERGENCY TRAVEL COVERAGE | | $ Included |
|------|--|------|
| | ESTIMATED TOTAL PREMIUM | $ 4,359.00 |

**FORMS AND ENDORSEMENTS**
The schedule of coverage declarations, forms and endorsements shown on NL-2500 make up your policy as of the effective date shown above.

**ITEM THREE - SCHEDULE OF AUTOMOBILES**
The Schedule of Automobiles shown on TL-434 make up your policy as of the effective date shown on the Common Policy Declarations.

**ITEM FOUR - HIRED AUTO LIABILITY INSURANCE**
Cost of hire means the total cost you incur to lease, hire or borrow "autos" you don't own.

NO COVERAGE

**ITEM FIVE - NAMED LESSEE(S)**

NO COVERAGE

**ITEM SIX - ADDITIONAL SYMBOLS**

NOT APPLICABLE

**ITEM SEVEN - SCHEDULE FOR NON-OWNERSHIP LIABILITY**

NO COVERAGE

**ITEM EIGHT - SCHEDULE OF HIRED COVERED AUTO COVERAGE - Physical Damage Insurance**
Stated Limit, Actual Cash Value or Cost of Repairs whichever is less, minus the deductible

NO COVERAGE

**ITEM NINE - TRAILER INTERCHANGE INSURANCE**
Stated Limit, Actual Cash Value or Cost of Repairs whichever is less, minus the deductible

NO COVERAGE

**ITEM TEN - MONTHLY REPORTING POLICIES**

NOT APPLICABLE

**ITEM ELEVEN - MONTHLY PREMIUM PAYMENT**

NOT APPLICABLE

---

**SCHEDULE OF AUTOMOBILES**
(forming part of DECLARATIONS)

Policy No. WN269841

Issued to: GPEX LLC

☒ Combined Deductible Applies    Effective as of: 09/12/2019

| NO. | UNIT ID | YEAR, MAKE, VEHICLE TYPE | | VIN NUMBER |
|---|---|---|---|---|
| 1 | | 2012 FREIGHTLINER TRUCK | | 1FVACNDY8CDA05505 |

**COVERAGES**

| NO. | COVERED AUTOS LIAB | L/M | U/M | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3,538 | 54 | 103 | | | | | | | |

| NO. | STATED LIMIT | COMP | DED | COLL | DLD | | CARGO LIMIT | CARGO DED | THEFT DED | CARGO RATE | CARGO PREM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 20,000 | 324 | 1,000 | 440 | 1,000 | | 100,000 | 1,000 | 2,500 | .5100 | 536 |

---

TDL-01 (9/16)    © 2016 The Travelers Indemnity Company. All rights reserved.    Page 2 of 2

Page 141

TL-434 (9/16)    © 2016 The Travelers Indemnity Company. All rights reserved.    Page 1 of 2

Page 142

---

# PROGRESSIVE
## COMMERCIAL

**Customer Service**
800-444-4487
800-556-0014 (fax)
progressivecommercial@email.progressive.com

**Mailing address**
Progressive
P.O. Box 94739
Cleveland, OH 44101-4739

Tuesday, August 18, 2020 10:20:58 AM
Total Number of Pages:02

To:    email work complete 02434454
Fax number: 800-556-0014

Message:

---

| Reply To: | 43423159 |
|---|---|
| To: | KGolebiowska@yourensure.com |
| From: | commercialauto@email.progressive.com |
| CC: | |
| BCC: | |
| Date: | 8/18/20 10:20:46 AM EDT |
| Subject: | RE: FW: Gpex Llc policy#: 02434454-0 proof of prior |

Sincerely,

Melissa

Commercial Lines CC Processing Specialist Sr.
Progressive Commercial Lines Email Team

--- Original Message ---
From: "Kamila Golebiowska" <KGolebiowska@yourensure.com>
Received: 7/30/20 9:51:51 AM EDT
To: "Progressive" <UWSPCA@Commercial.Progressive.com>
Subject: FW: Gpex Llc policy#: 02434454-0 proof of prior

Good morning,
Please review proof of prior coverage for : Gpex Llc policy#: 02434454-0 proof of prior

Sincerely,

*Kamila Golebiowska*
*Insurance Agent*

**ENSURE Inc**
101 Lions Dr, Ste#118 | Barrington, IL 60010 |Ph: (847)316-9933 | Fax:(847)316-9829
For certificate of insurance, please email us at: Request@yourensure.com or Login at
www.yourensure.com/certificate

This message (including any attachments) contains confidential information intended for a
specific individual and purpose, and is protected by law. If you are not the intended recipient,
you should delete this message and any disclosure, copying, or distribution of this message, or
the taking of any action based on it, by you is strictly prohibited.
v.E.1

---

Page 143

Page 144

Progressive Insurance
PO Box 94739
Cleveland, OH 44101

*PROGRESSIVE*
COMMERCIAL

53  10447

GPEX LLC
8926 N GREENWOOD AVE # 148
NILES, IL 60714-5163

August 24, 2020

Policy number: CA 02434454-0

**Enclosed is the MCS-90.**

Please retain this copy for your records.

Please note you are receiving the attached MCS-90 form due to recent form revisions by the Federal Motor Carrier Safety Administration (FMCSA). To ensure you have the most current form, please take a moment to review your information listed on the attached MCS-90 for accuracy, including your USDOT number, if listed. In the event any updates are needed, please contact Customer Service at 1-800-444-4487.

If this endorsement subjects the Company to public liability for negligence in the insured's operation, maintenance, or use of motor vehicles, you are required to inform us of all vehicles that are commercially owned or operated by the Insured and to list them on your policy. Please review the current policy declaration page and inform us promptly of any additional vehicles that need to be listed. If you acquire (or acquire the services of) any additional commercially owned or operated vehicles in the future, you must promptly notify us of each such additional vehicle. Failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase.

Thank you,
Progressive Commercial Lines
Permit Issuance and Verification
1-800-444-4487

20840310 (08/00)

Page 145

---

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.

OMB No: 2126-0008
Expiration: 3/31/2021
Form MCS-90 Revised 09/30/2020

| USDOT Number: | 3181801 | Date Received: |
|---|---|---|

U.S. Department
of Transportation
Federal Motor Carrier
Safety Administration

**FORM MCS-90 ENDORSEMENT FOR**
**MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to  GPEX LLC
(Motor Carrier name)

of  8926 N GREENWOOD AVE # 148 NILES, IL 60714-5163
(Motor Carrier state or province)

Dated at Mayfield Village, Ohio on this  19th  day of  AUGUST , 2020

Amending Policy Number: CA  02434454-0  Effective Date  7/28/2020

Name of Insurance Company:  PROGRESSIVE CONSUMERS INS COMPANY

Countersigned by: _____
(Authorized company representative)

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown (check only one):

[X]  This insurance is primary and the company shall not be liable for amounts in excess of $ 750,000 for each accident.

[ ]  This insurance is excess and the company shall not be liable for amounts in excess of $____ for each accident in excess of the underlying limit of $____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 1-800-444-4487.

Cancellation of this endorsement may be effected by the company giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

Page 146

Page 1 of 2

---

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

ACCIDENT includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

MOTOR VEHICLE means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

BODILY INJURY means injury to the body, sickness, or disease to any person, including death resulting from any of these.

PROPERTY DAMAGE means damage to or loss of use of tangible property.

ENVIRONMENTAL RESTORATION means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release, or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the public welfare, livestock, fish, shellfish, and wildlife.

PUBLIC LIABILITY means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA). In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance, or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency, or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement. It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment. The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

**SCHEDULE OF LIMITS—PUBLIC LIABILITY**

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| (1) For-hire (in Interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| (2) For-hire and Private (in Interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material, in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| (3) For-hire and Private (in Interstate commerce, in bulk only, with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| (4) For-hire and Private (in Interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

20840310 (09/20)

Page 2 of 2

Page 147

---

**ENSURE INC**
101 LIONS DR # 110
BARRINGTON, IL 60010

*PROGRESSIVE*
COMMERCIAL

Policy number: 02434454
Underwritten by:
Artisan and Truckers Casualty Co.
May 12, 2021
Policy Period: Jul 29, 2021 - Jul 29, 2022

GPEX LLC
8926 N GREENWOOD AVE # 148
NILES, IL 60714

## Renewal bill and policy information is enclosed

### Thank you for being a Progressive customer

**Please review your policy documents today**

We send your renewal policy information early so that you have the opportunity to review it for accuracy. Your Commercial Auto Insurance Coverage Summary lists drivers, the autos insured, the coverages selected and the premiums by coverage.

Your current policy will expire on July 29, 2021 at 12:01 a.m. If we recently sent you a Cancel Notice because the remaining balance on your current policy has not been received please pay that amount by the due date to avoid policy cancellation. **This bill does not supersede any Cancellation Notice.** If you've already sent this payment - thank you. If you do not make this payment, the offer to renew this policy is withdrawn.

If you've cancelled a payment, it is not reflected in the amount due.

**Premium and payment information**

| | |
|---|---|
| Renewal policy premium | $6,280.00 |
| **Minimum amount due** | **$6,280.00** |
| **Due date** | **July 29, 2021** |

To renew your policy, please pay at least the minimum amount due by the due date. To pay with a check or credit card by phone, call our Automated Billing Inquiry at 1-877-278-1615 or login to progressiveagent.com.

Please see reverse side for additional information.                    Continued on back

---

### Payment Coupon

| | | Policy number: 02434454 |
|---|---|---|
| **Minimum amount due** | **$6,280.00** | Policyholder:<br>GPEX LLC |
| **Due date** | **July 29, 2021** | For immediate payment - go to progressiveagent.com or call 1-877-278-1615 and get instant confirmation |
| Amount enclosed | $ | If you pay by check, please allow 5 to 7 days for your payment to reach us. Write your policy number on the check and make it payable to Artisan and Truckers Casualty Co. |

PROGRESSIVE
DEPT 0561
CAROL STREAM IL 60122-0561

056102434454 12393 0628000 0628000 5000554 7200776 001007292103

Page 148

Policy number: 02434454
GPEX LLC
Page 2 of 2

**Access your policy online, anytime**

Don't forget that you can always log in to your policy online to make changes, pay your bill, check the status of a claim, or access policy documents anytime. Just visit us at progressiveagent.com.

**What you should expect from an insurance company**

For the next policy period, you will receive a discount for Paid in Full.

**Please review your policy documents**

Please review your policy documents for accuracy. If you need help or want to make changes, you can call us any time. You can also check your billing history, make a payment, print policy documents, update your policy, or check the status of a claim online.

We appreciate your trust and look forward to serving you.

**Deductible Options for Collision and Comprehensive Coverage**

Your premium may be reduced if you select a higher deductible for Collision and Comprehensive coverage.
For more information about reducing your premium, please contact your agent.

ENSURE INC
101 LIONS DR #110
BARRINGTON, IL 60010

**PROGRESSIVE**
COMMERCIAL

Named insured

GPEX LLC
8926 N GREENWOOD AVE #148
NILES, IL 60714

Policy number: **02434454**
Underwritten by:
Artisan and Truckers Casualty Co
May 12, 2021
Policy Period: Jul 29, 2021 - Jul 29, 2022
Page 1 of 3

**progressiveagent.com**
**Online Service**
Make payments, check billing activity, print policy documents, update your policy or check the status of a claim.

**1-847-316-9933**
**ENSURE INC**
Contact your agent for personalized service.

**1-800-444-4487**
For customer service if your agent is unavailable or to report a claim.

# Commercial Auto Insurance Coverage Summary
## This is your Renewal Declarations Page

This Renewal Declarations Page is effective only if the minimum amount due to renew your policy is received or postmarked by July 29, 2021.

Your coverage begins on July 29, 2021 at 12:01 a.m. This policy expires on July 29, 2022 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (06/10). The contract is modified by forms 2852IL (05/15), 4757IL (09/04), 2433IL (04/08), 2371 (06/10), 2434IL (12/11), MCS90 (09/09), 4852IL (12/11), 4881IL (12/11) and 2228 (01/11).

The named insured organization type is a corporation.

Artisan and Truckers Casualty Co is a stock company (NYSE: PGR).
PO Box 94739 Cleveland, OH 44101.

---

Policy number: 02434454
GPEX LLC
Page 2 of 2

## Outline of coverage

### Auto coverage part

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $5,045 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured Motorist | $1,000,000 combined single limit | | 53 |
| Underinsured Motorist | $1,000,000 combined single limit | | 31 |
| Medical Payments | $5,000 each person | | 19 |
| **Subtotal policy premium** | | | **$5,148** |

### Commercial General Liability coverage part

| Description | Limits | Premium |
|---|---|---|
| Limited General Liability - Trucking Operations | $1,000,000/$2,000,000 | $484 |
| Each Occurrence | $1,000,000 | |
| General Aggregate | $2,000,000 | |
| Products/Completed Operations Aggregate | $2,000,000 | included |
| Personal and Advertising Injury | $1,000,000/any one person or organization | included |
| Damage to Premises Rented to You | $100,000/any one premises | included |
| Medical Expense | $5,000/any one person | included |
| **Subtotal policy premium** | | **$484** |

### Motor Truck Cargo coverage part

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Motor Truck Cargo | $100,000 | $1,000 | $648 |
| **Subtotal policy premium** | | | **$648** |
| **Total 12 month policy premium** | | | **$6,280** |

### Rated drivers

1. ANDRZEJ JARZABEK

### Rated commodities

1. PLASTIC PRODUCTS
2. PAPER AND PAPER PRODUCTS
3. OTHER CONSUMER GOODS

### Auto coverage schedule

1. **2014 VOLV VNL**
   VIN: 4V4NC9EJ2EN152355 Garaging Zip Code: 60118 Radius: More than 500 miles
   Personal use: No Body type: Truck Tractor

| | Liability Premium | UM Premium | UIM Premium | Med Pay Premium | Auto Total |
|---|---|---|---|---|---|
| Liability Premium | $4,899 | $53 | $31 | $19 | **$5,002** |

2. **2030 Non-owned Attached Trailer ****
   VIN: None Garaging Zip Code: 60118 Radius: More than 500 miles
   Personal use: No Body type: 20

| | Liability Premium | | | | Auto Total |
|---|---|---|---|---|---|
| Liability Premium | $146 | | | | **$146** |

Form 6499 IL (06/17)

Cont'd

---

Policy number: 02434454
GPEX LLC
Page 3 of 3

** **Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page.

## Premium discount

| Policy | |
|---|---|
| 02434454 | Paid in Full |

Form 6499 IL (06/17)

## Important Notice

Federal, state and local laws may require you to carry higher limits of liability insurance based on your business or vehicle type. It's your responsibility to comply with these laws.

Please contact the state department of transportation, your employer, or the city and municipalities where you operate, to determine if you're required to carry higher limits.

Form A167 (03/13)

## Duty to list vehicles

If a federal or state endorsement is attached to this policy that subjects the Company to public liability for negligence in the insured's operation, maintenance or use of motor vehicles, you are required, as part of this renewal, to ensure that all commercially owned or operated vehicles have been disclosed to us and are listed on this renewal policy. You are also required to promptly notify us of any additional commercially owned or operated vehicles put into service in the future. Failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase. Please review the renewal policy declaration page and inform us promptly of any additional vehicles that need to be listed.

Form A177 (06/15)

## Your Renewal Policy – New Discount and Other Changes

We've made some changes to the way we rate policies and want to tell you about them. We have a new discount offering and certain other discounts will no longer be offered. Those and some of the other rating changes being made are described below.

- We now offer an eligibility criteria based discount for Electronic Funds Transfer (EFT) payments.
- We no longer offer the Business Experience and Commercial Driver's License (CDL) discounts.
- Drivers who have not obtained a valid driver's license from the state in which the policy is issued can increase your rate.
- The Package Discount is now referred to as the Multi-Product Discount. The eligibility criteria did not change and customers who previously qualified will retain the discount.

Please review your renewal offer for additional information about your rate. If you would like more information on receiving the EFT discount or have any questions about these discounts or changes, please call Customer Service at 1-800-444-4487.

Form A192 (13/16)

## Provider Network Program

If you've hurt in an accident that's covered by your Progressive policy, you may have access to a network of medical providers in your area who can treat you. These providers may offer reduced rates through the network that could allow you to get more treatment if necessary.

Visit progressive.com/providernetworks anytime to find out what provider networks are available in your area. The claim representative handling your medical claim will also be able to provide this information if you're in an accident.

**You are under no obligation to use any network referenced above. You're free to see a medical service provider of your choice.** Using a provider within the network doesn't necessarily mean that we'll cover the cost of their services. If you're in an accident, always check with the claim representative handling your medical claim to confirm what's covered.

Form Z271 (01/12)

## Important information about your policy premium

### Our Use of Credit History in Determining Your Rate

Your insurance premium or rate is based on many factors including the type of vehicle you drive, the amount and types of coverages you purchase, and the driving and claims history of those on your policy. We also use credit history to calculate an insurance credit score, which is another factor we use to determine your rate.

Because credit history can change over time, you have the option to request that we review credit history and update your rate at your next renewal, but you can only make this request once in a 12-month period.

It's important to know that our review of credit history cannot negatively affect your rate. There are many other factors, such as changes in your driving history or changes in the premium we charge, that may also affect your renewal rate.

To request a review of credit history, please call Customer Service. We can also provide additional information about how we use credit history and insurance credit scores.

### Tier Reviews

To help determine an accurate rate for your policy, we review certain information at policy inception to place you in a tier. A tier represents a category of customers who share similar risk characteristics. Once we've determined your tier, we look at additional information to refine and finalize your rate.

At renewal, we review your payment, claim, driving and policy change history to determine if we will adjust your tier. Because we review different information at renewal than at policy inception, and because we may not perform the review at each renewal, you may be in a different tier at renewal than you would be in if you were to be a as a new customer. That means your rate as a new customer could be different. You always have the right to cancel your policy and apply for a new one. Please note that our practices may change over time.

Form Z190C (06/16)

## Privacy Policy/Opt-Out

### About this notice

We are committed to protecting your privacy and earning your trust. This Privacy Policy ('**notice**') describes the personal information we collect about you and how we use and protect it. It applies to our current and former customers and others who live in your state. It replaces earlier versions that we may have given to you.

### Summary

This section summarizes our privacy practices. For more detail, please read the entire notice.

- We gather information from you, your transactions with us, and outside sources.
- We use your information only to conduct our business and provide insurance to you.
- We will share your information with your selected agent or broker and companies that provide certain products or services you request through us.
- We will not share your information with other companies for their independent marketing purposes without your consent.
- You can limit our use of some of this information for marketing purposes.
- We limit access to your information and use safeguards to help protect it.
- You may review and correct your information.

### What information do you collect about me?

We collect information about you to quote and service your insurance policy. This is called "**Nonpublic Personal Information**" or "**NPI**" if it identifies you and is not available to the public. Depending on the product, we collect it from some or all of the following sources. We have provided a few examples for each source, but not all may apply to you.

- **Application information:** You provide this on your application, through your agent or broker, by phone, or online. We may also obtain it from directories and other outside sources. It includes your name, street and e-mail addresses, phone number, driver's license number, Social Security number, date of birth, gender, marital status, and type of vehicle. It also includes information about other drivers.
- **Consumer report information:** We obtain this from consumer reporting agencies. It includes your driving record, claims history with other insurers, and credit report information. The information is kept by the consumer reporting agencies and disclosed by them to others as permitted by law.
- **Transaction information:** This is information about your transactions with us, our affiliates, or others. It includes your insurance coverages, limits and rates, and payment and claims history. It also includes information that we require for billing and payment.

We also may collect "**Website Information**" about you. This is unique to Internet activity. It may include how you linked to our website. It also may include your IP address and information about your device, time of visit, and what pages you visit on our website. When you visit our websites, we use cookies, web beacons, and other technology to collect information about you and your activities on our websites. We do this to provide services to you, enhance your online experience, and advertise our products and services. Some of our websites contain more information about our website privacy practices. Please read it when using the site.

### Who might get information about me from you?

We will share information about you only as permitted by law. We will not share your NPI with other companies for their independent marketing purposes without your consent. There is no need to "opt out" or tell us not to do this.

Disclosures include those that we feel are required to provide insurance claims or customer service, prevent fraud, perform research or comply with the law. Recipients include, for example, our family of companies, claims representatives, service providers, consumer reporting agencies, insurance agents and brokers, law enforcement, courts and government agencies. They may disclose the information to others as permitted by law. For example, consumer reporting agencies may disclose Transaction Information received from us to other insurance companies with which you do business.

Where permitted by law, we may also disclose Application or Transaction Information to service providers that help us market our products. These service providers may include financial institutions with which we have joint marketing agreements.

Some products or services obtained through us will be provided by other companies. We may share your information with these companies. They will use the information as described in their privacy policies. These companies may share with us information about you and your transactions with them.

### Can I limit use of my information for marketing?

We may share your NPI among our family of companies so they may offer products and services to you. You may limit some of this marketing by calling us at 1-844-582-5040. Your choice will apply to all people listed on your policy.

### How do you protect my information?

We restrict access to your information to our employees and others who we feel must use it to provide our products and services or otherwise run our business. Their use of the information is limited by law, our employee code of conduct, and written agreements where appropriate. We also maintain physical, electronic and procedural safeguards to protect your information.

### How can I review and correct information you have about me?

To review information we have about you, send a written request to Customer Service, PO Box 94739, Cleveland, OH 44101. You must describe the kind of information you want to review and state that your request is in response to this notice. Include your full name, mailing address, and policy number (if applicable). Within 30 business days, we will describe what is available and how you may request corrections. We will also name anyone we show as having received the information within two years prior to your request. Finally, we will identify the companies that have provided Consumer Report Information about you.

You may review the information at our offices or receive a copy of it for a fee to cover our costs. We will not provide information that we feel is privileged, such as information about claims or lawsuits.

To correct information about you, send a written request as described above, explaining your desired correction. Within 30 business days, we will either correct the information or tell you why we will not. We cannot correct Consumer Report Information. To do this, you must contact the consumer reporting agency that provided it.

If we make your requested correction, we will notify you in writing. We will also notify anyone you name who may have received the information within the previous two years. If required by law, we will also notify others who may have given it to or received it from us. If we refuse to make the requested correction, you may file with us a concise written statement about why you object. That statement should include the information you think is correct. We will include your statement in your file. We will send it to the same persons to whom we would send a copy of any correction or change.

**Our family of companies**

This notice is from our family of companies. As of the date of this notice, this includes: Artisan and Truckers Casualty Company, Blue Hill Specialty Insurance Company, Drive New Jersey Insurance Company, Mountain Laurel Assurance Company, National Continental Insurance Company, Progny Agency, Inc., Progressive Adjusting Company, Inc., Progressive Advanced Insurance Company, Progressive Advantage Agency, Inc., Progressive American Insurance Company, Progressive Auto Pro Insurance Agency, Inc., Progressive Bayside Insurance Company, Progressive Casualty Insurance Company, Progressive Choice Insurance Company, Progressive Classic Insurance Company, Progressive Commercial Advantage Agency, Inc., Progressive Commercial Casualty Company, Progressive County Mutual Insurance Company, Progressive Direct Insurance Company, Progressive Express Insurance Company, Progressive Freedom Insurance Company, Progressive Garden State Insurance Company, Progressive Gulf Insurance Company, Progressive Hawaii Insurance Corp., Progressive Life Insurance Company, Progressive Marathon Insurance Company, Progressive Max Insurance Company, Progressive Michigan Insurance Company, Progressive Mountain Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Paloverde Insurance Company, Progressive Preferred Insurance Company, Progressive Premier Insurance Company of Illinois, Progressive Security Insurance Company, Progressive Select Insurance Company, Progressive Southeastern Insurance Company, Progressive Specialty Insurance Company, Progressive Universal Insurance Company, Progressive West Insurance Company, United Financial Casualty Company, and 358 Ventures, Inc. Our family of companies also includes ARX Holding Corp. and the entities that it directly or indirectly majority owns or controls. Those companies are governed by a separate privacy policy available at americanstrategic.com.

Form 6490 (02/20)

**Agent compensation disclosure**

The insurance producer that sold you this policy is a licensed independent insurance agent authorized by Artisan and Truckers Casualty Co and by other insurance companies to solicit business on their behalf. We believe that independent agents who represent more than one company can better assist you in finding the combination of coverage, price and service that meets your needs.

We will pay your agent a commission for placing your policy with us. We may also help your agent pay for advertising and marketing that is designed to attract new customers.

Form 2141 (05/05)

---

ENSURE INC
101 LIONS DR #110
BARRINGTON, IL 60010

**PROGRESSIVE**
COMMERCIAL

Named insured

GPEX LLC
8926 N GREENWOOD AVE #148
NILES, IL 60714

**Policy number:** 02434454
Underwritten by:
Artisan and Truckers Casualty Co
July 7, 2021
Policy Period: Jul 29, 2021 - Jul 29, 2022
Page 1 of 3

**progressiveagent.com**

**Online Service**
Make payments, check billing activity, print policy documents, update your policy or check the status of a claim.

**1-847-316-9933**

**ENSURE INC**
Contact your agent for personalized service.

**1-800-444-4487**
For customer service if your agent is unavailable or to report a claim.

# Commercial Auto
## Insurance Coverage Summary
This is your revised Renewal
Declarations Page

Your coverage begins on July 29, 2021 at 12:01 a.m. This policy ends on July 29, 2022 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (06/10). The contract is modified by forms 2852IL (05/15), 4757IL (09/04), 2433IL (04/08), 2371 (06/10), 2434IL (12/11), MCS90 (99/09), 4852IL (12/11), 4881IL (12/11) and 2228 (01/11). The named insured organization type is a corporation.

Artisan and Truckers Casualty Co is a stock company (NYSE PGR).
PO Box 94739 Cleveland, OH 44101.

**Outline of coverage**

**Auto coverage part**

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $5,045 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured Motorist | $1,000,000 combined single limit | | 53 |
| Underinsured Motorist | $1,000,000 combined single limit | | 31 |
| Medical Payments | $5,000 each person | | 19 |
| **Subtotal policy premium** | | | **$5,148** |

**Commercial General Liability coverage part**

| Description | Limits | Premium |
|---|---|---|
| Limited General Liability - Trucking Operations | $1,000,000/$2,000,000 | $484 |
| Each Occurrence | $1,000,000 | |
| General Aggregate | $2,000,000 | |
| Products/Completed Operations Aggregate | $2,000,000 | included |
| Personal and Advertising Injury | $1,000,000/any one person or organization | included |
| Damage to Premises Rented to You | $100,000/any one premises | included |
| Medical Expense | $5,000/any one person | included |
| **Subtotal policy premium** | | **$484** |

**Motor Truck Cargo coverage part**

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Motor Truck Cargo | $100,000 | $1,000 | $648 |
| **Subtotal policy premium** | | | **$648** |
| **Total 12 month policy premium** | | | **$6,280** |

**Rated drivers**
1. ANDRZEJ JARZABEK

**Rated commodities**
1. PLASTIC PRODUCTS
2. PAPER AND PAPER PRODUCTS
3. OTHER CONSUMER GOODS

**Auto coverage schedule**

1. **2014 VOLV VNL**
   VIN: 4V4NC9EJ3EN152355 Garaging Zip Code: 60118 Radius: More than 500 miles
   Personal use: N Body type: Truck Tractor

| | Liability Premium | UM Premium | UIM Premium | Med Pay Premium | Auto Total |
|---|---|---|---|---|---|
| Liability Premium | $4899 | $53 | $31 | $19 | $5,002 |

2. **2030 Non-owned Attached Trailer**
   VIN: None Garaging Zip Code: 60118 Radius: More than 500 miles
   Personal use: N Body type: 20

| | Liability Premium | | | | Auto Total |
|---|---|---|---|---|---|
| Liability Premium | $146 | | | | $146 |

Form 8409 A (06/11)

Form 6495 K (08/11)

Policy number: 02434454
GPEX LLC
Page 3 of 3

**Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page.

**Premium discount**

| Policy | | |
|---|---|---|
| 02434454 | Paid in Full | |

form 6409 IL Ed(<1>)

Page 161

---

## COMMERCIAL GENERAL LIABILITY ENDORSEMENT

Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine your rights, duties, and what is and is not covered.

**We** agree with **you** that the following coverage is added to your Commercial Auto Policy:

**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT**

The following definitions are in addition to those found in the Commercial Auto Policy. Except as otherwise defined in this endorsement, terms appearing in boldface type, whether in the singular, plural or possessive, will have the following meanings.

1. "**Advertisement**" means a notice that is broadcast or published to the general public or specific market segments about **your** goods, products or services for the purpose of attracting customers or supporters. **Advertisement** includes material placed on the Internet or on similar electronic means of communication; however, regarding websites, only that part of a website that is about **your** goods, products or services for the purpose of attracting customers or supporters is considered an **advertisement**.

2. "**Coverage territory**" means:
   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or
   c. All other parts of the world if the injury or damage arises out of:
      (i) Goods or products made or sold by **you** in the territory described in a. above;
      (ii) The activities of a person whose home is in the territory described in a. above, but who is away for a short time on **your** business; or
      (iii) Personal and advertising injury offenses that take place through the Internet or similar electronic means of communication;
   provided that the **insured's** responsibility to pay damages is determined in a **suit** on the merits, in the territory described in a. above or in a settlement agreed to by **us**.

3. "**Executive officer**" means a person holding any of the officer positions created by **your** charter, constitution, by-laws or any other similar governing document.

4. "**Fungi**" means any type of form of fungus, including mold or mildew and any mycotoxins, spores, scents or by products produced or released by fungi.

5. "**Hostile fire**" means a fire or explosion that is uncontrolled or breaks out from where it was intended to be.

6. "**Impaired property**" means tangible property, other than **your product** or **your work**, that cannot be used or is less useful than intended by its manufacturer or designer because:
   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or
   b. **You** have failed to fulfill the terms of a contract or agreement;
   if such property can be restored to use by:

1

Page 162

---

   a. The repair, replacement, adjustment or removal of **your product** or **your work**; or
   b. **Your** fulfilling the terms of the contract or agreement.

7. "**Insured**" means:
   a. If **you** are designated in on the **Declarations Page** as:
      i. An individual: **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.
      ii. A partnership or joint venture: **you**. **Your** members, partners, and their spouses, are also **insureds**, but only with respect to the conduct of **your** business.
      iii. A limited liability company: **you**. **Your** members are also **insureds**, but only with respect to the conduct of **your** business. **Your** managers are **insureds**, but only with respect to their duties as **your** managers.
      iv. An organization other than a partnership, joint venture or limited liability company: **you**. **Your** "executive officers" and directors are also **insureds**, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also insureds, but only with respect to their liability as stockholders.
      v. A trust: **you**. **Your** trustees are also insureds, but only with respect to their duties as trustees.
   b. Each of the following is also an **insured**:
      i. **Your** volunteer workers, but only while performing duties related to the conduct of **your** business.
      ii. **Your** employees, other than **your executive officers** (if **you** are an organization other than a partnership, joint venture or limited liability company) or **your** managers (if **you** are a limited liability company), but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.
      No employee or volunteer worker is an insured for:
      (1) **Bodily injury** or **personal and advertising injury**:
         (a) to **you**, to **your** partners or members (if **you** are a partnership or joint venture), to **your** members (if **you** are a limited liability company), to a co-employee while in the course of his or her employment or performing duties related to the conduct of **your** business, or to **your** other volunteer workers while performing duties related to the conduct of **your** business;
         (b) to the spouse, child, parent, brother, or sister of the co-employee or volunteer worker as a consequence of paragraph (1)(a) above;
         (c) for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or
         (d) arising out of his or her providing or failing to provide professional health care services.
      (2) **Property damage** to property:
         (a) owned, occupied, or used by,
         (b) rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by
         **you**, any of **your** employees, volunteer workers, any partner or member (if **you** are a partnership or joint venture), or any member (if **you** are a limited liability company).
      iii. Any person (other than **your** employee or volunteer worker), or any organization while acting as **your** real estate manager.

2

Page 163

---

      iv. Any person or organization having proper temporary custody of your property if **you** die, but only:
         A. with respect to liability arising out of the maintenance or use of that property; and
         B. until **your** legal representative has been appointed.
      v. **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this endorsement.
   c. Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to the organization. However:
      i. Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier;
      ii. Coverage A does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization; and
      iii. Coverage B does not apply to **bodily injury** and **advertising injury** arising out of an offense committed before **you** acquired or formed the organization.
   No person or organization is an **insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

8. "**Insured contract**" for purposes of this endorsement only, means:
   a. A contract for a lease of premises. However, any portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner is not an **insured contract**;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. An elevator maintenance agreement; and
   f. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability, as referred to in this provision, means a liability that would be imposed by law in the absence of any contract or agreement.
   However, this paragraph f. does not include that part of any contract or agreement:
      (1) That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
      (3) Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

3

Page 164

9. **"Loading or unloading"** means the handling of property:
   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;
   b. While it is in or on an aircraft, watercraft or **auto**; or
   c. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered; however, **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

10. **"Occurrence"** means an **accident**, happening or event, including continuous or repeated exposure to substantially the same general harmful conditions.

11. **"Personal and advertising injury"** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication in any manner, including, but not limited to, e-mail, blogs, and other electronic publication, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner including but not limited to e-mail, blogs, and other electronic publication, of material that violates a person's right of privacy;
   f. The use of another's advertising idea in **your advertisement**; or
   g. Infringing upon another's copyright, trademark, trade dress or slogan in **your advertisement**.

12. **"Product/completed operations hazard":**
   a. Includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:
     (i)  Injury or damage caused by products that are still in **your** physical possession; or
     (ii)  Work that has not yet been completed or abandoned. **Your work** will be deemed completed at the earliest of the following times:
        (a)  When all of the work called for in **your** contract has been completed.
        (b)  When all of the work to be done at the job site has been completed if **your** contract calls for work at more than one job site; or
        (c)  When that part of the work done at a particular job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
   b. Does not include **bodily injury** or **property damage** arising out of:
     (i)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle, including an aircraft or watercraft, not owned or operated by **you**, and that condition was created by the **loading or unloading** of that vehicle by any **insured**;
     (ii)  The existence of tools, uninstalled equipment, or abandoned or unused materials

13. **"Property damage"** for purposes of this endorsement only, means:

 

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.
For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

14. **"Silica"** means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

15. **"Silica-related dust"** means a mixture or combination of silica and other dust or particles.

16. **"Suit"** means a civil proceeding involving allegations of damages because of **bodily injury**, **property damage** or **personal and advertising injury** to which this insurance applies. **Suit** includes but is not limited to:
   a. An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with **our** consent; or
   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

17. **"Your product"** means:
   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
     (i)  **You**;
     (ii)  Others trading under your name; or
     (iii)  A person or organization whose business or assets **you** have acquired: and
   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and
   b. The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

18. **"Your work"** means:
   a. Work or operations performed by **you** or on **your** behalf; and
   b. Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

 

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and
   b. The providing of or failure to provide warnings or instructions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**
   a. **We** will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, **we** will have no duty to defend the **insured** against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. **We** may, at **our** discretion, investigate any **occurrence** and settle any claim or **suit** that may result. However:
     (1)  The amount **we** will pay for damages is limited as described in Section II – Limits Of Liability; and
     (2)  **Our** right and duty to defend ends when **we** have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C;
   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to **bodily injury** and **property damage** only if:
     (1)  The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and
     (2)  The **bodily injury** or **property damage** occurs during the policy period.
   Any **bodily injury** or **property damage**, whether such **bodily injury** or **property damage** is known or unknown, that first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier), or that is, or alleged to be, in the process of occurring at the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier), even if the **occurrence** continues during this policy period, will be deemed to have occurred prior to the policy period. Any **bodily injury** or **property damage**, whether known or unknown, which is in the process of settlement, adjustment or **suit** as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier) will also be deemed to have occurred prior to the policy period.

   **Bodily injury** or **property damage** that first occurs during this policy period includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of this policy period.

   c. Damages because of **bodily injury** or **property damage** include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the **bodily injury**.

   d. In the event that a claim or **suit** seeks damages, some of which are covered and others of which are not covered by this policy, the **insured** must agree to a reasonable allocation of the costs and fees of defense, and the **insured** will be responsible for payment of the costs and fees to defend the damages

 

or claims not covered by this policy. This agreement shall be reached in writing, signed by the **insured** and **us**, prior to the date when a responsive pleading to the claim or **suit** is filed on behalf of the **insured**. In the absence of such agreement, **our** duty to defend will apply only to those specific portions of the **suit** that are covered.

**EXCLUSIONS** - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

Coverage under Coverage A does not apply to:

   a. **Expected or Intended Injury**

     **Bodily injury** or **property damage** expected or intended from the standpoint of any **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

     **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
     (1)  That the **insured** would have in the absence of the contract or agreement; or
     (2)  Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of **bodily injury** or **property damage**, provided:
        (i)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and
        (ii)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

     **Bodily injury** or **property damage** for which any **insured** may be held liable by reason of:
     (1)  Causing or contributing to the intoxication of any person;
     (2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
     (3)  Any statute, ordinance or regulation relating to the sale, gift, distribution, selling, or use of alcoholic beverages.

     This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. **Workers' Compensation and Similar Laws**

Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

**e. Employer's Liability**

**Bodily injury** to:
(1) An employee of any **insured** arising out of or within the course of:
  i. that employee's employment by any **insured**; or
  ii. performing duties related to the conduct of any **insured's** business; or
(2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

This exclusion applies:
(a) Whether the **insured** may be liable as an employer or in any other capacity; and
(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an **insured contract**.

**f. Aircraft, Auto or Watercraft**

**Bodily injury** or **property damage** arising out of:
(1) The ownership, maintenance, use, or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented, leased or loaned to any **insured**; or
(2) Any **auto** you do not own, lease, hire, rent or borrow that is used in connection with **your** business.
Use includes operation and **loading or unloading**.

This exclusion applies even if the claims against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by or rented or loaned to any **insured**.

This exclusion does not apply to:
(1) A watercraft while ashore on premises **you** own or rent;
(2) A watercraft **you** do not own that is:
  (a) Less than 26 feet long; and
  (b) Not being used to carry persons or property for a charge;
(3) Parking an **auto** on, or on the ways next to, premises **you** own or rent, provided the **auto** is not owned by or rented or loaned to **you** or the **insured**;
(4) Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft; or
(5) **Bodily injury** or **property damage** arising out of:
  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a

8

Page 169

compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
(b) the operation of any of the machinery or equipment listed in Paragraph B or C of the definition of **auto**.

**g. Mobile Equipment**

**Bodily injury** or **property damage** arising out of:
(1) The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **insured**; or
(2) The use of **mobile equipment** in, while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**h. Damage to Property**

**Property damage** to:
(1) Property **you** own, rent, or occupy, including any costs or expenses incurred by **you**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
(2) Premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises;
(3) Property loaned to **you**;
(4) Personal property in the care, custody or control of the **insured**;
(5) That particular part of real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or
(6) That particular part of any property that must be restored, repaired, or replaced because **your** **work** was incorrectly performed on it.

Paragraphs (1), (3), and (4) of this exclusion do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to **you** for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To **You** as described in Section II – Limits of Insurance, subsection 6.

Paragraph (2) of this exclusion does not apply if the premises are **your** **work** and were never occupied, rented or held for rental by **you**.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **property damage** included in the **products-completed operation hazard**.

**i. Damage to Your Product**

**Property damage** to **your product** arising out of it or any part of it.

9

Page 170

**j. Damage to Your Work**

**Property damage** to **your work** arising out of it or any part of it and included in the **products/completed operations hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

**k. Damage to Impaired Property or Property Not Physically Injured**

**Property damage** to **impaired property** or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or
(2) A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

**l. Recall of Products, Work or Impaired Property**

Damages claimed for any **loss**, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) **Your product**;
(2) **Your work**; or
(3) **Impaired property**;
if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**m. Personal and Advertising Injury**

**Bodily injury** arising out of **personal and advertising injury**.

**n. Electronic Data**

Damages arising out of the loss, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. under this Coverage A do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner. A separate limit of insurance applies to this coverage as described in Section II – Limits Of Insurance.

10

Page 171

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**
a. We will pay those sums, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, that the **insured** becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies. We will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, we will have no duty to defend the **insured** against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply. **We** may, at our discretion, investigate any offense and settle any claim or **suit** that may result. However:
  (1) The amount we will pay for damages is limited as described in Section II – Limits Of Liability; and
  (2) **Our** right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to **personal and advertising injury** caused by an offense arising out of **your** business but only if the offense was committed in the **coverage territory** during the policy period.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under Coverage B does not apply to **personal and advertising injury**:

**a. Knowing Violation of Rights of Another**
Caused by or at the direction of any **insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**.

**b. Material Published with Knowledge of Falsity**
Arising out of oral or written publication of material, if published by or at the direction of the **insured** with knowledge of its falsity.

**c. Material Published Prior to Policy Period**
Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**
Arising out of a criminal act committed by or at the direction of any **insured**.

**e. Contractual Liability**
For any **loss** for which the **insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

**f. Breach of Contract**

11

Page 172

Arising out of a breach of contract, except an implied contract to use another's advertising idea in **your advertisement**.

**g.  Quality or Performance of Goods – Failure to Conform to Statements**
Arising out of the failure of goods, products or services to conform to any statement of quality or performance made in **your advertisement**.

**h.  Wrong Description of Prices**
Arising out of the wrong description of price of goods, products or services stated in **your advertisement**.

**i.  Insureds in Media and Internet Type Businesses**
Committed by an **insured** whose business is:
(i)  Advertising, broadcasting, publishing or telecasting;
(ii)  Designing or determining content of websites for others; or
(iii)  An Internet search, access, content or service provider.
However, this exclusion does not apply to Paragraphs 11.a, 11.b and 11.c. of **personal and advertising injury** under the Additional Definitions Used In This Endorsement Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for **you** or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**j.  Infringement of Copyright, Patent, Trademark or Trade Secret**
Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in **your advertisement**, of copyright, trade dress or slogan.

**k.  Electronic Chatrooms or Bulletin Boards**
Arising out of an electronic chatroom or bulletin board the **insured** hosts, owns, or over which the insured exercises control.

**l.  Unauthorized Use of Another's Name or Product**
Arising out of the unauthorized use of another's name or product in **your** e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**GENERAL POLICY EXCLUSIONS**

**The following exclusions are applicable to both Coverage A and Coverage B.**

This endorsement provides no coverage for the following:

**a.  Asbestos**

**Bodily injury, property damage** or **personal and advertising injury** arising out of, resulting from, caused by, or contributed to, either directly or indirectly, by:

1.  inhaling, ingesting, or prolonged physical exposure to asbestos or goods or products containing asbestos; or
2.  the use of asbestos in constructing or manufacturing any good, product or structure; or
3.  the removal of asbestos from any good, product or structure; or
4.  the manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;
This exclusion includes, but is not limited to, any cost for investigation, defense, abatement, mitigation, removal or disposal of asbestos or asbestos containing materials.

**b.  Lead**

**Bodily injury, property damage** or **personal and advertising injury** arising out of, resulting from, caused by, or contributed to, either directly or indirectly, by lead or lead based products or any exposure or contamination of any person or property to such lead or lead based product.  This exclusion includes but is not limited to any cost for abatement, mitigation, removal or disposal of paint, plumbing solder, pipes and fixtures or other items containing lead.

**c.  Fungi or bacteria**

**Bodily injury, property damage** or **personal and advertising injury** which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

This coverage also does not apply to any **loss**, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, **fungi** or bacteria, by any **insured** or by any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**d.  Silica or silica-related dust**

1.  **Bodily injury, property damage**, or **personal and advertising injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, **silica or silica-related dust**.

2.  Any **loss**, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **silica or silica-related dust**, by any **insured** or by any other person or entity.

**e.  Employment-Related Practices Exclusion**

**Bodily injury** or **personal and advertising injury** to: